Daniel J. Pochoda (Bar No. 021979)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Tel:    (602) 650-1854
Email: *dpochoda@acluaz.org*

David Loy
Mitra Ebadolahi
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel:    (619) 232-2121
Email: *davidloy@aclusandiego.org*
Email: *mebadolahi@aclusandiego.org*

Whitty Somvichian (CA SBN 194463)
Aarti G. Reddy (CA SBN 274889)
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111-5800
Tel:    (415) 693-2000
Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*

**Attorneys For Plaintiffs**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ACLU FOUNDATION OF ARIZONA; *et al.*, <br><br> *Plaintiffs* <br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES, *et al.*, <br><br> *Defendants* | CASE NO.: CV-15-00247-PHX-JJT <br><br> **PLAINTIFFS' REQUEST FOR SANCTIONS AND OPPOSITION TO DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS WITH RESPECT TO DEFENDANT OFFICE OF THE INSPECTOR GENERAL, AND SECOND REQUEST FOR MODIFICATION OF THE BRIEFING SCHEDULE** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.   Plaintiffs' FOIA Request. .......................................................................... 2

    B.   Proceedings to Date. ................................................................................... 3

    C.   Defendants' Progress Since the Court's Prior Order. ................................. 4

    D.   The Parties' Meet-and-Confer Efforts. ....................................................... 4

III.  LEGAL STANDARD ......................................................................................... 5

IV.   PLAINTIFFS WOULD BE PREJUDICED BY ADDITIONAL DELAY ............. 7

V.    DEFENDANTS DO NOT MEET THE LEGAL REQUIREMENTS FOR A STAY. ................................................................................................................. 8

    A.   Defendants Have Not Identified Any Exceptional Circumstances. .............. 8

    B.   Defendants Have Not Exercised Due Diligence. ........................................ 13

VI.   THE COURT SHOULD SANCTION DEFENDANTS FOR OIG'S FAILURE TO COMPLY WITH THE COURT'S EXTENDED PRODUCTION DEADLINE. .................................................................................. 14

    A.   Sanctions Are Warranted Because Defendants Have Acted in Bad Faith. ........................................................................................................... 15

    B.   A Daily Fine is Appropriate. ...................................................................... 17

VII.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of N. Cal. v. DEA*,
  No. C 11-01997 RS, 2012 U.S. Dist. LEXIS 190389 (N.D. Cal. Nov. 8,
  2012) ............................................................................................................... 7

*ACLU v. DOD*,
  339 F. Supp. 2d 501 (S.D.N.Y. 2004) ....................................................... 7, 8

*Alexander v. FBI*,
  186 F.R.D. 6 (D.D.C. 1998) .................................................................... 15, 16

*Appleton v. FDA*,
  254 F. Supp. 2d 6 (D.D.C. 2003) .................................................................. 12

*Buc v. Food & Drug Admin.*,
  762 F. Supp. 2d 62 (D.D.C. 2011) ............................................................... 10

*CareToLive v. U.S. Food & Drug Admin.*,
  No. 2:08-CV-005, 2008 WL 2201973 (S.D. Ohio May 22, 2008) .............. 12

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................................ 14

*Clemente v. FBI*,
  71 F. Supp. 3d 262 (D.D.C. 2014) .............................................. 9, 10, 11, 12

*Donham v. U.S. DOE*,
  192 F. Supp. 2d 877 (S.D. Ill. 2002) ........................................................... 17

*Elec. Frontier Found. v. Dep't of Justice*,
  517 F. Supp. 2d 111 (D.D.C. 2007) ........................................................ 5, 11

*EPIC v. Dep't of Justice*,
  416 F. Supp. 2d 30 (D.D.C. 2006) ................................................................. 5

*EPIC v. FBI*,
  933 F. Supp. 2d 42 (D.D.C. 2013) .................................................... 10, 11, 12

*Exner v. FBI*,
  542 F.2d 1121 (9th Cir. 1976) .................................................................... 5, 6

*Fiduccia v. U.S. Dep't of Justice*,
  185 F.3d 1035 (9th Cir. 1999) ................................................................ 6, 7, 9

*Gilmore v. Nat'l Sec. Agency*,
  NO. C 92-3646 TEH, 1993 U.S. Dist. LEXIS 7694 (N.D. Cal. Apr. 30,
  1993) ..................................................................................................... 5, 6, 10

*Gov't Accountability Project v. U.S. Dep't of HHS*,
  568 F. Supp. 2d 55 (D.D.C. 2008) ............................................................... 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Guzzino v. FBI,*
No. 95-1780 (SS), 1997 U.S. Dist. LEXIS 462 (D.D.C. Jan. 10, 1997) ...................... 13

4

*Haddon v. Freeh,*
5    31 F. Supp. 2d 16 (D.D.C. 1998) .................................................................................. 13

6    *Hamlin v. Kelley,*
7    433 F. Supp. 180 (N.D. Ill. 1977) ................................................................................... 5

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
8    512 U.S. 821 (1994) ....................................................................................................... 17

9    *Jefferson v. Reno,*
123 F. Supp. 2d 1 (D.D.C. 2000) ................................................................................... 15

10
*Jimenez v. FBI,*
11    938 F. Supp. 21 (D.D.C. 1996) ...................................................................................... 12

12    *Miller v. U.S. Dep't of State,*
779 F.2d 1378 (8th Cir. 1985) ................................................................................. 5, 13

13
*Nat'l Sec. Archive v. United States SEC,*
14    770 F. Supp. 2d 6 (D.D.C. 2011) ..................................................................................... 9

