Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Tel:    (602) 650-1854
Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*

David Loy
Mitra Ebadolahi
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel:    (619) 232-2121
Email: *davidloy@aclusandiego.org*
Email: *mebadolahi@aclusandiego.org*

Whitty Somvichian (CA SBN 194463)
Aarti G. Reddy (CA SBN 274889)
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111-5800
Tel:    (415) 693-2000
Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF ARIZONA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES, *et al.*,<br><br>Defendants. | No.  CV-15-00247-PHX-JJT<br><br>**PLAINTIFFS AMERICAN CIVIL LIBERTIES UNION OF ARIZONA, *ET AL.*'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:      Hon. John J. Tuchi |

Plaintiffs hereby move for summary judgment, and oppose Defendants' motion for summary judgment, on all causes of action in their complaint, pursuant to Federal Rule of Civil Procedure 56.   The grounds for this motion are set forth in the memorandum submitted herewith and are also supported by the attached exhibits and declarations of:

- Aarti G. Reddy; Cooley LLP
- Kathryn Huddleston, ACLU Foundation of Arizona
- James F. Tomsheck

1  DATED this 28th day of March, 2017.

Respectfully submitted,

2

COOLEY LLP

3

4

/s/ Aarti G. Reddy

5  Aarti G. Reddy

6  Whitty Somvichian
Aarti G. Reddy

7  COOLEY LLP
101 California Street

8  5th Floor
San Francisco, CA  94111-5800

9  Tel:    (415) 693-2000
Email: *wsomvichian@cooley.com*

10  Email: *areddy@cooley.com*

11  ACLU FOUNDATION OF ARIZONA

12

/s/ Daniel J. Pochoda with permission

13  Daniel J. Pochoda

14  Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)

15  ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235

16  Phoenix, AZ 85014
Tel:    (602) 650-1854

17  Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*

18

ACLU FOUNDATION OF SAN DIEGO

19  AND IMPERIAL COUNTIES

20

/s/ Mitra Ebadolahi with permission

21  Mitra Ebadolahi

22  David Loy
Mitra Ebadolahi

23  ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES

24  P.O. Box 87131
San Diego, CA 92138

25  Tel:    (619) 232-2121
Email: *davidloy@aclusandiego.org*

26  Email: *mebadolahi@aclusandiego.org*

27  *Attorneys for Plaintiffs*

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

1

## **SIGNATURE CERTIFICATION**

2

In accordance with Paragraph II(C)(3) of the District of Arizona ECF

3

Administrative Policies and Procedures Manual (November 2016), I hereby certify that

4

5

the content of this document is acceptable to all registered signatories required to sign it.

6

*/s/ Aarti G. Reddy*

7

AARTI G. REDDY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Tel:   (602) 650-1854
Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*

David Loy
Mitra Ebadolahi
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel:   (619) 232-2121
Email: *davidloy@aclusandiego.org*
Email: *mebadolahi@aclusandiego.org*

Whitty Somvichian (CA SBN 194463)
Aarti G. Reddy (CA SBN 274889)
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111-5800
Tel:   (415) 693-2000
Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF ARIZONA, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES, *et al.*,<br><br>                    Defendants. | No. CV-15-00247-PHX-JJT<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS AMERICAN CIVIL LIBERTIES UNION OF ARIZONA, *ET AL.*'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:      Hon. John J. Tuchi |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1
II. BACKGROUND .................................................................................................... 2
    A. The Department of Homeland Security's Detention of Minors ................... 2
    B. Plaintiffs' FOIA Request ............................................................................ 2
    C. Defendants' Productions to Date ................................................................ 3
III. LEGAL STANDARD ............................................................................................ 4
    A. Purpose of FOIA and Governing Principles .............................................. 4
    B. Legal Standard On Summary Judgment ..................................................... 5
IV. ARGUMENT ........................................................................................................ 5
    A. Defendants Have Failed to Demonstrate Search Adequacy ....................... 5
        1. Defendants' Declarations Fail To Establish Search Adequacy ........ 6
        2. Defendants' Search Terms Were Either Overly Narrow Or
            Omitted Key Terms ......................................................................... 9
        3. CBP Unjustifiably Failed to Search Relevant Repositories ............. 13
        4. As a Result of These Deficiencies, There Are Significant Gaps
            in the Defendants' Production ......................................................... 14
    B. Defendants Have Not Demonstrated That Withheld Material Is
       Exempt From Disclosure ............................................................................ 15
        1. Defendants' Vaughn Indices Suffer from Myriad Deficiencies ...... 15
        2. Defendants' Claimed Exemptions Are Improper............................. 19
            a. CBP Has Improperly Withheld Policy Memos Under
                Exemption b(7)(e) ............................................................... 20
            b. Defendants Have Improperly Withheld Documents
                Describing Abuse Allegations under Exemption b(5) .......... 23
            c. Defendants Have Improperly Redacted the Names of
                DHS Employees Allegedly Responsible for Abuse of
                Minors ................................................................................. 24
            d. Defendants Improperly Redacted Case Numbers ................. 27
            e. Defendants Have Improperly Redacted Non-Identifying
                Information Regarding Detained Minors................................ 29
        3. Defendants Have Failed to Segregate Non-Exempt Materials ........ 29
V. RELIEF REQUESTED ......................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACLU of N. Cal. v. FBI,*
   No. 12-cv-03728-SI, 2014 WL 4629110 (N.D. Cal. Sept. 16, 2014) ........................... 30

*Sakamoto v. U.S. EPA,*
   443 F. Supp. 2d 1182 (N.D. Cal. 2006) ...................................................................... 26

*Air Force v. Rose,*
   425 U.S. 352 (1976) .................................................................................. 4, 19, 20

*Campbell v. DOJ,*
   164 F.3d 20 (D.C. Cir. 1998) ............................................................................ 6, 15, 20

*Carter v. United States DOC,*
   307 F.3d 1084 (9th Cir. 2002) ...................................................................................... 23

*Casa de Md., Inc. v. DHS,*
   No. 10-1264, 2011 WL 288684 (4th Cir. Jan. 31, 2011) ........................................... 27

*Church of Scientology of Cal. v. U.S. Dep't of Army,*
   611 F.2d 738 (9th Cir. 1979) ...................................................................................... 21

*Citizens Comm'n on Human Rights v. FDA,*
   1993 WL 1610471 (C.D. Cal. May 10, 1993) ............................................................ 25

*Coastal States Gas Corp. v. DOE,*
   617 F.2d 854 (D.C. Cir. 1980) .................................................................................... 23

*Davin v. DOJ,*
   60 F.3d 1044 (3d Cir. 1995) ........................................................................................ 16

*EPA v. Mink,*
   410 U.S. 73 (1973) ...................................................................................................... 24

*Exxon Corp. v. Dep't of Energy,*
   585 F. Supp. 690 (D.D.C. 1983) ................................................................................. 23

*Families for Freedom v. CBP,*
   837 F. Supp. 2d 287 (S.D.N.Y. 2011) .................................................................. 11, 25

**TABLE OF AUTHORITIES**
(continued)

Page

*Hajro v. U.S. Citizenship & Immigration Servs.*,
   No. 08-1350, 2011 U.S. Dist. LEXIS 117964 (N.D. Cal. Oct. 12, 2011) ................... 24

*Hamdan v. DOJ*,
   797 F.3d 759 (9th Cir. 2015) ............................................................................ 21, 28

*Jefferson v. DOJ*,
   168 F. App'x 448 (D.C. Cir. 2005) .......................................................................... 8, 9

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ....................................................................................................... 4

*Jud. Watch, Inc. v. Navy*,
   25 F. Supp. 3d 131 (D.D.C. 2014) ........................................................................... 26

*King v. DOJ*,
   830 F.2d 210 (D.C. Cir. 1987) ........................................................................... 16, 17

*L.A. Times Commc'ns, LLC v. Army*,
   442 F. Supp. 2d 880 (C.D. Cal. 2006) ...................................................................... 5, 30

*Lahr v. NTSB*,
   569 F.3d 964 (9th Cir. 2009) ......................................................................... *passim*

*Lawyers' Comm. for Civ. Rts. of S.F. Bay Area v.* Treasury,
   534 F. Supp. 2d 1126 (N.D. Cal. 2008) ................................................................... 10

*Lissner v. U.S. Customs Serv.*,
   241 F.3d 1220 (9th Cir. 2001) .......................................................................... 25, 27

*Maricopa Audubon Soc'y v. Forest Serv.*,
   108 F.3d 1089 (9th Cir. 1997) ............................................................................. 5, 16

*Mead Data Central, Inc. v. Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ........................................................................... 4, 30

*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) .................................................................................. 4, 19, 21

*Muchnick v. Dep't of Homeland Sec.*,
   2016 U.S. Dist. LEXIS 22683 (N.D. Cal. Feb. 24, 2016) ........................................ 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Day Laborer Org. Network v. ICE*
877 F. Supp. 2d 87 (S.D.N.Y. 2012) ................................................................. 7, 8, 12

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) ............................................................................. 6, 10

*Negley v. FBI*,
658 F. Supp. 2d 50 (D.D.C. 2009) ...................................................................... 6, 10

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ................................................................................................... 4

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ................................................................................................. 23

*Oglesby v. U.S. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) .................................................................................... 6

*Pratt v. Webster*,
673 F.2d 408 (D.C. Cir. 1982) .......................................................................... 25, 26

