Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Tel:   (602) 650-1854
Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*

David Loy
Mitra Ebadolahi
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel:   (619) 232-2121
Email: *davidloy@aclusandiego.org*
Email: *mebadolahi@aclusandiego.org*

Whitty Somvichian (CA SBN 194463)
Aarti G. Reddy (CA SBN 274889)
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111-5800
Tel:   (415) 693-2000
Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF ARIZONA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES, *et al.*,<br><br>Defendants. | No.  CV-15-00247-PHX-JJT<br><br>**PLAINTIFFS' STATEMENT OF FACTS NOT IN GENUINE DISPUTE**<br><br>Judge:   Hon. John J. Tuchi |

Pursuant to Local Civil Rule 56.1(A), Plaintiffs respectfully submit this Statement

1.

143253305

of Facts Not In Genuine Dispute. As explained in Plaintiffs' Cross-Motion for Summary Judgment, there are no disputed, material facts that preclude summary judgment in Plaintiffs' favor. Furthermore, Defendants' failure to meet their statutory obligation to conduct an adequate search, to justify withholding responsive information, and to release segregable, non-exempt material make summary judgment for Plaintiffs proper. The following facts are not in genuine dispute.

1. On December 3, 2014, Plaintiffs American Civil Liberties Union of Arizona and American Civil Liberties Union of San Diego and Imperial Counties (collectively "Plaintiffs") submitted a FOIA request (the "Request") to Defendant Department of Homeland Security ("DHS"). (*See* Compl. Ex. A, ECF No. 1-1.)

2. The Request asked for the following records:

DHS Records pertaining to alleged or actual mistreatment of children in DHS custody from January 1, 2009 to the present, including any such Records held by Border Patrol, CBP, or any other DHS component agencies, to include at least:

1. All Records relating to any alleged or actual verbal, physical, and/or sexual abuse of children in DHS custody, including, but not limited to, any incidents resulting in hospitalization.

2. All Records related to DHS compliance with child abuse reporting requirements under state and federal law, including but not limited to the Victims of Child Abuse Act of 1990; 42 U.S.C. § 13031; 8 C.F.R. § 81.2–81.3.

3. All Records related to DHS implementation of and compliance with the Prison Rape Elimination Act ("PREA").

4. All Records relating to
   a. complaints of alleged or actual verbal, physical, and/or sexual abuse of children in DHS custody, and
   b. complaints regarding conditions of confinement experienced by children in DHS custody submitted to any DHS entity by any person, non-governmental organization, state or federal government agency, tribal government, consular office, or any other entity, whether verbal or written, and all Records related or responding to any such complaints.

5. All Records relating to
   a. the three interim reports regarding Oversight of Unaccompanied Alien Children prepared by DHS OIG dated July 30, 2014, August 28, 2014, and October 2, 2014;

b. DHS OIG's decision, announced in a press release dated October 6, 2014, that it would begin curtailing its routine inspections at detention facilities for unaccompanied children;
c. any investigations by any DHS entity resulting from any complaints of alleged or actual verbal, physical, and/or sexual abuse of children in DHS custody; and
d. any investigations by any DHS entity resulting from any complaints regarding conditions of confinement experienced by children in DHS custody including all policies, protocols, or other guidelines for conducting investigations involving child complainants, and records sufficient to show the current status of all such investigations conducted from January 1, 2009 to the present.

6. All disciplinary Records resulting from alleged or actual misconduct by DHS officials involving children in DHS custody, including any violation of state or federal law or Border Patrol, CBP, and/or DHS guidelines related to the treatment of children in DHS custody or conditions of confinement experienced by children in DHS custody.

(Compl. Ex. A. at 5-6, ECF No. 1-1.)

3. Defendant DHS forwarded the Request to the following sub-agencies likely to have records responsive to the Request: Customs and Border Protection ("CBP"), Office for Civil Rights and Civil Liberties ("CRCL"), Immigration and Customs Enforcement ("ICE"), and Office of Inspector General ("OIG") (together with DHS, "Defendants")). Declaration of Kevin L. Tyrrell (ECF No. 56-6.)

4. After the Court set a deadline of May 27, 2016 for Defendants to complete their production of documents, Defendants reported identification of additional documents and asked for three extensions of time to finish their production, on February 4, 2016 (ECF No. 22), July 8, 2016 (ECF No. 34), and February 6, 2017 (ECF No. 54).

5. Combined, Defendants have produced approximately 32,000 pages of documentary records and 35 audio files, primarily from the DHS sub-agency defendants, CRCL, OIG, CBP, and ICE. (Reddy Decl. ¶ 3.)