15    *Nat'l Union Fire Ins. Co. v. Saunders,*
No. 95-56742, 1997 U.S. App. LEXIS 4908 (9th Cir. Mar. 12, 1997) ...................... 17

16
*NLRB v. Robbins Tire & Rubber Co.,*
17    437 U.S. 214 (1978) ......................................................................................................... 2

18    *Open America v. Watergate Special Prosecution Force,*
547 F.2d 605 (D.C. Cir. 1976) ............................................................................. 6, 9, 12

19
*Pacific Fisheries, Inc. v. IRS,*
20    No. C04-2436JLR, 2006 U.S. Dist. LEXIS 35288 (W.D. Wash. June 1,
2006) ............................................................................................................................... 15

21
*United States v. Ayres,*
22    166 F.3d 991 (9th Cir. 1999) ........................................................................................ 17

23    *United States v. Bright,*
No. 07-00311 ACK-KSC, 2009 U.S. Dist. LEXIS 119862, at *43-45 (D.
24    Haw. Dec. 23, 2009) ...................................................................................................... 17

25    *United States v. United Mine Workers,*
330 U.S. 258 (1947) ................................................................................................ 15, 17

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

5 U.S.C.
  § 552(a)(6)(C) ................................................................................................. 5
  § 552(a)(6)(E) ........................................................................................... 2, 14

## I.    INTRODUCTION

Defendants' eleventh-hour request for a second, six-month extension raises no new facts and once again fails to provide the Court with any legally cognizable basis for the requested relief. In support of their Motion ("Mot."), Defendants misstate the applicable legal standard, recycle their exaggerated claims regarding a purportedly unanticipated spike in FOIA requests and a "heavy litigation burden" posed by competing lawsuits, and offer false promises regarding their due diligence and efforts to reduce OIG's backlog. Not only is the protracted delay Defendants propose unnecessary, it would also cause substantial additional prejudice to Plaintiffs by delaying summary judgment briefing until 2017. The Court should therefore deny Defendants' Motion and issue sanctions to compel prompt compliance with its prior scheduling order (ECF No. 27 "Order").

As set forth in greater detail below, Defendants' Motion falls far short of the Ninth Circuit's requirements for an *Open America* stay, which mandate that Defendants show "exceptional circumstances" and "due diligence." *First*, Defendants argue that they are faced with exceptional circumstances due to a recent increase in complex FOIA requests. (Mot. at 6.) But as this Court and others have held, the roughly 40 percent increase identified by Defendants is hardly a "deluge . . . vastly in excess of that anticipated by Congress." *Second*, Defendants similarly misrepresent OIG's "heavy litigation burden" posed by other FOIA litigation; in two of the three litigation matters referenced, Defendants have already completed production of documents. *Third*, Defendants' contention that OIG is making "reasonable progress" in reducing its backlog is demonstrably false. Publicly-available statistics from the Department of Justice indicate the OIG's backlog has steadily and consistently **increased** in recent years.

*Finally*, Defendants' conduct is the very antithesis of due diligence. Specifically, Defendants: (1) failed to accurately identify the full scope of documents OIG must review; (2) began production nearly seven months after receipt of Plaintiffs' FOIA request; (3) even then, continued to produce documents at a glacial pace; and (4) failed to timely seek an extension until the deadline for OIG's production.  These facts, coupled

with Defendants' flagrant disregard for the Court's scheduling order, underscore that Defendants have "delay[ed] or disrupt[ed] the litigation [and] hamper[ed] enforcement of a court order," and that sanctions are therefore appropriate.

For all of these reasons, Plaintiffs respectfully request that the Court require Defendants to promptly comply with this Court's prior Order and issue a daily monetary fine of $500 to compel OIG's prompt compliance with that Order.

**II.   BACKGROUND**

**A.   Plaintiffs' FOIA Request.**

On December 3, 2014, Plaintiffs American Civil Liberties Union of Arizona and American Civil Liberties Union of San Diego and Imperial Counties (collectively "Plaintiffs") submitted a FOIA request (the "Request") to Defendant Department of Homeland Security ("DHS") (subsequently forwarded to sub-agencies, Customs and Border Protection ("CBP"), Office for Civil Rights and Civil Liberties ("CRCL"), Immigration and Customs Enforcement ("ICE"), and Office of Inspector General ("OIG") (together with DHS, "Defendants")), requesting expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i) and 5 U.S.C. § 552(a)(6)(E)(v).

The Request seeks records related to abuse and mistreatment of children in the custody of Defendant CBP and its sub-agency, the Office of Border Patrol, from 2009 to 2014. As set forth in more detail in the complaint (ECF No. 1), the purpose of the Request is to gather information regarding the full extent of the abuse and mistreatment of children in Border Patrol facilities in order to provide a check against corruption, and to hold DHS accountable for providing competent care for juvenile detainees. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (the purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed").

The deadline for responding to the Request, including the ten-day extension invoked by three of the four DHS subcomponents, expired over 17 months ago, on or before February 10, 2015.  Plaintiffs filed the instant complaint the following day.