*Providence Journal Co. v. U.S. Dep't of Army*,
781 F. Supp. 878 (D.R.I. 1991) ............................................................................... 27

*Rodriguez v. DOD*,
No. 14-cv-0101(KBJ), 2017 WL 650057 (D.D.C. Feb. 15, 2017) .......................... 8, 10

*Rosenfeld v. DOJ*,
57 F.3d 803 (9th Cir. 1995) .............................................................................. 22, 26

*Rosenfeld v. DOJ*,
No. C 07-03240 MHP, 2008 WL 3925633 (N.D. Cal. Aug. 22, 2008) .................... 9, 11

*Rosenfeld v. DOJ*,
No. C 07-3240 MHP, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) ........................... 25

*Schoenman v. FBI*,
604 F. Supp. 2d 174 (D.D.C. 2009) ......................................................................... 16

*Shannahan v. IRS*,
672 F.3d 1142 (9th Cir. 2012) .................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page

*Stern v. FBI,*
    737 F.2d 84 (D.C. Cir. 1984) ................................................................. 27

*Utahamerican Energy, Inc. v. MSHA,*
    725 F. Supp. 2d 78 (D.D.C. 2010) ........................................................ 10

*Valencia-Lucena v. Coast Guard,*
    180 F.3d 321 (D.C. Cir. 1999) ........................................................ 13, 14

*Vaughn v. Rosen,*
    523 F.2d 1136 (D.C. Cir. 1975) ................................................... *passim*

*Vietnam Veterans v. Dep't of Homeland Sec.,*
    8 F. Supp. 3d 188 (D. Conn. 2014) .................................................. 10, 13

*Vild v. IRS,*
    1996 U.S. Dist. LEXIS 3785 (D. Ariz. 1996) ......................................... 5

*Weisberg v. DOJ,*
    705 F.2d 1344 (D.C. Cir. 1983) ............................................................ 14

*Weisberg v. DOJ,*
    745 F.2d 1476 (D.C. Cir. 1984) .............................................................. 6

*Wiener v. FBI,*
    943 F.2d 972 (9th Cir. 1991) ............................................................... 17

*Wilkinson v. FBI,*
    633 F. Supp. 336 (C.D. Cal. 1986) ....................................................... 22

*Yonemoto v. Dep't of Veteran's Affairs,*
    686 F.3d 681 (9th Cir. 2012) ......................................................... 16, 19

*Zaldivar v. United States VA,*
    2016 U.S. Dist. LEXIS 111490 (D. Ariz. Aug. 22, 2016) ......................... 5

*Zemansky v. EPA,*
    767 F.2d 569 (9th Cir. 1985) ................................................................. 6

# TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

5 U.S.C.
   § 552(a)(3)(A) ................................................................................................ 4
   § 552(a)(3)(C) .............................................................................................. 10

   § 552(a)(3)(D) ............................................................................................... 4
   § 552(a)(4)(B) ............................................................................................ 5, 6
   § 552(a)(6)(E)(i) ............................................................................................ 2
   § 552(a)(6)(E)(v) ........................................................................................... 2
   § 552(b) ..................................................................................................... 5, 29
   § 552(b)(1)–(9) ............................................................................................ 20
   § 552(b)(6) .................................................................................................. 25
   § 552(b)(7)(E) ......................................................................................... 21, 22

Cooley LLP
Attorneys At Law
San Francisco

## I.     INTRODUCTION

U.S. Customs and Border Protection ("CBP") and its sub-agency, the U.S. Border Patrol ("USBP"), apprehends, processes, and detains the majority of unaccompanied children arrested along U.S. borders.[1]  Advocates and academics have issued numerous reports and filed hundreds of complaints with Department of Homeland Security ("DHS") government oversight bodies describing Border Patrol agents' abusive treatment of children and inhumane confinement conditions. Despite these efforts, DHS officials have failed to investigate these allegations.  In December 2014, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to CBP and DHS, seeking documents related to the abuse and mistreatment of unaccompanied children in DHS custody.  Defendants failed to timely respond to this Request, forcing Plaintiffs to file this lawsuit in March 2015. Despite the crucial importance of the requested records, Defendants have dragged their feet for nearly *two-and-a-half years*, only completing production in February 2017.

Defendants' summary judgment motion—filed on the date of its last production— establishes that they have neither conducted a reasonable search nor demonstrated that the information withheld from Plaintiffs is exempt from disclosure.  Indeed, due to myriad deficiencies in the *Vaughn* Indices and accompanying declarations, it is virtually impossible for the Court to perform the *de novo* review required at this stage, or for the Plaintiffs to meaningfully evaluate Defendants' search adequacy or the claimed exemptions.  Plaintiffs therefore respectfully ask this Court to deny Defendants' motion for summary judgment and grant Plaintiffs' cross motion.  Plaintiffs further request that the Court issue an order directing the Defendants to: (1) conduct new, adequate searches to correct the deficiencies identified below and promptly release all responsive records; (2) promptly release the improperly withheld or redacted material identified below; (3) in the alternative, perform an immediate *in camera* review of certain specific documents

---

[1] Congressional Research Service, Unaccompanied Children: An Overview at 1 *available at* https://fas.org/sgp/crs/homesec/R43599.pdf (last visited March 22, 2017) ("CRS Unaccompanied Children Report").

identified below, to the extent the Court does not order immediate release of those documents; (4) supplement the record with more detailed information regarding segregability; (5) (a) submit revised affidavits and *Vaughn* Indices describing Defendants' search processes and exemptions; and (b) log additional records located based on further searches in the same manner, so that the Court may properly assess the state of the record.

## II.    BACKGROUND

### A.    The Department of Homeland Security's Detention of Minors

The abuse of children in Border Patrol custody has been well-documented for years. (*See* Compl. ¶ 14) The volume and consistency of these complaints suggest systemic deficiencies in CBP's detention policies and practices, and yet the extent of these problems is unknown, in part because CBP restricts access to its facilities. (*Id.* at ¶ 16)

DHS officials are well aware that children have been subjected to abuse by Border Patrol agents and that DHS detains children in inhumane conditions, yet they have allowed this maltreatment to remain unchecked. On June 11, 2014, the ACLU and partner organizations submitted an administrative complaint on behalf of 116 unaccompanied children to Defendants DHS Office for Civil Rights and Civil Liberties ("CRCL") and DHS Office of Inspector General ("OIG"), alleging Border Patrol abuse of children in agency custody. (*Id.* at ¶ 15) CBP's Commissioner acknowledged that complaints regarding detention conditions were "absolutely spot-on" and initially indicated the agency would conduct a full investigation. (*Id.* at ¶ 17) Instead, less than four months later, OIG reported it would be "curtailing routine inspections," and it has neither issued subsequent findings nor taken any other public action in response to the complaint. (*Id.*)

### B.    Plaintiffs' FOIA Request

On December 3, 2014, American Civil Liberties Union of Arizona and American Civil Liberties Union of San Diego and Imperial Counties ("Plaintiffs") submitted a FOIA request (the "Request") to Defendant DHS, seeking expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i) and 5 U.S.C. § 552(a)(6)(E)(v). (Statement of Facts ("SOF") ¶1) DHS subsequently forwarded the Request to CBP, CRCL, Immigration and Customs

Enforcement ("ICE"), and OIG—together with DHS, "Defendants." (SOF ¶3)[2]

The Request sought records related to abuse of children in the custody of Defendant CBP and its sub-agency, the Office of Border Patrol, from 2009 to 2014. The purpose of the Request was to gather information regarding the full extent of the abuse and mistreatment of children in Border Patrol facilities in order to hold DHS accountable for providing competent care for juvenile detainees. (SOF ¶ 2)

### C.   Defendants' Productions to Date

After litigation commenced, the Court ordered Defendants to produce responsive records to Plaintiffs by May 27, 2016. (ECF No. 20)   Defendants sought multiple extensions, which Plaintiffs opposed. (SOF ¶ 4)   Upon completion of Defendants' production in October 2016, the parties agreed that summary judgment briefing would commence on February 7, 2017. (ECF No. 51)   Defendants sought another briefing extension and OIG produced approximately 2,000 additional pages (representing nearly 20% of its total production in this case) on February 10, 2017. (Reddy Decl. ¶ 2)

In total, Defendants have produced approximately 32,000 pages of documentary records and 35 audio files, primarily from CRCL, OIG, CBP and ICE. (SOF ¶ 5)   As detailed below, Defendants' productions are confused and confusing: many records appear to be missing, and their descriptions of withholdings leave unanswered questions.[3]

Many of these records reflect deeply troubling patterns of physical and sexual abuse of children in CBP custody. (Reddy Decl. Ex. 1-A (Unaccompanied Minor ("UAC") in Texas reported scalp laceration requiring emergency staples at a local hospital); Ex. 1-B (UAC in Arizona reported witnessing a sixteen-year-old UAC "f[a]ll to

---

[2] Throughout Defendants' production, brief, and declarations, specific acronyms were used to refer to groups of immigrants, specific laws, and Defendants' departments and sub-agencies. Reddy Decl. Ex. 20 contains a list of these acronyms for ease of reference.