6. CBP failed to provide information about the search terms used by CSCD. (Howard Decl. ¶ 46.)

7. CBP did not identify any of the search terms employed by the Tucson Border Patrol Sector office, and did not disclose who performed the search or identify the repositories searched. (Howard Decl. ¶ 23.)

8. CBP claims that the Tucson Border Patrol office located no potentially responsive documents. (Howard Decl. ¶ 23.)

9. CBP does not appear to have performed searches within the Yuma, Grand Forks, Miami, Ramey, and New Orleans Border Patrol sectors. (Howard Decl. ¶¶ 18-19.)

10. With respect to the Del Rio Border Patrol sector, CBP did not provide any detail regarding its search of hard copy archives. (Howard Decl. ¶ 31.)

11. CBP Havre Sector limited its search to "abuse" and "juvenile" and thus did not search for documents responsive to Plaintiffs' Request 4(b) and 5(d) related to confinement conditions. (Howard Decl. ¶ 27.)

12. CBP Spokane Sector used compound phrases as search terms such as "verbal abuse of children," and "physical abuse of children" (Howard Decl. ¶ 28.)

13. CBP HRM performed searches using the term "frigid cells" rather than "cold." The latter term was employed by CBP SITROOM. (Howard Decl. ¶¶ 36, 43.)

14. CBP HRM employed the search term "ProBAR." (Howard Decl. ¶ 36.)

15. However, ProBAR is only one of three advocacy organizations that provides legal services to unaccompanied children. (Huddleston Decl. ¶¶ 2-4.) CBP HRM did not include these organization names as search terms. (*Id.*; Howard Decl. ¶ 36.)

16. CBP did not employ search terms related to "discipline," "misconduct," or "abuse" in searching HRM, despite the fact that this department "monitor[s] and integrate[s] the development and implementation of CBP labor and employee relations programs to facilitate an effective CBP workforce." (Howard Decl. ¶¶ 34, 36.)

17. CBP did not employ search terms related to "corruption," "misconduct," "discipline," or "abuse" in searching OPR, despite the fact that OPR is responsible for "all CBP-wide programs and policies relating to corruption, misconduct, or mismanagement." (Howard Decl. ¶¶ 37, 40.)

18. CBP HRM performed searches in a web-based tool called the "Human Resources Business Engine" ("HRBE"). However, investigatory material is not stored in HRBE. (Howard Decl. ¶ 35.)

19. CBP states that HRM "is the sole authority within CBP for management of labor and employee relations activities." (Howard Decl. ¶ 34.)

20. Defendants did not specifically attest that the search terms employed by any agency were comprehensive. (*See generally* Howard Decl., Goal Decl., Tyrrell Decl., Pineiro Decl.)

21. CBP did not search repositories within any of the following entities: (1) Office of Border Patrol Headquarters, which collects, aggregates, and performs policy analyses of complaint-related records generated from Border Patrol Sectors; (2) the Office of Policy and Planning, which assesses and responds to complaints and other matters related to agency integrity; (3) the Discipline Review Board within the Office of Human Resources Management, which is tasked with reviewing serious allegations of misconduct; (4) the Office of Training and training facility in Artesia, New Mexico, which maintains CBP records and other information relevant to the training of CBP officers and Border Patrol agents; and (5) the Office of the Commissioner, which provides oversight in the implementation of CBP's mission and oversight of its various components. *See* Tomsheck Decl. ¶¶ 6-10. Within HRM, DRB is tasked with reviewing serious allegations of misconduct that would subject an agency employee to severe discipline or removal.

22. CBP produced numerous documents entitled "Reports of Investigation" that are missing pages or that refer to exhibits that were not produced. (Reddy Decl. ¶ 10.)

23. Some of these missing exhibits appear in the production as pictures of CDs that purport to contain interviews with border patrol agents regarding misconduct allegations. The contents of those CDs do not appear in the production. (Reddy Decl. ¶ 11.)

24. CBP's *Vaughn* Index groups together dozens (sometimes hundreds) of loosely related to documents into a single category. (Def. Ex. A, ECF No. 56-3 at 7, 11-12.) CBP's *Vaughn* Index frequently cross-references earlier portions of the Index. (Def. Ex. A, ECF No. 56-3 at 13, 19.) Many of these cross-references are inaccurate. (Def.

Ex. A, ECF No. 56-3 at 1, 9; 7,11.)

25.  With respect to OIG ISP, OIG does not describe the initial search terms or the specific search processes that were employed. (Goal Decl. ¶ 16.)