## B.   Proceedings to Date.

This case was placed on an expedited schedule, with deadlines for summary judgment motions initially set for September 2015.  In lieu of filing those motions, the parties submitted to the Court a Joint Status Report ("JSR"), each proposing alternate briefing schedules. (ECF No. 18.)  Defendants represented that they had "completed their document search," but maintained that the exact number of responsive pages was uncertain because the records were "complex," including emails with attachments of varying lengths. (*Id.* at 1, 5.)   At the time, OIG had discovered 1,200 potentially responsive pages of documents.  (ECF No. 22 at 3.)   At a telephonic hearing held on October 8, 2015, however, Defendants informed the Court that the number of potentially responsive pages for component agency OIG was now 13,000.  (Decl. of Aarti Reddy, July 19, 2016 ("Reddy Decl.") Ex. 4.) Notwithstanding Defendants' contention that any briefing schedule was premature, the Court ordered Defendants to complete their production by May 27, 2016 and file dispositive motions beginning June 17, 2016. (ECF No. 20 ("Scheduling Order").)

Defendants began to produce responsive documents from OIG at the end of July 2015, roughly seven months after OIG had received Plaintiffs' request.  (Declaration of Mitra Ebadolahi, July 19, 2016 ("Eb. Decl.") ¶ 5.)   By the time the Court issued its Scheduling Order on October 8, 2015, OIG had produced about 550 pages. (Eb. Decl. ¶ 6.) In the four months between October 2015 and February 2016, OIG produced approximately 1100 pages (excluding a "production" of 686 pages consisting of public documents that had required no agency processing).[1] (Eb. Decl. ¶ 8.)

On February 4, 2016, Defendants filed their first motion for an extension.  (ECF No. 22.) Despite Defendants' prior representation that its search was complete, Defendants now claimed that their estimate of potentially responsive documents for OIG had ballooned by an additional 9,600 documents, now totaling 22,400 pages.  (*Id.* at 3.)

---

[1] Plaintiffs have since informed Defendants that they need not produce publicly available, non-DHS documents in the future.

The Court's March 31, 2016 Order held that Defendants had not shown exceptional circumstances warranting an extension of time, but granted a limited extension as a result of the delay caused by Defendants' Motion.  (Order at 5.)   Specifically, the Court extended the production schedule to July 8, 2016 for CBP and OIG only, and extended the briefing schedule such that summary judgment briefing would commence on August 8, 2016.  (*Id.* at 6-7.)  The Court reasoned that "'inadequate staff, insufficient funding or a great number of requests'" did not entitle an agency to an extension; to find otherwise would "render the timing requirements a 'non-entity' and it is unlikely that Congress intended such a result."  (Order at 3.)  The Court also ordered Defendants to file monthly status reports indicating the agency's review rate and remaining documents.  (Order at 7.)

### C.      Defendants' Progress Since the Court's Prior Order.

Although Defendants now contend that OIG is reviewing documents at an average rate of 1,310 pages per month (Mot. at 3), that assertion is contradicted by Defendants' recent productions and status reports.   Defendants have filed three status reports describing OIG's production status.  In April, Defendants stated that OIG was reviewing documents at a rate of 1,100 pages per month, with 18,000 pages remaining.  (ECF No. 28.)  In May, OIG reviewed 1,265 pages per month, with 15,615 pages remaining.  (ECF No. 31.)  Defendants' July 1, 2016 status report did not contain any information about how many pages OIG had processed in June.  (ECF No. 32.)  Over these three and-a-half months, OIG has produced approximately 1,500 pages.[2]  (Eb. Decl. ¶ 9.)

Instead of describing OIG's rate of review and the number of documents remaining as it was required to do, Defendants' July 1 status report complains of production demands in three other FOIA litigation matters.  (ECF No. 32.)

### D.      The Parties' Meet-and-Confer Efforts.

Seven days before OIG was to violate the Court's July 8, 2016 production

---

[2] This does not include the production OIG has represented to be its 13th production, which, as of the date of this filing, has not been transmitted to Plaintiffs in a legible format.

1   deadline, Defendants notified Plaintiffs that they intended to seek a stay because
2   thousands of documents remained unprocessed.  In a meet-and-confer call held on July 5,
3   2016, Defendants' counsel indicated that there were exceptional circumstances that would
4   justify a stay.  (Eb. Decl. ¶ 2.) When asked whether there had been any change since the
5   Court's prior Order, counsel only noted that OIG had lost a staff member.  (*Id.*)

6   **III.   LEGAL STANDARD**

7       The FOIA statute provides that additional time to respond to a request shall only be
8   granted where an agency can show "exceptional circumstances" and "due diligence in
9   responding to the request…." 5 U.S.C. § 552(a)(6)(C)(i).  These limitations exist with
10  good reason, and reflect the congressional understanding that delays undermine the
11  purpose of FOIA.  *See EPIC v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006)
12  ("[U]nreasonable delays in disclosing non-exempt documents violate the intent and
13  purpose of the FOIA, and the courts have a duty to prevent [such] abuses." (internal
14  quotatons and citations omitted)). As the party seeking additional time to process a FOIA
15  request, Defendants bear the burden of proof.  *Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir.
16  1976).