[3] For example, CRCL asserts that it processed 492 potentially responsive complaints. (Tyrell Decl. ¶¶ 17–18) From CRCL's production, Plaintiffs identified substantive information regarding roughly 352 complaints and an additional 39 complaint numbers dissociated from any substantive information. Plaintiffs are unable to assess how many of the remaining 100+ complaints have been withheld, and if so, how many. (SOF ¶ 31)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the ground" because a Border Patrol agent hit her in the head with a flashlight); Ex. 1-C (15-year-old UAC reported Border Patrol agents telling her that "if they wanted, they could put her in a locked room, rape her, and beat her, and that no one would know"); Ex. 1-D (Border Patrol agent allegedly tased Unaccompanied Minor ("UAC")); Ex. 1-E (UAC reported four Border Patrol agents pushed him to the ground and beat him with closed fists).)

Between December 2016 and January 2017, the parties unsuccessfully attempted to clarify and narrow the issues presented to this Court for decision. (Reddy Decl. ¶ 5)

## III.   LEGAL STANDARD

### A.   Purpose of FOIA and Governing Principles

Congress enacted FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Shannahan v. IRS*, 672 F.3d 1142, 1149 (9th Cir. 2012) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). The statute is designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "Without question, the Act is broadly conceived.  It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52 (1989) (citation omitted).

Upon receipt of a FOIA request, a federal agency "shall make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable efforts to search for the records" responsive to a request. *Id.* § 552(a)(3)(C)–(D). Agencies must respond to FOIA requests within twenty business days of receipt, *id.* § 552(a)(6)(A)(i), and disclose responsive documents unless one or more of FOIA's exemptions apply. These exemptions are "narrowly construed." *Shannahan*, 672 F.3d at 1149; *Rose*, 425 U.S. at 361; *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Mead Data Central, Inc. v. Air Force*, 566 F.2d

242, 259 (D.C. Cir. 1977). An agency bears the burden of establishing that an exemption applies. *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). "Any reasonably segregable portion of a record shall be provided" to the FOIA requester.  5 U.S.C. § 552(b).

### B.   Legal Standard On Summary Judgment

FOIA requires *de novo* review of an agency's FOIA response. 5 U.S.C. § 552(a)(4)(B). The "typical standard for summary judgment is not sufficient in a FOIA proceeding," which instead "generally requires a two-stage inquiry." *L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006) (quotation marks and citations omitted). ***First***, the government must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zaldivar v. United States VA*, 2016 U.S. Dist. LEXIS 111490, at *9 (D. Ariz. Aug. 22, 2016) (citation omitted); *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009). ***Second***, "FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr*, 569 F.3d at 973 (citation omitted); *Vild v. IRS*, 1996 U.S. Dist. LEXIS 3785, at *3 (D. Ariz. 1996).

"Courts must apply [the government's] burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y v. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quotation marks and citation omitted). For this reason, "the underlying facts and possible inferences are construed in favor of the FOIA requester." *L.A. Times*, 442 F. Supp. 2d at 894 (citations omitted).

## IV.   ARGUMENT

Defendants are not entitled to summary judgment because they not met their burden of establishing that: (1) they have performed an adequate search in response to the Request; or (2) the information withheld is properly exempt from disclosure.

### A.   Defendants Have Failed to Demonstrate Search Adequacy

An agency bears the burden of proving that it conducted an adequate search for

responsive documents. 5 U.S.C. § 552(a)(4)(B); *see Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). To prove the adequacy of a search, the agency may rely upon reasonably detailed, non-conclusory affidavits submitted in good faith. *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Those affidavits "must ... set [ ] forth the search terms and the type of search performed, and aver [ ] that all files likely to contain responsive materials (if such records exist) were searched." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Courts apply a standard of reasonableness to determine whether an agency's search was adequate, construing the facts in the light most favorable to the requester. *See Zemansky*, 767 F.2d at 571. "[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be expected to produce the information requested[.]" *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citation omitted).

Defendants are not entitled to summary judgment as to search adequacy because: (1) Defendants' declarations are deficient; (2) the search terms applied were unreasonably narrow; and (3) several relevant CBP subcomponents were not searched at all.

## 1. Defendants' Declarations Fail To Establish Search Adequacy

Defendants' declarations are deficient because they: (1) fail to disclose search terms and/or fail to use search terms reasonably calculated to lead to the production of relevant information; (2) do not provide sufficient detail regarding search processes; and (3) do not adequately explain why certain repositories were omitted from Defendants' searches. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (denying summary judgment where Defendant did not establish search was "reasonably calculated to uncover all relevant documents").

*First*, Defendants CBP, OIG, and ICE do not adequately describe their search terms. A FOIA defendant's failure to disclose search terms impedes the plaintiff's ability to discern whether the search was comprehensive. *See Negley v. FBI*, 658 F. Supp. 2d 50, 60 (D.D.C. 2009) (denying summary judgment where affidavit "d[id] not set forth with sufficient clarity which search terms were used"). For certain CBP, OIG, and ICE

searches, Defendants do not provide *any* information regarding the search terms used.  For example, CBP does not provide the search terms used for CBP CSCD or for the Tucson Border Patrol Sectors.  (SOF ¶¶ 6-7)  These omissions are especially glaring with respect to the Tucson Sector, where CBP located zero responsive records despite the very large number of children apprehended and detained there.[4]  Likewise, no search terms are specified for searches performed by: (1) DHS OIG ISP; (2) ICE ERO's Eastern and Western Division Unit Chiefs; and (3) ICE ODPP.  (SOF ¶¶ 25, 45, 46.)

*Second*, Defendants' descriptions of the searches performed are inadequate.  A FOIA defendant's description of search processes must be sufficiently detailed.  *Nat'l Day Laborer Org. Network v. ICE* 877 F. Supp. 2d 87, 106 (S.D.N.Y. 2012) [hereinafter *NDLON*] ("custodians cannot 'be trusted to run effective searches,' without providing a detailed description of those searches, because FOIA places a burden on defendants to *establish* that they have conducted adequate searches").  Here, Defendants' descriptions of searches fall far short of this requisite level of detail.  For example, as to OIG's OLA, OIG merely states that a "subject matter expert" searched her "sent" folder for potentially responsive emails and documents.  (SOF ¶ 28)  This bare statement, coupled with the admission that the agency also experienced "technical issues relating to the inaccessibility of archived emails," that prompted new searches to be performed within other OIG components, raises serious questions about OLA's search.  (SOF ¶ 29)  Similarly, OIG states that "[s]ubject matter experts" at OPA and OIG's Front Office "conducted searches for responsive emails and documents" of "relevant employees." (SOF ¶ 27)  OIG does not offer any information regarding who performed the search, which employees were included or excluded (and why), which document repositories were searched, or what search terms or search processes were employed.  (*Id.*)

CRCL's description of a "manual[] review[] by employees within the Compliance Branch" as to whether complaints involved "issues deemed responsive"—including

---

[4] *See* CRS Unaccompanied Children Report at 3.

"abuse of authority/misuse of official position" and "inappropriate questioning/inspection conditions"—is likewise inadequate. (Tyrell Decl. ¶ 16) It provides no explanation of whether employees used common standards or guidelines in determining that complaints involved such issues or, if not, how they reached their determinations. (SOF ¶ 33) It also fails to specify *which* Compliance Branch employees conducted the review. (*Id.*)

Similarly, both CBP's and ICE's search descriptions are insufficient. CBP offers an insufficient explanation as to its search process of hard copy archives at the Del Rio Sector.  (SOF ¶ 10)  ICE ERO Field Operations only states that unit chiefs performed "manual searches" based on "knowledge and expertise," while ICE ODPP provides no detail regarding the individual email accounts it searched.  (SOF ¶¶ 45-46)

Courts have found that FOIA defendants are not entitled to summary judgment where such deficiencies are present.  *See, e.g.*, *NDLON*, 877 F. Supp. 2d at 106 (as to statement that certain custodians conducted a "manual" review, "the FBI's declarant should have provided some specificity about what his manual search entailed"); *Rodriguez v. DOD*, No. 14-cv-0101(KBJ), 2017 WL 650057 (D.D.C. Feb. 15, 2017) ("In the absence of a declaration that clearly answers obvious questions about *how* [the individual performing the search] conducted the physical and electronic search . . . this Court has serious doubts about the reasonableness of the search methods employed").

***Third***, Defendants' declarations often do not explain why certain repositories were not searched, where it appears obvious that those sources are likely to contain responsive information.  *Jefferson v. DOJ*, 168 F. App'x 448, 450 (D.C. Cir. 2005) ("the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested").  For example, as to CBP, no searches appear to have been performed by Yuma, Grand Forks, Miami, Ramey, and New Orleans Border Patrol Sectors, (SOF ¶ 9) and CBP's declaration is deficient in explaining the agency's decision not to search these locations. Similarly, ICE fails to explain why ICE Health Services restricted its search to certain specific regions. (SOF ¶ 48)  Additionally, ICE ERO Field Operations does not address why it limited its search to the unit chiefs of the Eastern and

Western region operation divisions, or why the searches performed by those two individuals differed.  (SOF ¶ 46) ICE also fails to explain why the Office of Policy did not search for responsive documents.  (SOF ¶ 52)  Instead, ICE relies on bare statements, claiming it determined, "[b]ased on subject matter expertise and knowledge of the program office's activities" that it would "not possess any responsive records." (*Id.*)

CRCL's declaration also fails to establish it performed an adequate search of all responsive repositories. First, CRCL's restriction of its search to the investigatory Compliance Branch appears to be unreasonable and is not adequately explained. (Tyrell Decl. ¶¶ 13, 16) Plaintiffs' requests implicate policies or training materials potentially in CRCL's possession.  CRCL does not explain its failure to search for documents located with the Programs Branch, which engages in "policy advice," including training and technical assistance.[5] Second, CRCL also does not establish that it searched for responsive records in the possession of *oversight* authorities in the Compliance Branch, including the Officer for Civil Rights and Civil Liberties and the Programs and Compliance Deputy Officer. (SOF ¶ 32)[6] Additionally, CRCL apparently conducted no search pertaining to the Executive Officer or Senior Advisor, *id.*, and has not explained why searches of these records were ruled out.  Third, CRCL's description of the Entellitrak database fails to clarify whether *all* responsive documents in the Compliance Branch's possession— including, for example, any internal communications, training, or guidance that might not pertain to specific complaints—would be located in this database. (Tyrell Decl. ¶ 15); *see Rosenfeld*, 2008 WL 3925633 at *14 (finding inadequate a search description that failed to indicate "which databases and indices were not searched and why not").