26.  In its subsequent search to search for records responsive to items 1, 2, 3, it employed search terms with specific phrases such as "child abuse," "children abuse," "Victims of Child Abuse Act" and "Prison Rape Elimination Act." (Goal Decl. ¶ 17.)

27.  With respect to OIG OPA and OIG Front Office, OIG does not identify the individual who performed the search, which employees' records were searched, which document repositories were searched and what search terms or search processes were employed. Instead, OIG summarily states that "[s]ubject matter experts" searched "relevant" employees' files for "responsive" emails and documents. (Goal Decl. ¶ 33.)

28.  With respect to OIG OLA, OIG failed to identify the individual who performed the search or provide search terms used. Instead, OIG only explained that the individual searched her "sent" folder. (Goal Decl. ¶ 32.)

29.  OIG conceded that the agency experienced "technical issues relating to the inaccessibility of archived emails." (Goal Decl. ¶ 34.)

30.  CRCL asserts that it processed 492 potentially responsive complaints. (Tyrell Decl. ¶¶ 17–18.)

31.  From CRCL's production, Plaintiffs identified substantive information regarding roughly 352 complaints and an additional 39 complaint numbers dissociated from any substantive information. Plaintiffs are unable to assess how many of the remaining 100+ complaints have been withheld, and if so, how many. (Huddleston Decl. ¶ 5.)

32.  CRCL does not explain why it did not search for responsive records in the possession of *oversight* authorities in the Compliance Branch, including the Officer for Civil Rights and Civil Liberties, the Programs and Compliance Deputy Officer, the Executive Officer, or Senior Advisor. (Tyrell. Decl. ¶¶ 14-17.)

33.  CRCL does not provide any explanation of whether Compliance Branch

employees conducted the "manual review" of documents, whether they used common standards or guidelines in determining that complaints involved "issues deemed responsive" or, if not, how they reached their determinations. Specifically, verbal abuse was not among the "issues deemed responsive" in CRCL's review. (Tyrell Decl. ¶ 16.) It also does not describe *which* Compliance Branch employees performed the search. *Id.*

34. CRCL employed the search terms "child OR children" and "unaccompanied minor" (Tyrell Decl. ¶ 16) and failed to use UAC as a search term. Its own documents reflect that this term is commonly used. (Reddy Decl. at ¶ 6.)

35. Rows 2-3 of CRCL's *Vaughn* index do not identify any specific documents or provide any document description, but purport to apply Exemptions 6 and 7(c) "to [v]arious documents . . . [t]hroughout production." (Def.'s Ex. C, ECF No. 56-7, at 1.)

36. There are large redactions made pursuant to Exemptions 6 and 7(c) in CRCL's production that appear to capture more than personal identifying information and that have no corresponding entry other than these two rows. (Reddy Decl. ¶ 18.)

37. OIG did not explain what search process led to OIG ISP's discovery of 2,000 additional pages of responsive documents approximately two years after running its original search, nor why they were not identified during OIG ISP's original search. (Goal Decl. ¶ 18.)

38. OIG used compound phrases as search terms for OIG's Office of Audits ("AUD"), such as "child abuse," "children abuse," "Victims of Child Abuse Act," and "Prison Rape Elimination Act" (Goal Decl. ¶ 12) and omitted acronyms that OIG's documents establish are commonly used by the agency, including UAC and PREA. (Reddy Decl. ¶ 7.)

39. OIG's AUD identified no responsive records. (Goal Decl. ¶ 12.)

40. OIG ISP used identical search terms to OIG AUD, and uncovered no new responsive records with those terms. (Goal Decl. ¶ 17.)

41. OIG produced numerous documents entitled "Case Summary Report" that refer to exhibits that were not produced. (Reddy Decl. at ¶ 13.)

42. OIG produced numerous emails that refer to attachments that were not produced. (Reddy Decl. at ¶ 13.)

43. OIG is in possession of a spreadsheet entitled "CRCL Complaints Regarding Sexual Assault and UAC" that was updated monthly between at least August 2014 and December 2014 that it did not produce. (Reddy Decl. at ¶ 14.)

44. OIG provides no explanation for a gap in bates numbering in its *Vaughn* index. (Def. Ex. D, ECF No. 56-9 at 1728-29.)

45. With respect to ICE ODPP, ICE has not provided which employees' files were searched, and what search terms of search processes were employed. (Pineiro Decl. ¶ 40.)

46. ICE Enforcement Removal Operations ("ERO") Field Operations units limited its search to unit chiefs within the Eastern and Western region operations divisions. ICE does not disclose search terms or explain why the Eastern Region searched only emails, while the Western Region Units searched both emails and computer files. (Pineiro Decl. ¶ 28.)