17      "'[E]xceptional circumstances' does not include delay that results from a
18  predictable agency workload of requests…." 5 U.S.C. § 552(a)(6)(C)(ii).   Thus,
19  predictable agency turnover, a gradual increase in the number of requests, competing
20  FOIA litigation, and insufficient funding do not constitute exceptional circumstances.
21  (*See* ECF No. 27 at 3); *Hamlin v. Kelley*, 433 F. Supp. 180, 182 (N.D. Ill. 1977)
22  ("[I]nadequate staff, insufficient funding or a great number of requests are not within the
23  meaning of 'exceptional circumstances' as that language is used in the statute."); *Gilmore*
24  *v. Nat'l Sec. Agency*, NO. C 92-3646 TEH, 1993 U.S. Dist. LEXIS 7694, at *35 (N.D.
25  Cal. Apr. 30, 1993) (exceptional circumstances did not include a "steady continuation of
26  past increases" in FOIA requests); *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp.
27  2d 111, 118 (D.D.C. 2007) (additional litigation obligations are not exceptional
28  circumstances); *Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1390 (8th Cir. 1985)

("[B]acklogs, confusion, and administrative error . . . are practical explanations, not reasonable legal bases" for a stay under FOIA). Exceptional circumstances exist where an agency can show that "it is faced with an unforeseen and unforeseeable increase in the number of FOIA requests." *Gilmore*, 1993 U.S. Dist. LEXIS 7694, at *33.

While Defendants contend that *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 615 (D.C. Cir. 1976), establishes that inadequate resources and FOIA requests in excess of that anticipated by Congress constitute exceptional circumstances, that claim is inaccurate. The Ninth Circuit has explicitly declined to adopt a broad reading of the "exceptional circumstances" requirement, approving only the limited portion of the *Open America* court's analysis as set forth in Judge Leventhal's concurrence.   *Exner*, 542 F.2d at 1123.  That concurrence rejected the majority's interpretation of "exceptional circumstances," reasoning instead that the exception applies where "FOIA requests have increased at a rate entirely unforeseen and unforeseeable," rendering "strict compliance with the FOIA time limits impossible."  *Open America*, 547 F.2d at 617. According to Judge Leventhal, the majority's interpretation would "permit open-ended approval of agency failure to meet the Act's specific time limits" and "gloss over and screen out any shortfalls in agency performance from the committees and bodies of the legislature." *Id.* at 618.  Subsequent Ninth Circuit opinions have endorsed a similar interpretation. *See Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999) (reasoning that although "FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance.  So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have."); *Gilmore*, 1993 U.S. Dist. LEXIS 7694, at *33 (noting that the Ninth Circuit has only "'accepted and approved' the . . . more limited version of the holding in *Open America* [which] allows an agency to claim 'exceptional circumstances' where it is faced with an unforeseen and unforeseeable increase in the number of FOIA requests").

Whether a party has acted with due diligence depends on a variety of considerations.  While due diligence may sometimes be shown by a first in - first out processing of requests, this presumption does not apply where the "queue is too long" or where the agency "respond[s] to a FOIA request after months of silence[.]"  *Fiduccia,* 185 F.3d at 1041 (noting that to permit an agency to simply operate a queue, telling requesters that they'll get the documents years from now, when their turn comes, "amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you'"); *ACLU of N. Cal. v. DEA*, No. C 11-01997 RS, 2012 U.S. Dist. LEXIS 190389, at *9 (N.D. Cal. Nov. 8, 2012) (awarding attorneys' fees to plaintiff where defendant "provided insufficient evidence to support its claim of due diligence . . . defendant did not provide plaintiff with any meaningful updates on its intended production until after plaintiffs filed suit").

## IV.   PLAINTIFFS WOULD BE PREJUDICED BY ADDITIONAL DELAY

As an initial and dispositive matter, even assuming Defendants had met the legal requirements for a stay (and they have not), their Motion should be denied because the resulting six-month delay will significantly prejudice Plaintiffs.  Defendants' proposal will further delay summary judgment briefing and Plaintiffs' consequent ability to challenge overbroad redactions, inadequacies in *Vaughn* indices, and other production deficiencies against **all** Defendants until 2017.  This is more than two years after Plaintiffs first issued the FOIA Request and at that point, the underlying records sought—pertaining to events which occurred between 2009 and 2014—will likely be stale.

As Congress recognized in passing its 1996 revisions to FOIA, delay in complying with FOIA may be "tantamount to denial."  *ACLU v. DOD*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (citing H. Rep. No. 876, 93d Cong., 2d Sess.).  Records obtained from Defendants so far have reflected deeply troubling allegations that children in DHS custody have been physically and sexually abused, denied medical care, or held in life-threatening conditions. (Exs. 5-9 to Declaration of Aarti Reddy ("Reddy Decl."); Ex. 5, at 1 (UAC reports being placed in "ice box" for twenty-four hours wearing only his underwear;

second such incident report at this facility); Ex. 6 at 8 (UAC gave birth to premature child; alleges she and infant were detained in unsanitary conditions immediately following childbirth, contrary to medical orders); Ex. 7 at 2 (UAC alleges being kicked, pushed and struck with motorcycle during arrest); Ex. 8 at 2 (UAC alleges being thrown to the ground and punched by border patrol agent); Ex. 9 at 6 (UACs describe verbal abuse by Border Patrol officer). Plaintiffs' ability to hold the government accountable for its current actions and to prevent future harm to minors depends on timely access to the records sought in this Request. *See ACLU*, 339 F. Supp. 2d at 504 (noting that the defendants' "glacial pace . . . fails to afford accountability of government that the act requires."). Thus, the need for prompt FOIA compliance is particularly acute.

## V.    DEFENDANTS DO NOT MEET THE LEGAL REQUIREMENTS FOR A STAY.

### A.    Defendants Have Not Identified Any Exceptional Circumstances.

On March 31, 2016, this Court held that OIG did not face exceptional circumstances justifying an extension of the production deadlines. The same result follows here, as OIG's circumstances have not materially changed in the past three months.