### 2.   Defendants' Search Terms Were Either Overly Narrow Or Omitted Key Terms

Defendants' motion for summary judgment fails on another independent basis:

---

[5] *See Office for Civil Rights and Civil Liberties*, Dep't of Homeland Sec. (last updated Feb.17, 2017), https://www.dhs.gov/office-civil-rights-and-civil-liberties.
[6] *See Office for Civil Rights and Civil Liberties Organizational Chart*, Dep't of Homeland Sec. (Sept. 28, 2015), https://www.dhs.gov/publication/crcl-organizational-chart.

1    each of the Defendants unjustifiably and inexplicably restricted their search terms.

2        "An agency has a duty to construe a FOIA request liberally . . . [and] conduct a

3    'reasonable' search for responsive records using methods that can be reasonably expected

4    to produce" the requested information." *Lawyers' Comm. for Civ. Rts. of S.F. Bay Area v.*

5    *Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) (citation omitted) [hereinafter

6    *LCCR*] (citing 5 U.S.C. § 552(a)(3)(C)).   A FOIA defendant is thus not entitled to

7    summary judgment where it relied on overly narrow search terms that may have excluded

8    responsive documents.  *See Rodriguez*, 2017 WL 650057 at *9 (summary judgment

9    denied in part because search terms used "may well have been too restrictive to uncover

10   all responsive records in [the agency's] possession"); *Vietnam Veterans v. Dep't of*

11   *Homeland Sec.*, 8 F. Supp. 3d 188, 217 (D. Conn. 2014) (summary judgment denied

12   where search terms "appear[ed] to the court to be too narrow, such that potentially

13   responsive documents may not have been retrieved by the search").[7] "To assess the

14   adequacy of [the] search, we must first ascertain the scope of the request itself." *Nation*

15   *Mag. Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). Here, Plaintiffs'

16   Request encompasses, *inter alia*, all records relating to actual and alleged complaints of

17   verbal, physical, and/or sexual abuse of children in DHS custody and complaints related

18   to conditions of confinement.  (SOF ¶ 2)  However, many of Defendants' searches failed

19   to use search terms that would capture all elements of the Request.  Moreover, as noted

20   above, it is Defendants' burden to establish that the searches were reasonably calculated to

21   uncover all responsive records. *Lahr*, 569 F.3d at 973. Defendants have not met this

22   burden, as the record before this Court indicates many instances where Defendants

23   unreasonably relied on narrow and formalistic search terms and omitted obvious

24   additional search terms likely to generate responsive records.

25   _____

26   [7]  *See also, e.g.*, *Negley v. FBI*, 658 F. Supp. 2d at 60–61 (search terms were inadequate
     where FBI "did not search for other permutations of the name, and therefore the search
27   was not reasonably calculated to turn up all responsive files"); *Utahamerican Energy, Inc.
     v. MSHA*, 725 F. Supp. 2d 78, 84 (D.D.C. 2010) ("omitting from the search an alternative
28   name by which the subject of the search is known renders the search inadequate, even if
     the search terms . . . were likely to reveal many emails responsive to [the FOIA] request").

**CRCL** employed the search terms "child OR children" and "unaccompanied minor." (SOF ¶ 34)  These search terms are under-inclusive, omitting "UAC"—a term which CRCL's own records demonstrate is commonly used to refer to unaccompanied children.  (*Id.*; *see also* Reddy Decl. ¶ 6)  Moreover, it is not clear based on CRCL's declaration that all complaint summaries involving unaccompanied children include the keywords "child OR children" or "unaccompanied minor" – yet CRCL narrowed all responsive documents by these terms.  (SOF ¶ 34); *see Rosenfeld v. DOJ*, No. C 07-03240 MHP, 2008 WL 3925633 at *14 (N.D. Cal. Aug. 22, 2008) (where agency failed to explain how files were indexed in database, court could not determine whether search based on name rather than other search terms was reasonable).  And CRCL's search was demonstrably under-inclusive in another respect: it failed to include verbal abuse among the "issues deemed responsive" in its manual review.  (SOF ¶ 33)

**CBP** also inappropriately restricted its search terms.  The Spokane Sector employed the search phrases "verbal abuse of children" and "physical abuse of children," but these searches could have omitted responsive documents that did not incorporate that specific phrasing. (SOF ¶ 12)  Similarly, CBP HRM performed searches using the term "frigid cells" rather than "cold"— a simpler, more intuitive term employed by CBP SITROOM.  (SOF ¶ 13)  HRM searched the term "ProBar," which is only one of at least three advocacy organizations that have submitted complaints regarding unaccompanied children's treatment in CBP custody.  HRM apparently did not use search terms to capture these other, similar advocacy organizations.  (SOF ¶¶ 14-15)

Notably, CBP's description of its databases and divisions establishes that its search terms were under-inclusive.  CBP states that "HRM . . . monitor[s] and integrate[s] the development and implementation of CBP labor and employee relations programs to facilitate an effective CBP workforce." (SOF ¶ 16)  Yet in searching HRM, CBP failed to include any terms related to "discipline," "misconduct," or "abuse"—all of which would be responsive to Plaintiffs' Request.  (*Id.*)  Similarly, although CBP OPR is responsible for "all CBP-wide programs and policies relating to corruption, misconduct, or

mismanagement," CBP omitted any search terms that would capture "corruption," "misconduct," "discipline," or "abuse." (SOF ¶ 17)  Conversely, searches performed by certain Border Patrol sectors were overly narrow: the terms used would only capture complaints regarding physical abuse—but *not* necessarily confinement conditions.  (SOF ¶ 11 (CBP Havre Sector employed keywords "abuse" and "juvenile").)

Several searches performed by **ICE** are similarly deficient. Specifically, the Executive Associate Director's Office used search terms that consisted of lengthy phrases that are unlikely to capture all responsive materials pertaining to abuse or neglect of unaccompanied minors. (Pineiro Decl. ¶ 30 (search terms include "complaints physical abuse of children" and "abuse of children DHS custody").)  ICE Health Services omitted any search terms pertaining to detention conditions.  (*Id*. ¶ 31 (stating that ICE Health Services used terms such as "rape," "assault," and "fight," but failed to include terms related to detention conditions).)  And although ICE states that its Custody and Management Division "provides policy and oversight for . . . ICE detention operations," none of its search terms relate to policy guidelines or department standards.  (*Id.* ¶ 29 (search includes terms such as "complaint" or "investigation").)  Notably, none of the Custody and Management Division searches are specific to unaccompanied children.  (*Id.*)  Likewise, although ICE OPR and OHC searched certain ICE case numbers to locate responsive records, ICE provides no explanation or justification as to why a search of those case numbers would be sufficient or exhaustive.  (*Id.* ¶¶ 34, 38)

**OIG** employed extremely specific phrasing when performing searches within the Office of Audits ("AUD").  According to OIG's own declaration, AUD "examine[s] the methods employed by agencies, bureaus, grantees, and contractors in carrying out essential programs or activities . . . and evaluate[s] whether . . . results are consistent with laws, regulations, and good business practices[.]"  (Goal Decl. ¶ 9.)  Yet Defendants employed unreasonably narrow search terms—"child abuse," "children abuse," "Victims of Child Abuse Act," and "Prison Rape Elimination Act" (SOF ¶ 38)—for which they unsurprisingly identified zero records responsive to Plaintiffs' Request.  (*Id.* ¶ 39)  These

terms were also overly limiting because they omit common acronyms such as UAC and PREA (used to refer to the Prison Rape Elimination Act). (Reddy Decl. ¶ 7) The search terms employed by OIG ISP are identical and are thus under-inclusive as well. (SOF ¶ 40)

Finally, these deficiencies are especially problematic because Defendants do not specifically attest that the search terms were exhaustive. (SOF ¶ 20)  *Vietnam Veterans*, 8 F. Supp. 3d at 217 (denying summary judgment where declarant "d[id] not aver that those two search terms would capture all responsive documents or state why they would").

### 3.    CBP Unjustifiably Failed to Search Relevant Repositories

Although an agency is not always required to search each and every record system to obtain documents responsive to the request (Mot. at 4), "[i]t is well-settled that if an agency has reason to know that certain places *may* contain responsive documents, it is obligated under FOIA to search [them] barring undue burden." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999).