47. ICE's Executive Associate Director's Office used compound phrases for search terms including "complaints physical abuse of children" and "abuse of children DHS custody." (Pineiro Decl. ¶ 30.)

48. ICE's Health Services restricted its search to specific regions, and offers no explanation for this restriction. (Pineiro Decl. ¶ 31.)

49. ICE's Health Services office did not search for documents responsive to Plaintiffs' Request 4(b) and 5(d) related to detention conditions, as reflected in their lack of search terms relevant to this to this issue. (Pineiro Decl. ¶ 31.)

50. ICE's Custody and Management Division "provides policy and oversight for . . . ICE's detention operations." (Pineiro Decl. ¶ 29.) However, none of its search terms relate to policy guidelines or department standards.

51. ICE's Custody and Management Division did not utilize search terms related to children. (Pineiro Decl. ¶ 29.)

52. The ICE Office of Policy did not perform a search to identify responsive documents. Instead, ICE alleges only that it determined "[b]ased on subject matter expertise and knowledge of the program office's activities" that it would "not possess any responsive records." (Pineiro Decl. ¶ 36.)

53. ICE's index does not log numerous redacted documents. Specifically, bates numbers 2015-ICFO-1222.3.1111 through 2015-ICFO-1572 are not listed in the index. Many of these documents are heavily redacted. (Reddy Decl. ¶ 19).

54. It does not appear that Defendants have provided records responsive to Plaintiffs' Request number 6 related to discipline of DHS officials involving children in DHS custody. (Reddy Decl. ¶ 29.)

55. Defendants have redacted huge swaths of information as "duplicate" and have failed to document these redactions in their *Vaughn* indices. (Reddy Decl. ¶ 20.)

56. Throughout their productions, Defendants have redacted the names of public employees allegedly responsible for the mistreatment of minors under Exemption 6 and 7(c). (Reddy Decl. at ¶ 21.)

57. Throughout their productions, Defendants have redacted case numbers or other identifying numbers assigned to allegations relating to the mistreatment of minors under Exemption 7(e). (Reddy Decl. at ¶ 23.)

58. CBP has redacted or withheld at least four policy memoranda pursuant to Exemption 7(E). (Reddy Decl. ¶ 26.)

59. ICE, CRCL and OIG have withheld or redacted numerous documents involving allegations of the mistreatment of minors pursuant to the Exemption 5. (Reddy Decl. ¶¶ 27-28.)

60. Defendants invoke exemption b(5) to withhold complaint summaries, complaint assistance forms, and complaint closure memos, which, based on Plaintiffs' review of other produced documents, likely consist largely of factual information. (Reddy Decl. ¶ 27.)

61. Throughout their productions, Defendants have redacted the age of minors

Attorneys At Law
San Francisco

143253305

9.

1  that were allegedly mistreatment under Exemption 7(e). (Reddy Decl. at ¶ 25.)

2    62. Throughout their productions, Defendants have redacted the date that a
3  minor was apprehended under Exemption 7(e). (Reddy Decl. at ¶ 24.)

4    63. Each of the agencies provide a conclusory statement that the withheld
5  information "is not reasonably segregable." (Howard Decl. ¶ 66; Pineiro Decl. ¶¶ 75-
6  77; Tyrell Decl. ¶ 29; Goal Decl. ¶ 69.)

DATED this 28th day of March, 2017.

Respectfully submitted,

COOLEY LLP

*/s/ Aarti G. Reddy*
Aarti G. Reddy

Whitty Somvichian
Aarti G. Reddy
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA  94111-5800
Tel:    (415) 693-2000
Email: *wsomvichian@cooley.com*
Email: *areddy@cooley.com*

ACLU FOUNDATION OF ARIZONA

*/s/ Daniel J. Pochoda with permission*
Daniel J. Pochoda

Daniel J. Pochoda (Bar No. 021979)
Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Tel:    (602) 650-1854
Email: *dpochoda@acluaz.org*
Email: *kbrody@acluaz.org*

ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES

*/s/ Mitra Ebadolahi with permission*
Mitra Ebadolahi

David Loy
Mitra Ebadolahi
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel:    (619) 232-2121
Email: *davidloy@aclusandiego.org*
Email: *mebadolahi@aclusandiego.org*

*Attorneys for Plaintiffs*

**SIGNATURE CERTIFICATION**

In accordance with Paragraph II(C)(3) of the District of Arizona ECF Administrative Policies and Procedures Manual (November 2016), I hereby certify that the content of this document is acceptable to all registered signatories required to sign it.

/s/ Aarti G. Reddy
AARTI G. REDDY

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

143253305

12.