In their prior motion, Defendants argued that an extension was warranted because (1) document review was a time-consuming process due to the complex and sensitive nature of the documents, (2) OIG had "identified" substantially more responsive pages, (3) OIG's FOIA caseload had "increased by forty-five percent over the past year", and (4) OIG had two other FOIA cases in litigation.  (ECF No. 22 at 7, 9, 10.)  The Court rejected these arguments, concluding that a predictable increase in the number of FOIA requests, litigation demands, and a backlog are not extraordinary circumstances. (Order at 3-4.)

Defendants' latest motion recycles the very same arguments, as they again argue that FOIA requests to OIG have increased and that it is burdened by competing FOIA litigation. (Mot. at 6-11.) All of these arguments are unavailing, and the Court should affirm its prior determination that OIG does not face exceptional circumstances.

***First***, Defendants allege only a single new consideration not present in their prior motion—the loss of one employee. Normal staff turnover does not amount to exceptional

circumstances. *Fiduccia*, 185 F.3d at 1042 (rejecting employee cutbacks as evidence of extraordinary circumstances). Even if it did, Defendants' claim of burden is belied by the facts. Although Defendants contend in their Motion that they have lost two staff members, upon closer scrutiny, it appears that the second employee has not yet left OIG. (Mot. at 9.) It also appears that the other employee was employed by OIG until May. (ECF No. 31 at 3.) The agency should have substantially completed its production by that point, as the original production deadline of its documents was May 27, 2016. (ECF No. 20.)

   *Second*, although Defendants complain of a "marked increase" in the number of complex FOIA requests it receives (Mot. at 6), the Department of Justice's public statistics reflecting FOIA requests received by OIG since 2008 demonstrate that these claims are exaggerated. While OIG received 261 FOIA requests in FY 2015, this is only a moderate uptick (roughly 40%) from the FOIA requests received in recent years (e.g., 187 requests in 2010, 180 requests in 2012, and 177 requests in 2014.) (Reddy Decl. Ex. 1.) Even assuming this were significant, this Court previously rejected DHS's claim that a similar increase constitutes "exceptional circumstances" (Order at 4-5 ("[Defendants] note that OIG's FOIA caseload has significantly increased over the past year . . . The Court does not find that the circumstances Defendants outline demonstrate anything more significant than a fairly predictable agency workload of requests, inadequate staff, and insufficient funding, all of which do not ordinarily constitute exceptional circumstances.").) The Court's prior reasoning is sound and consistent with other similar decisions. *See Clemente v. FBI*, 71 F. Supp. 3d 262, 267 (D.D.C. 2014) (doubling of FOIA requests from 911 in 2005 to 1,716 in 2012 did not qualify as "extraordinary circumstances" or establish that the agency was "deluged with [a] volume of requests . . . vastly in excess of that anticipated by Congress.") (citing *Open America*, 547 F.2d at 616)). The only authority cited by Defendants is distinguishable in that it involved a grant of stay to FOIA requests seeking information spanning a 20-year period, and the agency had a backlog of 11,000 FOIA requests based on a 300% increase. (Mot. at 6 (citing *Nat'l Sec. Archive v. United States SEC*, 770 F. Supp. 2d 6 (D.D.C. 2011)).)

***Third***, Defendants' claim that the burden of these requests is exacerbated by their complexity is also unpersuasive. Specifically, Defendants generically assert that the "complex, sensitive nature" of OIG records renders document review time consuming. (Mot. at 10.)  However, courts have consistently rejected similar arguments, particularly where—as here—"there is simply insufficient evidence in the record to draw any concrete and meaningful conclusions as to the composition of [any agency's] workload today in comparison to years past, at least in terms of complexity." *Clemente v. FBI*, 71 F. Supp. 3d at 267 (quoting *Buc v. Food & Drug Admin.*, 762 F. Supp. 2d 62, 68 (D.D.C. 2011) ("FDA's arguments fall short of evidencing that incoming requests have, on average, become significantly and unexpectedly more complex as of late"); *Gov't Accountability Project v. U.S. Dep't of HHS*, 568 F. Supp. 2d 55, 60 (D.D.C. 2008) (finding, in part, that defendants had failed to demonstrate exceptional circumstances just because they process "large and complex FOIA requests;" defendants needed to demonstrate that "processing ha[s] become increasingly or unexpectedly more complex as of late"); *EPIC v. FBI*, 933 F. Supp. 2d 42, 48 (D.D.C. 2013) (finding that complexity had not increased in recent years and denying defendant's motion for stay).

The only other specific information identified by Defendants relates to the purported "unanticipated prominence" of a 2012 incident involving the U.S. Secret Service and prostitutes in Cartagena, and an early 2014 Senate report regarding misconduct involving the Inspector General.  Defendants argue these incidents resulted in an "[un]predictable" increase in FOIA requests.  (Mot. at 7.) But an increase in FOIA requests in response to Agency action can be anticipated.  *Clemente*, 71 F. Supp. 3d at 267 (noting that a change in agency's own policy that resulted in additional FOIA requests was not unpredictable); *EPIC v. FBI*, 933 F. Supp. 2d at 47 (similar); *Gilmore*, 1993 U.S. Dist. LEXIS 7694, at *33 (finding that an increase in the number of FOIA requests must be "unforeseen and unforeseeable" to constitute "exceptional circumstances").  Moreover, it has been two and four years, respectively, since these incidents occurred.  Defendants have had plenty of time to procure additional resources to address what are clearly

10.

1   predictable increases in requests following these incidents.