Here, CBP is not entitled to summary judgment as to the adequacy of its search because it inexplicably did not search at least five entities responsible for defining policy, developing training materials, investigating complaints, or imposing discipline. Specifically, CBP did not collect materials from or perform searches of repositories within any of the following entities:  (1) Office of Border Patrol Headquarters, which collects, aggregates, and performs policy analyses of complaint-related records generated from Border Patrol Sectors; (2) the Office of Policy and Planning, which assesses and responds to complaints and other matters related to agency integrity; (3) the Discipline Review Board within HRM, which reviews serious allegations of misconduct; (4) the Office of Training and Border Patrol training facility in Artesia, New Mexico, which maintains CBP records and CBP and Border Patrol training materials; and (5) the CBP Office of the Commissioner, which oversees the implementation of CBP's mission and its various components.  (SOF ¶ 21; Tomsheck Decl. ¶¶ 6-10)

CBP's failure to search the Discipline Review Board ("DRB") within HRM is a particularly egregious.  CBP states that HRM "is the sole authority within CBP for

management of labor and employee relations programs." (SOF ¶ 19) Within HRM, DRB is tasked with reviewing serious allegations of misconduct, including allegations that would subject an agency employee to severe discipline or removal. (Tomsheck Decl. ¶ 9) Inexplicably, HRM limited its search to an altogether different source—the Human Resources Business Engine ("HRBE")—and did not search DRB at all, despite the fact that "*[i]nvestigatory material is not stored in HRBE*." (*Id.*) This suggests that responsive investigatory and discipline-related material within HRM has been omitted entirely.

### 4.  As a Result of These Deficiencies, There Are Significant Gaps in the Defendants' Production

Given these various deficiencies, it is perhaps unsurprising that "the record itself reveals positive indications of overlooked materials." *Valencia–Lucena*, 180 F.3d at 327. Defendants are not entitled to summary judgment for this reason as well. *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Evidence that relevant records have not been released may shed light on whether the agency's search was indeed inadequate.").

At the outset, it is important to explain the challenges posed to Plaintiffs in reviewing the underlying records. The vast majority of the records produced by Defendants were delivered as unsearchable pdf files hundreds of pages in length. These files each contained numerous individual documents, which were not organized in any manner and frequently pertained to multiple individual allegations. (Reddy Decl. ¶ 8) Plaintiffs then "unitized" these materials—i.e., divided the pdfs into discrete documents—so as to attempt to review each individual record. (*Id.*) Because of the production format, searching and sorting the documents electronically has posed significant challenges. (*Id.*)

Despite these obstacles, Plaintiffs discovered ample evidence of documents and other attachments that were neither produced nor listed as withheld in Defendants' *Vaughn* Indices. For example, CBP produced numerous "Reports of Investigation" ("ROI") that are missing pages or that refer to exhibits that were not produced. (SOF ¶ 22) Some ROI exhibits are pictures of CDs that purport to contain interviews with Border Patrol agents regarding misconduct allegations. (SOF ¶ 23) Yet the contents of those

CDs themselves were not produced.  (*Id.*)  Similarly, OIG failed to produce attachments to Case Summary Reports.  (SOF ¶ 41)  As both the ROI and Case Summary reports relate to allegations of misconduct, these attachments are responsive to the Request.

OIG has also systematically failed to produce responsive email attachments.  For example, numerous emails reference a spreadsheet with the file name "CRCL Complaints Regarding Sexual Assault and UAC," followed by a numeric date suggesting the spreadsheet was generated between August 2014 and December 2014.  (SOF ¶ 43)  None of these attachments were produced with the parent email, and Plaintiffs have been unable to locate this spreadsheet elsewhere in OIG's production.   (*Id.*)  Other missing email attachments are also evident throughout OIG's production.  (SOF ¶ 42)   Given these indications, Defendants' searches are legally inadequate.  *See Campbell,* 164 F.3d 20 at 28. (search inadequate where agency ignored affirmative indications of additional responsive records after initial search).

Finally, the apparent absence of documents related to category 6 of the Request also suggests that Defendants' search was inadequate.  Plaintiffs have not located *any* produced documents concerning discipline of officers involved in incidents of child abuse. This is perhaps unsurprising, given the deficiencies in search terms employed by Defendants, which virtually ensured that such disciplinary records would not be located.

## B.    Defendants Have Not Demonstrated That Withheld Material Is Exempt From Disclosure

Defendants are also not entitled to summary judgment as to the propriety of their claimed exemptions because: (1) Defendants' *Vaughn* Indices are deficient in key respects; and (2) many of Defendants' claimed exemptions are improper.

### 1.    Defendants' *Vaughn* Indices Suffer from Myriad Deficiencies

Defendants claim that their *Vaughn* Indices appropriately employ a categorical approach and that, together with the accompanying affidavits, these materials provide a detailed "bases for [the] withholdings."  (Mot. at 13–14)  Defendants are wrong.

"[T]he FOIA places the burden on the agency to establish its right to withhold

information under one of the enumerated FOIA Exemptions," which it may do by producing a *Vaughn* Index. *Schoenman v. FBI*, 604 F. Supp. 2d 174, 196 (D.D.C. 2009). That index "must identify each withheld document, describe its contents to the extent possible, and give 'a particularized explanation of why each document falls within the claimed exemption." *Yonemoto v. Dep't of Veteran's Affairs*, 686 F.3d 681, 692 (9th Cir. 2012). It must also "reveal as much as possible as to the nature of the document, without actually disclosing information that deserved protection." *Id.* The agency's submissions must be "detailed enough for the district court to make a de novo assessment of the . . . .claim[ed] [] exemption." *Maricopa Audubon*, 108 F.3d at 1092 (citation omitted).

Agencies may sometimes create a categorical *Vaughn* Index, but "[t]he availability of categorization does not . . . supplant the demand for particularity. . . . *Vaughn*'s call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld*." *King v. DOJ*, 830 F.2d 210, 214 (D.C. Cir. 1987); *Davin v. DOJ*, 60 F.3d 1044, 1051 (3d Cir. 1995) (categorical index must "provide the 'connective tissue' between the document, the deletion, the exemption and the explanation"). Moreover, "[c]ategorical description[s] of redacted material coupled with categorical indication[s] of anticipated consequences of disclosure is clearly inadequate." *King*, 830 F.2d at 214.

Applying these standards, **CBP's** *Vaughn* Index is grossly inadequate. In many instances, there is no way for the Court or Plaintiffs to discern the basis for withholding, or whether the claimed Exemption is appropriate. ***First***, CBP lumps together dozens (indeed, sometimes hundreds) of loosely related documents into a single category correlated with multiple exemptions. (*See, e.g.*, CBP *Vaughn* Index at 7, 11-12.) This approach renders it virtually impossible to determine ***which*** claimed exemptions apply to a particular document. (SOF ¶ 24) ***Second***, CBP's description of documents withheld in their entirety is highly generic; it is impossible to decipher either why these documents are withheld or whether the purportedly exempt material contained therein could reasonably be segregated. (CBP *Vaughn* Index at 7 (describing dozens of documents as "Database

Query Results," which are either partially or completely withheld); *id.* at 20 (identifying several withheld documents as "Records indicating name, location, star numbers and assignment locations").)   This is especially problematic where redacted and withheld documents are lumped together on the *Vaughn* Index; in such instances, the basis for a withholding could be any one of several claimed exemptions within that category.  (*Id.* at 7)  **Third**, CBP's description of the redacted material is often so vague or inaccurate that it is not possible to decipher exactly what has been redacted.  For example, on page 7 of the index, CBP identifies a category of documents as "Database Query Results."   In identifying the material redacted therefrom, however, CBP's index *also* only states that "Database Query Results" were redacted pursuant to (b)(7)(E). (*Id.* at 7)  **Fourth**, in explaining whether a particular set of redactions is appropriate, CBP's index frequently cross-references a discussion from an earlier portion of the index.   For instance, in explaining its Exemption b(6) and b(7)(C) redactions of "daily activities logs" (p. 19), CBP cross-references its discussion of Significant Incident Reports ("SIRs") (p. 1).  There is no clear connection, however, between these different categories of documents or the information redacted from each.  *Id.*; *see also id.* at 13–14 (cross-referencing SIRs in justifying redactions applied to Reports of Investigations and Case Summaries); *id.* at 11 (cross-referencing SIRs in justifying redactions in emails and facsimiles). In layman's terms, CBP may be comparing apples to oranges.

Moreover, in some instances, it is entirely unclear what material is being cross-referenced.  (*See* CBP *Vaughn* at 6 for 07699 (referencing unspecified "entry above concerning Photographs"); *id.* at 13 (stating that various redactions of "printouts or screen shots of Database query results" "are explained above in the section on Database Query Results").)  This, too, is improper.  *Wiener v. FBI*, 943 F.2d 972, 978–79 (9th Cir. 1991) ("boilerplate" explanations of coded index found inadequate since "no effort is made to tailor the explanation to the specific document withheld").

CBP's disorganized and inconsistent use of cross-references is inappropriate because, upon close review, the *Vaughn* Index does not actually provide explanations for

certain claimed redactions.  (SOF ¶ 24)  For example, the CBP index references an earlier explanation of (b)(7)(E) redactions under SIRs (page 1) to justify its redaction of "Location and Memoranda Code" within the category of "Policy Memoranda," (page 9) but that earlier explanation does not actually address "Memoranda Code."  The *Vaughn* Index therefore offers no plausible explanation for these redactions.  (*See* CBP *Vaughn* at 1, 9)  In justifying its redaction of "database system names and uses," within "Emails, Facsimile Cover Sheet, Transmittal and Routing Documents," CBP cross-references its discussion of Exemption (b)(7)(E) in "Database Query results."  However, "database names and uses" are not addressed in that earlier discussion.  (*Id.* at 7, 11.)