2         **Fourth**, Defendants' assertion that their litigation caseload supports a finding of

3   exceptional circumstances is also meritless.  Defendants contend that OIG is engaged in

4   "3-4 new FOIA litigations each year," and identify "three other active FOIA litigation

5   matters." (Rimon Decl. ¶ 4; Mot. at 7.) But OIG presents no facts to support its assertion

6   that these "are unusually heavy litigation demands" in comparison to litigation in past

7   years. (Mot. at 7.)  Government agencies are routinely engaged in FOIA litigation; this

8   volume is hardly sufficient to qualify as an unpredictable shift in workload to qualify as

9   "exceptional circumstances." *Clemente*, 71 F. Supp. 3d at 267 (holding that the fact that

10  Defendant FBI was engaged in 144 FOIA lawsuits was not an unforeseen exceptional

11  circumstance).  Indeed, Defendants' own cases confirm that a stay is warranted in this

12  case.  (*See* Mot. at 7-8 (citing *Elec. Frontier Found.*, 517 F. Supp. 2d at 117, 118

13  (rejecting argument that litigation demands in four other cases qualified as exceptional

14  circumstances; "the fact that the FBI faces obligations in other litigations is not, in and of

15  itself, sufficient to establish exceptional circumstances"))); *EPIC v. FBI*, 933 F. Supp. 2d

16  at 48 (rejecting the argument that agency's involvement in six active litigation matters

17  constituted exceptional circumstances because agency presented no "elaboration as to the

18  FBI's litigation-related processing obligations over specific periods of time").

19        Moreover, Defendants misrepresent OIG's caseload.  As to two of the matters OIG

20  mentioned (which also happen to involve counsel for ACLU), OIG has in fact fully

21  completed its document productions months ago.  (Eb. Decl. ¶¶ 3-4 (describing OIG's

22  production in *American Civil Liberties Foundation of Arizona v. United States*

23  *Department of Homeland Security*, Case 4:14-cv-02052-RM-BPV (D. Ariz.) and

24  *American Civil Liberties Union of San Diego & Imperial Counties v. United States*

25  *Department of Homeland Security*, Case 8:15-cv-00229-JLS-RNB (C.D. Cal.).)  Both of

26  those matters are in the summary judgment briefing stage and do not require any further

27  review of documents.  (*Id.*)  In any event, as explained below, OIG drastically overstates

28  the production burdens associated with these cases (one of which only entailed production

of three documents!)  (Eb. Decl. ¶ 4; *infra* section IV.i).  With respect to the third matter, *Litman v. U.S. Department of Homeland Security*, No. 3:15-cv-00760-C (N.D. Tex.), OIG's latest pleading in that matter discloses only half of the 250,000 potentially responsive pages that OIG claims here that it is reviewing.  (Reddy Decl. Ex. 2 (stating that 124,000 pages remain to be reviewed).)  Moreover, the *Litman* court has repeatedly concluded that OIG is not entitled to an extension of time, and has threatened sanctions for OIG's repeated requests for an extension.  (Reddy Decl Ex. 3.)

*Fifth*, Defendants contend that OIG is "making reasonable progress in reducing its backlog of pending requests," by pointing to new practices and equipment.  (Mot. at 14-17.)  Notably, Defendants fail to provide any concrete metrics regarding whether OIG **actually  has** reduced its backlog.  This omission is telling.  According to statistics published by the Department of Justice, OIG's backlog has steadily ***increased*** in recent years; from 9 cases in 2008, to 51 cases in 2013, and 100 cases in 2015.  (Reddy Decl. Ex. 1.)  Thus, OIG has not demonstrated that it has made reasonable progress in reducing its backlog.  *Clemente*, 71 F. Supp. 3d at 267 (no reasonable progress where FBI's backlog increased during the relevant period); *EPIC v. FBI*, 933 F. Supp. 2d at 49 ("While [restructuring efforts are admirable], the numbers belie any claim that the FBI's progress in reducing the backlog has been 'reasonable'").[3]

For all these reasons, Defendants' have not demonstrated that exceptional circumstances exist so as to justify the grant of an *Open America* stay.[4]

---

[3] Once again, Defendants' sole support is inapposite.  (Mot. at 15 (citing *CareToLive v. U.S. Food & Drug Admin.*, No. 2:08-CV-005, 2008 WL 2201973, at *5 (S.D. Ohio May 22, 2008) (finding reasonable progress where the agency had reduced its backlog by 50 percent in the preceding five years.)); Mot. at 16 (citing *Appleton v. FDA*, 254 F. Supp. 2d 6, 8-9 (D.D.C. 2003) (relying on interpretation of *Open America* that has been rejected by the Ninth Circuit, as explained *supra* p. 6, reasoning that "any delays encountered in responding to a request" could constitute exceptional circumstances)).

[4] Defendants claim that a six-month stay "would accord with decisions of other courts," (Mot. at 12), but all of the cases cited in support are nearly 20 years old, and are otherwise inapposite.  (*Id.* (citing *Jimenez v. FBI*, 938 F. Supp. 21, 31-32 (D.D.C. 1996) (granting stay in light of plaintiff's failure to present a genuine need or reason for urgency in the

## B.    Defendants Have Not Exercised Due Diligence.

Even assuming Defendants established that "exceptional circumstances" exist, the requested stay must be denied because Defendants have not demonstrated due diligence.

*First*, despite knowing that it would miss the extended court-ordered production deadline by a wide margin, Defendants only sought their second extension on the date its production was due, one month prior to the deadline for its summary judgment motion.