**OIG**'s *Vaughn* Index is also beset with problems.  ***First***, the index fails to describe the type of information redacted for any of the materials referenced in the index.  This issue is especially troubling with respect to the documents withheld in full pursuant to Exemption b(5)—as to these documents, OIG does not describe the nature of the redacted material, and only repeats, nearly verbatim, the same boilerplate justification of the claimed privilege throughout.  *E.g.,* OIG *Vaughn* at [DHS-OIG10194-199] (stating that "[r]elease of this material would expose the internal deliberations of the Executive branch, impede the frank and candid exchange of ideas and information within the OIG and among cooperating agencies, reveal the reasoning and recommendations of the Executive branch officials, and ultimately have a chilling effect on intra-agency communications"); *id.* at  [DHS-OIG-WIF 001, 0008 (same); *id.* at DHS-OIG10247-10250 (same); *id.* at DHS-OIG10204 (same); *id.* at DHS-OIG010310 (same)].  Without a more specific description of the claimed exemption, neither Plaintiffs nor the Court can decipher whether Defendants' reliance on Exemption 5 is proper.  *See Muchnick v. Dep't of Homeland Sec.*, 2016 U.S. Dist. LEXIS 22683, *8–9 (N.D. Cal. Feb. 24, 2016) (finding similar boilerplate *Vaughn* explanations were improper and not appropriately "tailored to the explanation of the specific document withheld").  ***Second***, OIG's descriptions of its b(6) and b(7)(c) redactions are similarly boilerplate; when the underlying records are examined, these boilerplate descriptions are facially deficient. For example, OIG's entry

1  for DHS-OIG 2292-93 states that the withheld information "birth date," "alien number,"

2  and "identifying information" in a handwritten statement.   Yet the redactions on the

3  corresponding records span nearly two full pages, suggesting that more information has

4  been withheld.  (Reddy Decl. Ex. 19; OIG *Vaughn* at 419 [DHS-OIG 2293])  Based on

5  Defendants' conclusory description, it is not clear what type of identifying information is

6  redacted or whether there is information in this document that is reasonably segregable.

7  ***Third***, OIG provides no explanation for a gap in the bates numbering between DHS-OIG-

8  WIF00015 to DHS-OIG-WIF00093.  (*Id.* at 1728–29; SOF ¶ 44)  OIG should clarify

9  whether any additional documents have been withheld that need to be logged.

10  __CRCL's__ index is problematic because rows two to three do not identify any

11  specific documents or provide any document description, but purport to apply Exemptions

12  6 and 7(c) to "[v]arious documents . . . [t]hroughout production."  (SOF ¶ 35) This is

13  hardly "a particularized explanation" of why the document category falls within the

14  claimed exemption. *Yonemoto v. VA*, 686 F.3d 681, 695 (9th Cir. 2012) (citation omitted).

15  As a practical matter, this is problematic because there are large, suspect redactions that

16  appear to capture more than personal identifying information and that have no

17  corresponding entry other than these two rows. (SOF ¶ 36) CRCL should be required to

18  supplement its *Vaughn* Index, at least as to documents with large b(6) and 7(c) redactions.

19  __ICE__'s index does not log numerous redacted documents.  Specifically, bates

20  numbers 2015-ICFO-1222.3.1111 through 2015-ICFO-1572 are not listed in the index;

21  however, many of the documents in this bates range are heavily redacted.  (SOF ¶ 53)

### 2.      Defendants' Claimed Exemptions Are Improper

23  Defendants are also not entitled to summary judgment because they have failed to

24  establish that the claimed exemptions apply.  *Lahr v. NTSB*, 569 F.3d at 973 ("FOIA's

25  'strong presumption in favor of disclosure' means that an agency that invokes one of the

26  statutory exemptions to justify the withholding  . . . bears the burden of demonstrating that

27  the exemption properly applies").   FOIA exemptions are to be "narrowly construed," so

28  that they do not obscure the disclosure objectives of the Act. *Milner*, 562 U.S. at 565; *Air*

1  *Force*, 425 U.S. 352 at 366.

2       Defendants' production is replete with redactions and withholdings that are facially

3  improper.   For example, Defendants have redacted the names and office telephone

4  numbers of many DHS employees from emails pursuant to exemptions b(6) and b(7)(c),

5  despite the fact that these emails are not personnel files (as required for redaction under

6  b(6)) or compiled for law enforcement purposes (as required under b(7)).

7       Defendants have redacted huge swaths of information as "duplicate"—despite the

8  fact that no such exemption exists under FOIA—and have failed to document these

9  redactions in their *Vaughn* Indices. 5 U.S.C. § 552(b)(1)–(9); (SOF ¶ 55)  Plaintiffs are

10 aware of no precedent upholding redactions from responsive records based on an agency's

11 unilateral assertion that information is duplicative.   In fact, redacted "duplicate"

12 information may be particularly helpful to Plaintiffs and the public in determining the

13 adequacy of DHS oversight mechanisms and piecing together the places in which those

14 mechanisms have failed. *Cf. Campbell*, 164 F.3d 20at 37 (noting that the location of a

15 duplicate document "in a given file could further public understanding even if the contents

16 of the document are already known").

17       Notwithstanding these deficiencies, in the interests of judicial expediency and

18 preserving the parties' limited resources, Plaintiffs only dispute redactions that are both

19 legally unjustified *and* critical to achieving Plaintiffs' goals in initiating this FOIA

20 action—i.e., to obtain information that is necessary to hold DHS accountable for CBP's

21 mistreatment of children and ensure competent care for the agency's juvenile detainees.[8]

22       **a.   CBP Has Improperly Withheld Policy Memos Under**
          **Exemption b(7)(e)**

23

24       CBP has improperly redacted or withheld at least four policy memos ("CBP

25  ───────────

26  [8] On account of the state of the record, the numerous documents clearly omitted from
     Defendants' production, and the inadequacy of the *Vaughn* Indices, Plaintiffs do not know

27  for certain which documents have been withheld or pursuant to what exemption(s).
     Accordingly, Plaintiffs expressly reserve their right to raise additional arguments

28  regarding information withheld once the record before this Court has been clarified.

memos") pursuant to Exemption 7(E).  (SOF ¶ 58)  To qualify under this exemption, the agency must establish (1) that the documents were compiled for law enforcement purposes; and (2) either (a) that the information is a "technique or procedure" for law enforcement, or (b) that the information is a guideline for a law enforcement investigation or prosecution, *and* that disclosure risks circumvention of the law.  *Hamdan v. DOJ*, 797 F.3d 759, 778 (9th Cir. 2015); 5 U.S.C. § 552(b)(7)(E).

Defendants claim that all records from which they have withheld information pursuant to Exemption 7(E) were "compiled for law enforcement purposes" simply by virtue of the fact that these records were generated by an agency with a law enforcement mandate and "pertain to those in law enforcement custody." (Mot. at 19.)  Not so.  Even where an agency has a "clear law enforcement mandate," a defendant must still articulate a *rational nexus* between its law enforcement duties and the disputed document.  *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds*.  Defendants cite to no authority for the proposition that they can satisfy this standard by generally proclaiming that documents "pertain to those in law enforcement custody." (Mot. at 19.) Indeed, if accepted, Defendants' broad interpretation of this Exemption would encompass *all* records produced in this litigation, including such documents as those pertaining to the provision of meals and blankets to children.  *Cf. Milner*, 562 U.S. at 565 (FOIA exemptions are to be "narrowly construed").  Moreover, CBP's declaration and *Vaughn* Index do not establish a rational nexus between the specific documents at issue and CBP's law enforcement duties.  CBP's declaration merely states that "[m]any of the records at issue in this case are directly related to CBP's law enforcement activities and are used for border security and enforcement purposes." (Howard Decl. at ¶ 2.)  CBP's *Vaughn* Index provides no information about whether any particular document was compiled for law enforcement purposes.

CBP additionally fails to demonstrate that the redacted information constitutes a law enforcement "technique or procedure" or guideline, disclosure of which "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  These

policy memoranda appear to be encompassed by CBP's claimed exemption for a vast swath of information Defendants characterized in their Motion as "Guidance on Law Enforcement Procedures." (Mot. at 22)  The agency does not specify that this information is a "technique or procedure" or a guideline.  Instead, CBP summarily asserts that all (b)(7)(e) redacted information qualifies as "techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), and to the extent it does not, the information is a guideline for which "[d]isclosure . . . would risk circumvention of the law." (Mot. at 22)   Such conclusory assertions are insufficient because they do not contain enough detail to assess whether the information actually constitutes a technique, procedure, or guideline.  And to the extent that the information in these documents constitute guidelines, CBP does not adequately demonstrate that disclosure of the information would risk circumvention of the law.  Because Defendants have failed to meet their burden, their motion must be denied.  *Lahr*, 569 F.3d at 973.[9]

Critically, the documents themselves suggest these materials reflect the agency's ***policies and standards of conduct*** for CBP officers in the treatment of detainees, and neither directly relate to law enforcement nor would risk circumvention of the law if disclosed.  (Reddy Decl. Ex. 17-A (Memo re. Hold Rooms and Short Term Custody; redacting, *inter alia*, amount of time a detainee may be held); Ex 17-B (similar; reflecting guidelines pursuant to a settlement agreement); Ex. 17-C (complete redaction of policies for "detaining, transporting, and escorting persons"); Ex. 17-D (policy memo re UAC detention that is identified in CBP's *Vaughn* Index as a medical record).