*Second*, OIG's glacial rate of production—3,325 pages to date (Mot. at 14) — exemplifies administrative **inefficiency**, not due diligence.  *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985) ("The FOIA does not contain a statutory exception for administrative inefficiency."). Indeed, had OIG been reviewing 1,310 pages per month at the outset (the rate it now promises to review) it would have finished reviewing the 10,000 pages purportedly remaining.  (Mot. at 3.)

*Third,* numerous facts suggest that OIG has not efficiently used the resources at its disposal. The apparent rate of responsiveness in OIG's production is only 16%, as compared to the responsiveness rates of CBP (56%), and ICE and CRCL (26% collectively). (ECF Nos. 18 at n.2, 22 at 3, 31 at 2; Reddy Decl. ¶11.)  Relatedly, despite OIG's representation *nearly one year ago* that it had identified all potentially responsive documents, the universe of documents in its collection has steadily increased over the past 10 months (from 1,200 pages last September to an estimate of 31,000 pages ten months later). (Mot. at 3.)  OIG's inefficiency is also confirmed by Defendants' own declaration, which shows that, of the Office of Inspector General offices in five other agencies, nearly all are reviewing far more FOIA requests with far fewer employees than OIG.  (*See* ECF No. 34-1 ¶ 15 (establishing that HHS OIG, DoD OIG, VA OIG, and DOJ OIG are processing documents more efficiently than DHS OIG).) Taken together, these facts

face of unprecedented agency backlog of 3,000 FOIA requests); *Haddon v. Freeh*, 31 F. Supp. 2d 16, 19 (D.D.C. 1998) (noting without analysis that prior stay had been granted); *Guzzino v. FBI*, No. 95-1780 (SS), 1997 U.S. Dist. LEXIS 462, at *4-5 (D.D.C. Jan. 10, 1997) (noting plaintiff's failure to dispute agency claim of "exceptional circumstances").)

13.

strongly suggest systemic inefficiencies in OIG's initial search and collection process.[5]

*Finally*, Defendants evidently contend that they have satisfied their diligence obligations simply by Plaintiffs' request on a first in – first out strategy.  Not so.  Plaintiffs have also requested expedited processing, and the Court has the authority to review Defendants' denial of Plaintiffs' request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(iii). (Compl. at 12.)  Expedited processing is appropriate here for two independent reasons: (1) children in CBP custody may face continuing, imminent threats to their lives or physical safety, U.S.C. § 552(a)(6)(E)(v)(I); and (2) Plaintiffs are entities primarily engaged in disseminating information where there is an "urgency to inform the public concerning actual or alleged Federal Government activity," U.S.C. § 552(a)(6)(E)(v)(II).  In light of these considerations, it would be perfectly appropriate for Defendants to prioritize Plaintiffs' Request over other, less urgent matters.

## VI. THE COURT SHOULD SANCTION DEFENDANTS FOR OIG'S FAILURE TO COMPLY WITH THE COURT'S EXTENDED PRODUCTION DEADLINE.

Plaintiffs respectfully submit that sanctions are an appropriate remedy in response to Defendants' willful noncompliance with the Court's extended scheduling order.  Specifically, Plaintiffs request that the Court levy a fine for each additional day that OIG fails to complete its production, and issue any such other relief as it deems appropriate.

"[I]t is firmly established that the power to punish for contempts is inherent in all courts."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotations and citation omitted).  Civil contempt sanctions are appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 45-46  (internal quotations and citation omitted).  A party demonstrates bad faith where it has "delay[ed] or disrupt[ed] the litigation or hamper[ed] enforcement of a court order." *Alexander v. FBI*,

---

[5] OIG's estimate of potentially responsive documents left to review gradually increased from 1,200 on September 21, 2015 (ECF No. 22 at 3), to 13,000 on October 8, 2015 (Reddy Decl. Ex. 4), to 16,700 on February 4, 2016 (ECF No. 22-2 ¶14), and finally to 18,000 on April 30, 2016 (ECF. No. 28 at 2.).  OIG's estimate decreased for the first time in June 2016.

186 F.R.D. 6, 11 (D.D.C. 1998) (internal quotations and citation omitted). The sanction should be tailored to fulfill the ends of the order, considering "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).

Courts have observed that sanctions are awardable in the FOIA context.  *See Jefferson v. Reno*, 123 F. Supp. 2d 1, 4 (D.D.C. 2000) (noting the court should "not hesitate to impose monetary penalties in the future if it finds that Defendant has delayed the production of any records 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"); *Pacific Fisheries, Inc. v. IRS*, No. C04-2436JLR, 2006 U.S. Dist. LEXIS 35288, at *13-14 (W.D. Wash. June 1, 2006), *aff'd in part and rev'd in part by Pac Fisheries, Inc. v. United States*, 2008 U.S. App. Lexis 1781 (9th Cir. Aug. 21, 2008).

A.     **Sanctions Are Warranted Because Defendants Have Acted in Bad Faith.**

Sanctions are appropriate because Defendants have willfully disobeyed the Court's orders to complete production of OIG's responsive documents by July 8, 2016 and file monthly status reports including the review rate and remaining documents. The record is replete with examples of Defendants' bad faith in this litigation.