---

[9] Moreover, even if the record confirmed that the CBP Memos included "techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), Exemption 7(E) "only exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. None of Defendants' submissions establish that the CBP Memos include any discussion of techniques "not generally known."  Moreover, Exemption 7(E) does not apply to information about law enforcement techniques that are "illegal or of questionable legality." *Wilkinson v. FBI*, 633 F. Supp. 336, 349 (C.D. Cal. 1986).  The scant record here is inadequate for either the Court or Plaintiffs to determine whether these exceptions to Exemption 7(E) apply.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   **b.**     **Defendants Have Improperly Withheld Documents Describing Abuse Allegations under Exemption b(5)**

ICE, CRCL, and OIG have withheld numerous documents involving allegations of the abuse or mistreatment of minors (collectively, "Mistreatment Documents") under Exemption 5—i.e., the "deliberative process privilege." (Reddy Decl. Exs. 18-A-D) "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Carter v. United States DOC*, 307 F.3d 1084, 1089 (9th Cir. 2002) (citation omitted). The Supreme Court has "construe[d] Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–149 (1975) (citation omitted).

Here, Defendants ICE and CRCL cannot invoke Exemption 5 as to the Mistreatment Documents because they have not established that the documents are predecisional. In invoking the privilege, Defendants contend that draft materials are "inherently predecisional and deliberative." (Mot. at 17) Not so. In determining whether a document is predecisional, the agency must establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 868 (D.C. Cir. 1980). The designation of a document as a draft does not end the inquiry. *N.Y. Times*, 499 F. Supp. 2d at 515 (holding that agency had not demonstrated the role that draft documents played in the decision-making process as required under exemption b(5)); *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) (ordering defendants to produce "draft" documents where defendants had not identified corresponding "final" documents and had provided no other basis for determining that the documents were drafts) (cited in Mot. at 17). Because Defendants have only contended the documents at issue are "drafts," they are not entitled to invoke the privilege. *See, e.g.*, ICE *Vaughn* Index at 85 (stating only that the document contains a draft watermark); CRCL *Vaughn* Index at 6 (claiming without explanation the memo had not been finalized).

Defendants also fail to establish that the documents at issue are deliberative—i.e.,

that they would expose the opinions, advice, or recommendations offered in the course of agency decision-making.  *E.g.*, *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975) (the privilege extends to information that is "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters") Notably, the privilege does not protect factual information.  *EPA v. Mink*, 410 U.S. 73, 91 (1973) (explaining the privilege does not extend to "factual material otherwise available on discovery merely [on the basis that] it was placed in a memorandum with matters of law, policy, or opinion"); *Hajro v. U.S. Citizenship & Immigration Servs.*, No. 08-1350, 2011 U.S. Dist. LEXIS 117964, at *44 (N.D. Cal. Oct. 12, 2011) (requiring agency to "isolate the [specific] factual information requested and disclose it").  Defendants invoke exemption b(5) to withhold complaint summaries, complaint assistance forms, and complaint closure memos, which, based on Plaintiffs' review of other produced documents, likely consist largely of factual information.  (SOF ¶ 60)

### c.     Defendants Have Improperly Redacted the Names of DHS Employees Allegedly Responsible for Abuse of Minors

Defendants have redacted the names of public employees allegedly responsible for the abuse of minors, claiming Exemptions 6 and 7(C) apply. [10]  (*See* Reddy Decl. Exs. 12-A-D)  These exemptions do not apply. *First*, Defendants cannot demonstrate that all of the redacted names are "personnel, medical, or similar files," as required for Exemption 6. *Second*, Defendants fail to show that each record was "compiled for law enforcement purposes," as required for Exemption 7(C).   *Third*, Defendants fail to establish that disclosing the names would be an "unwarranted invasion of privacy." *Finally*, Defendants cannot show that any minimal privacy interest implicated by disclosure of these names outweighs the public's interest in information necessary to identify and hold the

---

[10] Defendants claim Plaintiffs are not seeking any identifying information for any specific individual, citing to Plaintiffs' FOIA Request. (Mot. at 20 (citing Request at n 16)  That footnote makes clear, however, that Plaintiffs have not sought individual identifying information for non-governmental *third parties*, not Defendants or individuals acting on Defendants' behalf. (Compl. Ex. A at n.16)

government accountable for the care of children in DHS custody.

**First**, in order for Defendants to redact or withhold information pursuant to Exemption 6, that information must be contained in a personnel, medical, or similar file. 5 U.S.C. § 552(b)(6). Defendants contend that the definition of "similar files" is broad (Mot. at 18), but do not allege that any of the documents bearing these redactions are contained in these or similar files. Because Defendants have failed to show that *any* of the documents at issue here qualify as "personnel, medical, or similar files," the Court may conclude that Exemption 6 does not apply. *See Families for Freedom v. CBP*, 837 F. Supp. 2d 287, 300–01 (S.D.N.Y. 2011) (concluding analysis upon determining that agency failed to meet threshold requirement).[11]

**Second**, Defendants cannot invoke Exemption 7(C), which requires that the records were: a) compiled for law enforcement purposes, *and* b) could reasonably be expected to constitute an unwarranted invasion of personal privacy. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001). Defendants have not established either requirement.

As explained above, Defendants' boilerplate declarations and their claim that the documents "pertain to those in law enforcement custody" (Mot. at 19) do not satisfy their burden to show that the documents at issue were compiled for law enforcement purposes. To satisfy this requirement, an agency must demonstrate that "its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated." *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982); *see Rosenfeld v. DOJ*, No. C 07-3240 MHP, 2010 WL 3448517, at *12 (N.D. Cal. Sept. 1, 2010) (rejecting agency's invocation of Exemption 7 because the document "does not appear to be for legitimate law enforcement purposes" and the matter "was not within the investigative jurisdiction" of the agency). The documents at issue largely concern Defendants' internal

---

[11]Defendants' citation to *Citizens Comm'n on Human Rights v. FDA*, 1993 WL 1610471, at *12 (C.D. Cal. May 10, 1993) does not compel a contrary result. (Mot. at 18) There, the court concluded that the FDA appropriately redacted patient names and third party names found in a non-disclosure agreement.

1   investigations of mistreatment allegations made by children in Border Patrol custody.

2   Defendants have not identified any specific federal laws that have been violated, let alone

3   contend that the documents are realistically based on an investigation of those violations.

4   Even if Defendants had made these assertions, the Court need not accept the same, if the

5   agency's asserted law-enforcement purpose is "pre-textual or wholly unbelievable."

6   *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995) (citing *Pratt*, 673 F.2d at 421).  The

7   records Plaintiffs have received and reviewed suggest a complete failure of Defendants to

8   investigate and prosecute abusive officials.  Any assertion now that these records related

9   to investigations that could lead to federal liability—an outcome Defendants obviously

10   never intended—would be entirely pre-textual and thus fail to justify Exemption 7's

11   application. (Mot. at 19)[12]

12       ***Third***, Defendants cannot establish that disclosure of the names of Border Patrol

13   agents alleged to have abused minors would be an unwarranted invasion of personal

14   privacy.  "[T]o determine whether a record is properly withheld [under 7(C)], [the Court]

15   must balance the privacy interest protected by the exemptions against the public interest in

16   government openness that would be served by disclosure." *Lahr*, 569 F.3d at 973.

17       Defendants contend that these employees have a privacy interest in "not being

18   unwarrantably associated with alleged criminal activity" *e.g.*, OIG *Vaughn* at DHS-

19   OIG1315, or "conceivably subjecting personnel to harassment and annoyance," and that

20   disclosure "could place them in danger" of retaliation," *e.g.*, ICE *Vaughn* at 3.  Such "bald

21   contention[s]" of possible future harassment of employees, however, are not sufficient to

22   establish that disclosure would result in an unwarranted invasion of privacy. *Jud. Watch,*

23   *Inc. v. Navy*, 25 F. Supp. 3d 131, 143 (D.D.C. 2014); *Ferguson*, 448 F. Supp. at 923

---

25   [12] Defendants also contend the information qualifies for redaction because it pertains to
26   "agency investigations of civil rights violations" (Mot. at 19)  However, the case cited by
    Defendants does not support their blanket assertion that investigations of civil rights
27   claims against its employees qualify for 7(E) exemption; rather, all of the records in that
    case involved investigations of *specific alleged illegal acts*.  *Sakamoto v. U.S. EPA*, 443 F.
28   Supp. 2d 1182, 1194 (N.D. Cal. 2006) (cited in Mot. at 19)

1  ("[T]hat a threat to privacy is conceivable on some generalized, conjectural level is not
2  sufficient").   Moreover, courts evaluating the application of Exemption 7(C) have
3  repeatedly held that the privacy interests of government employees are "diminished in the
4  face of allegations of official impropriety."   *Lahr*, 569 F.3d at 973; *Lissner v. U.S.*
5  *Customs Serv*., 241 F.3d 1220, 1223 (9th Cir. 2001) (ordering disclosure of records
6  containing evidence of official misconduct because privacy interests were diminished).