For starters, Defendant OIG has acted in bad faith by "dragg[ing] its figurative feet" in the production of documents.  *Pac. Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 35288, at *13-14 (issuing order to show cause as to why sanctions should not be imposed on Defendant in FOIA litigation where Defendant failed to produce documents for over one year). Defendants failed to act with reasonable diligence from the outset. As explained above, the number of potentially responsive pages OIG identified has varied wildly, starting at 1,200 in September (when it supposedly had completed its document production), jumping to 13,000 in October, 22,400 in February, and now 31,000 today. (Reddy Decl. Ex. 4; ECF Nos. 22 at 10, 34 at 3.)  Moreover, OIG failed to promptly begin production of documents, only commencing its production seven months after receiving the Request.  (Eb. Decl. ¶ 5.)  Even then, OIG produced just a small fraction of potentially

15.

1   responsive documents; indeed, over twenty percent of the total documents it has produced

2   have been comprised entirely of third party documents such as letters from Pope Francis,

3   public laws, and reports authored by the ACLU itself.  (Eb. Decl. ¶ 7; Mot. at 3.)

4        Compounding its blatant disregard for this Court's mandatory production deadlines

5   and its obligations under the FOIA, OIG now seeks a last-minute stay.  OIG waited until

6   the deadline for its production before filing its Motion, despite apparently knowing well in

7   advance that it would be unable to meet those deadlines. (*See* ECF No. 28 at 2 (noting in

8   April that OIG was reviewing documents at a rate of 1,100 pages per month, with 18,000

9   pages remaining).) In so doing, OIG has effectively granted itself a de facto stay of

10  summary judgment briefing until the pending motion is resolved; such conduct has surely

11  "delay[ed] . . . the litigation or hamper[ed] enforcement of a court order" and is therefore

12  additional evidence of Defendants' bad faith. *Alexander*, 186 F.R.D. at 11.

13       Defendants have also willfully violated the Court's Order with respect to their

14  monthly status reports.  The Court's Order provided that Defendants, including OIG, must

15  provide monthly status reports, including "the review rate, remaining documents, and

16  otherwise show Defendants' compliance with the Court's Scheduling Orders."  (Order at

17  7.)  But Defendants' July 1, 2016 status report contained none of those facts with respect

18  to OIG, instead providing only excuses for Defendants' foreseeable failure to meet the

19  Court's deadline. In doing so, Defendants blamed litigation burdens arising from three

20  other FOIA matters.  But what Defendants declined to tell the Court, and what Plaintiffs

21  are only aware of through their involvement in two of the three cases cited, is that

22  Defendants had **substantially misrepresented** the burdens in those cases.  In *American*

23  *Civil Liberties Union of San Diego & Imperial Counties v. United States Department of*

24  *Homeland Security*, Case 8:15-cv-00229-JLS-RNB (C.D. Cal.), OIG completed its

25  document production earlier this year, producing three pages of responsive records. (Eb.

26  Decl. ¶ 4.)  In *Arizona Civil Liberties Foundation of Arizona v. United States Department*

27  *of Homeland Security*, Case 4:14-cv-02052-RM-BPV (D. Ariz.), OIG has also completed

28  its document production, which, by their own admission, only required review of 1200

pages.  (Mot. at 9.) And OIG's recent filing in *Litman v. U.S. Dep't of Homeland Sec.*, No. 3:15-cv-00760-C (N.D. Tex.) reveals their review burden consists of only half as many pages as they claim in filings to this Court. (Reddy Decl. Ex. 2.)   Defendants' misrepresentations suggest a willful effort to mislead Plaintiffs and this Court.

### B.    A Daily Fine is Appropriate.

"Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered coercive and avoidable through obedience." *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999). One of "the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'" *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)).

A daily fine is an appropriate remedy to ensure prompt production of the remaining documents in response to the Request, and is tailored to the "character and magnitude of the harm threatened by continued contumacy[.]" *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). Indeed, courts have awarded similar monetary penalties in comparable circumstances. *See United States v. Bright*, No. 07-00311 ACK-KSC, 2009 U.S. Dist. LEXIS 119862, at *43-45 (D. Haw. Dec. 23, 2009) (levying daily fine of $750 to compel a party to produce documents); *Nat'l Union Fire Ins. Co. v. Saunders*, No. 95-56742, 1997 U.S. App. LEXIS 4908, at *8-9 (9th Cir. Mar. 12, 1997) (upholding daily civil fine of $500 until he followed a court order to produce documents).  Further, denying the stay and failing to punish or enforce a FOIA deadline "gives Plaintiff[] a hollow victory and leaves them in exactly the same position as they were in before bringing suit." *Donham v. U.S. DOE*, 192 F. Supp. 2d 877, 884 (S.D. Ill. 2002).  For these reasons, Plaintiffs respectfully submit that a $500 daily fine against Defendants is appropriate.

### VII.   CONCLUSION

Defendants have provided no legal justification for the extension they seek.  Thus their Motion should be denied and Plaintiffs' Request for Sanctions should be granted.

DATED this 19th day of July, 2016.

Respectfully submitted,

ACLU FOUNDATION OF ARIZONA

By /s/ Daniel J. Pochoda
Daniel J.  Pochoda

ACLU   FOUNDATION   OF   SAN   DIEGO   AND
IMPERIAL COUNTIES

By /s/ Mitra Ebadolahi with permission
David Loy
Mitra Ebadolahi

COOLEY LLP

By /s/ Aarti Reddy
Aarti Reddy
Whitty Somvichian

*Attorneys for Plaintiffs*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I hereby certify that on July 19, 2016, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

7

    Mitra Ebadolahi
    David Loy
    Emily Sue Newton
    Daniel Joseph Pochoda
    Whitty Somvichian

8

9

10

                                            */s/ Aarti G. Reddy*
                                            Aarti G. Reddy

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19.