7  **Fourth**, although Defendants suggest that "no public interest is served" by
8  revealing the identity of law enforcement agents investigated for misconduct, that
9  argument is frivolous.   (Mot. at 20)   The countervailing benefits of disclosure are
10 considerable, because the redacted information concerns allegations of government
11 wrongdoing.  *Lissner*, 241 F.3d at 1223 ("[T]he public interest in ensuring the integrity
12 and reliability of government investigation procedures is greater where there is some
13 evidence of wrongdoing on the part of the government official . . .") (citations omitted).
14 Without information identifying these agents, there is no way to determine whether the
15 same agents are repeatedly the subject of abuse allegations or if any disciplinary
16 proceedings have been instituted in response.  *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir.
17 1984) (noting a strong public interest in knowing that "a government investigation itself is
18 comprehensive . . . and that those who are accountable are dealt with in an appropriate
19 manner.").   For these reasons, courts have repeatedly held that the public interest in the
20 disclosure of information about public officials outweighs privacy interests in analogous
21 contexts. *See, e.g.*, *Casa de Md., Inc. v. DHS*, No. 10-1264, 2011 WL 288684, at *3–4
22 (4th Cir. Jan. 31, 2011) (affirming  finding that public interest in disclosure of the names
23 of supervisory, investigatory, and line-level ICE agents in internal investigation report
24 outweighed privacy interests); *Providence Journal Co. v. U.S. Dep't of Army*, 781 F.
25 Supp. 878, 883 (D.R.I. 1991) (ordering release of the names of government employees
26 that were suspects in a criminal investigation).

27 **d.      Defendants Improperly Redacted Case Numbers**
28 Defendants have redacted the case numbers assigned to allegations of mistreatment

of minors, claiming Exemption 7(E).   (*See* Reddy Decl. Ex. 14-A-D)   Here too, Defendants have not met their burden.

As with all other Exemption 7 claims, Defendants must first demonstrate that the documents at issue were compiled for law enforcement purposes.  *Hamdan*, 797 F.3d at 777 (9th Cir. 2015).   As discussed, the documents here concern Defendants' own investigations of their employees' conduct; Defendants have not established that such records are compiled for "law enforcement purposes." (*Supra* IV. B.2(a).)

Second, Defendants have not established that the redacted information is either a "technique or procedure" for law enforcement purposes, or is a guideline for which disclosure would risk circumvention of the law.  *Hamdan*, 797 F.3d at 777.  Defendants do not contend that case numbers reflect anything other than a sequential number assigned solely for ministerial purposes, and their motion provides no plausible explanation as to how case numbers would disclose law enforcement guidelines.[13]  (Mot. at 22)  OIG's and CRCL's *Vaughn* Indices do not even defend the redactions of case numbers.  And CBP's *Vaughn* Index lumps case numbers among a panoply of disparate redacted information, such as location identifiers and coordinates.  As to all of these redactions, CBP merely contends that "some numbers reflect the location of a case or investigative efforts."  CBP *Vaughn* at 1; ICE *Vaughn* at 4 (making similar assertion).[14]  It is not apparent how case numbers could reveal locations or investigative efforts, and even if they could, why the number itself would constitute a "technique" or "procedure" for law enforcement.[15]

---

[13] Indeed, the record does not allow Plaintiffs or the Court to assess into which category—techniques, procedures, or guidelines—Defendants claim these case numbers fall.

[14] A handful of entries on ICE's *Vaughn* Index invoke exemption 552a(k)(2) to redact case numbers.  ICE *Vaughn* at 113, 115, 118.  Since the documents at issue in the database do not appear to be information produced from the ENFORCE database, it is not clear whether this exemption would even apply.

[15] CBP contends that a case number could be used to navigate internal law enforcement computer systems.  (Howard Decl. at ¶ 64)  It strains credulity to imagine that a member of the public could somehow use a case number to call up a record in an internal law enforcement database.  Moreover, even if the number were usable in such a way, this would not make the number itself a "technique or procedure" for law enforcement.

Disclosure is imperative because case numbers are vital to the underlying public interest of holding federal officials accountable for child abuse. Any effort to determine the relationship between documents in different productions has been rendered nearly impossible by Defendants' pervasive redactions. (Reddy Decl. ¶ 22)

### e.   Defendants Have Improperly Redacted Non-Identifying Information Regarding Detained Minors.

Defendants also redacted certain non-identifying information regarding minors who have alleged Border Patrol misconduct. (Reddy Decl. Exs. 15-16) These redactions are not justified and impede Plaintiffs' ability to understand the alleged mistreatment.

*First*, in many instances, Defendants have redacted the date a minor was apprehended or transferred. This information is critical both for determining whether Border Patrol has detained unaccompanied minors in excess of the time limit prescribed by federal law and for cross-referencing a single allegation of abuse across multiple documents. *Second*, Defendants frequently redact the minor's age. This information sheds further light on the significance of the allegations, as what may be appropriate treatment of a child of teenage years may not be appropriate for a younger child. Accordingly, there is a substantial public interest in disclosure of the information.

Defendants claim these redactions are appropriate because they qualify as "personal identifying information" that may be withheld pursuant to Exemptions b(6) and b(7)(C). Defendants cite no authority establishing age and date-of-incident information qualifies as personal identifying information. In any event, as explained above, the documents at issue—allegations of neglect, abuse and related investigations—are neither personnel, medical, or other files as required under Exemption b(6), nor are they records compiled for law enforcement purposes under Exemption b(7)(C). (*Supra* IV. B.2(a).)

### 3.   Defendants Have Failed to Segregate Non-Exempt Materials

Even if the Court concludes that the Defendants' claimed exemptions regarding the Policy Memos and Mistreatment Documents discussed above are appropriate, Defendants have still violated the FOIA by failing to release reasonably segregable material. 5 U.S.C.

§ 552(b).  "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead*, 566 F.2d at 260.

Here, Defendants do not explain why they have failed to segregate the non-exempt materials from documents that have been withheld; instead, their declarations include the conclusory statement that the information "is not reasonably segregable."  (SOF ¶ 63) Courts have concluded such assertions are insufficient. *ACLU of N. Cal. v. FBI*, No. 12-cv-03728-SI, 2014 WL 4629110, at *9 (N.D. Cal. Sept. 16, 2014) (concluding a similarly conclusory declaration was insufficient to carry the agency's burden on segregability). Defendants' failure to produce more than conclusory assertions mandates denial of their motion. *See L.A. Times*, 442 F. Supp. 2d at 892 ("[I]t is reversible error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or lack thereof" (quotation marks and citation omitted)).

## V.    RELIEF REQUESTED

Plaintiffs respectfully request that the Court issue an order denying Defendants' summary judgment motion, granting Plaintiffs' motion, and directing the Defendants to:

(1) conduct new, adequate searches to correct the deficiencies identified above and promptly release all responsive records;

(2) promptly release the improperly withheld or redacted information, which include: (a) information redacted as "duplicate;" (b) Policy Memos; (c) Mistreatment Documents; (d) names of government employees allegedly responsible for abuse of minors; (e) case numbers; and (f) non-identifying information of minors;

(3) in the alternative, perform an *in camera* review of the Policy Memos and Mistreatment Documents;

(4) supplement the record with more detailed information regarding segregability;

(5) (a) submit revised affidavits and *Vaughn* Indices describing Defendants' search processes and exemptions; and (b) log any additional records located based on further searches in the same manner, so that the Court may properly assess the state of the record.

1    DATED this 28th day of March, 2017.

Respectfully submitted,

2

COOLEY LLP

3

4

*/s/ Aarti G. Reddy*
Aarti G. Reddy

5

6    Whitty Somvichian
Aarti G. Reddy
COOLEY LLP
7    101 California Street
5th Floor
8    San Francisco, CA  94111-5800
Tel:   (415) 693-2000
9    Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*
10

11    ACLU FOUNDATION OF ARIZONA

12

*/s/ Daniel J. Pochoda with permission*
13    Daniel J. Pochoda

14    Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)
15    ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
16    Phoenix, AZ 85014
Tel:    (602) 650-1854
17    Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*
18

ACLU FOUNDATION OF SAN DIEGO
19    AND IMPERIAL COUNTIES

20

*/s/ Mitra Ebadolahi with permission*
21    Mitra Ebadolahi

22    David Loy
Mitra Ebadolahi
23    ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
24    P.O. Box 87131
San Diego, CA 92138
25    Tel:    (619) 232-2121
Email: *davidloy@aclusandiego.org*
26    Email: *mebadolahi@aclusandiego.org*

27    *Attorneys for Plaintiffs*

28

1

## <u>SIGNATURE CERTIFICATION</u>

2

3      In accordance with Paragraph II(C)(3) of the District of Arizona ECF

4  Administrative Policies and Procedures Manual (November 2016), I hereby certify that

5  the content of this document is acceptable to all registered signatories required to sign it.

6

7                                   /s/ Aarti G. Reddy
                                    AARTI G. REDDY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on March 28, 2017, I electronically transmitted the attached

3 document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4 Notice of Electronic Filing to the following CM/ECF registrants:

5      Emily S. Newton, emily.s.newton@usdoj.gov

6      Stuart J. Robinson, stuart.j.robinson@usdoj.gov

7

8                                    /s/ Aarti G. Reddy
                                   AARTI G. REDDY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28