CHAD A. READLER
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
EMILY S. NEWTON (Va. Bar No. 80745)
STUART J. ROBINSON (Cal. Bar No. 267183)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel: (202) 305-8356
Fax: (202) 616-8470
Email: emily.s.newton@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ACLU FOUNDATION OF ARIZONA; ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES, <br><br> *Plaintiffs*, <br><br> v. <br><br> OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES; U.S. DEPARTMENT OF HOMELAND SECURITY; OFFICE OF INSPECTOR GENERAL, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendants*. | No. CV-15-00247-PHX-JJT <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT** |

1

2

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................1

I.     DEFENDANTS CONDUCTED A REASONABLE SEARCH FOR
       RESPONSIVE RECORDS. .........................................................................4

II.    DEFENDANTS PROPERLY WITHHELD RECORDS EXEMPT FROM
       DISCLOSURE. ........................................................................................ 13

III.   DEFENDANTS RELEASED REASONABLY SEGREGABLE
       PORTIONS OF RESPONSIVE RECORDS.................................................. 18

CONCLUSION ...................................................................................................... 19

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**CASES**

3

4

*Aguirre v. SEC,*
   551 F. Supp. 2d 33 (D.D.C. 2008) ................................................................ 12

5

*Am. Immigration Council v. DHS,*
6
   30 F. Supp. 3d 67 (D.D.C. 2014) ................................................................ 14

7

*Bigwood v. DOD,*
8
   132 F. Supp. 3d 124 (D.D.C. 2015) .......................................... 1, 2, 4, 5, 6

9

*Boehm v. F.B.I.,*
   948 F. Supp. 2d 9 (D.D.C. 2013) ................................................................ 13
10

11

*Bothwell v. Brennan,*
   2015 WL 6689387 (N.D. Cal. Nov. 3, 2015) .............................................. 4

12

*Citizens Com'n on Human Rights v. FDA,*
13
   1993 WL 1610471 (C.D. Cal. 1993) .......................................................... 12

14

*Citizens Com'n on Human Rights v. FDA,*
15
   45 F.3d 1325 (1995).................................................................................... 10

16

*Coastal States Gas Corp. v. DOE,*
17
   617 F.2d 854 (D.C. Cir. 1980) .................................................................... 11

18

*Conti v. DHS,*
   2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ............................................ 5
19

20

*Davis v. U.S. Postal Inspection Serv.,*
   75 F. Supp. 3d 425 (D.D.C. 2014) .............................................................. 13

21

*Elec. Privacy Info. Ctr. v. CBP,*
22
   2017 WL 1131875 (D.D.C. Mar. 24, 2017) .............................................. 15

23

*Fiduccia v. DOJ,*
24
   185 F.3d 1035 (9th Cir. 1999) .................................................................... 10

25

*Hamdan v. DOJ,*
   797 F.3d 759 (9th Cir. 2015) ........................................................................ 4
26

27

*Harrison v. BOP,*
   611 F. Supp. 2d 54 (D.D.C. 2009) ................................................................ 6

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Judicial Watch v. HUD*,
   20 F. Supp. 3d 247 (D.D.C. 2014) ................................................................. 2, 5, 8

*Judicial Watch, Inc. v.* FDA,
   449 F.3d 141 (D.C. Cir. 2006) ................................................................. 10

*Knight v. NASA*,
   2006 WL 3780901 (E.D. Cal. Dec. 21, 2006) ........................................... 6-7

*Levinthal v. FEC*,
   2016 WL 6902111 (D.D.C. Nov. 23, 2016) ............................................... 15

*MacLean v. U.S. Army*,
   2007 WL 935604 (S.D. Cal. Mar. 6, 2007) ............................................... 12

*Martinale v. CIA*,
   2005 WL 327119 (D.D.C. Feb. 9, 2005) ................................................. 8

*McCash v. CIA*,
   No. 5:15-cv-02308, 2016 WL 6650389 (N.D. Cal. Nov. 10, 2016) ................. 9

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ............................................................... 5

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ............................................................................ 13

*Ortiz v. DOJ*,
   67 F. Supp. 3d 109 (D.D.C. 2014) ......................................................... 15

*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) ............................................................... 12

*Rein v. PTO*,
   553 F.3d 353 (4th Cir. 2009) ............................................................... 9

*Rosenfeld v. DOJ*,
   2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) ........................................... 7

*Sakamoto v. EPA*,
   443 F. Supp. 2d 1182 (N.D. Cal. 2006) ................................................. 13, 14

*Schoenman v. F.B.I.*,
   764 F. Supp. 2d 40 (D.D.C. 2011) ......................................................... 5, 6

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Strunk v. State Dep't,*
   905 F. Supp. 2d 142 (D.D.C. 2012) ............................................................ 15

*Nat'l Day Labor Organizing Network v. ICE,*
   877 877 F. Supp. 2d 87 (S.D.N.Y. 2012) ....................................................... 4

*Taitz v. Astrue,*
   806 F. Supp. 2d 214 (D.D.C. 2011) ........................................................... 13

*W. Ctr. for Journalism v. IRS,*
   116 F. Supp. 2d 1 (D.D.C. 2000) .......................................................... 5, 11

**INTRODUCTION**

Plaintiffs' Freedom of Information Act (FOIA) request sought six broad categories and six sub-categories of records over a six year period.  Defendants went to great lengths to respond: four agencies within the U.S. Department of Homeland Security (DHS)—U.S. Customs and Border Protection (CBP), DHS's Office for Civil Rights and Civil Liberties (CRCL), U.S. Immigration and Customs Enforcement (ICE), and DHS's Office of the Inspector General (OIG)—including numerous sub-offices, extensively searched for responsive records.  Defendants ultimately produced over 32,000 pages of responsive documents and 35 audio files.   And each agency provided comprehensive *Vaughn* declarations and indices, totaling thousands of pages, detailing its search, bases for withholding exempt material, and segregability efforts.  Not satisfied, Plaintiffs demand a search according to their own terms and information exempt from disclosure.   But Defendants have met their FOIA obligations—their searches were reasonable and their withholdings justified—and they are entitled to summary judgment.

**I.     Defendants Conducted A Reasonable Search For Responsive Records.**

<u>First</u>, Defendants' search terms were reasonably calculated to locate responsive records.  *See Bigwood v. DOD*, 132 F. Supp. 3d 124, 145 (D.D.C. 2015).  Rather than using "narrow and formalistic" terms, Pls.' Cross Mot. for Summ. J. and Opp'n ("Pls.' Br.") 10 (ECF 61), Defendants used terms as general as "child" and "abuse."  Howard Decl. ¶¶ 36, 40, 43.  And far from "omit[ing] obvious additional" terms, Pls.' Br. 10, some offices used as many as 19 search terms.  *See id.*  While Plaintiffs may prefer certain terms, they "cannot dictate the search terms" for their request; instead, Defendants were entitled to "craft" terms "reasonably tailored to uncover [responsive] documents."  *Bigwood*, 132 F. Supp. 3d at 140.  Defendants did so, and Plaintiffs' *post hoc* critique does not show otherwise.

Plaintiffs argue that CRCL's search of its Entellitrak database was inadequate because CRCL used the terms "child," "children," or "unaccompanied minor" but not the terms, "UAC" or "verbal abuse."  Pls.' Br. 11.  However, if a complaint involves an

unaccompanied minor, the complaint summary in Entellitrak uses that language.  2d Tyrrell Decl. ¶ 5.  CRCL's terms would therefore have uncovered all complaints related to unaccompanied minors—without using "UAC" or "verbal abuse."  *Id.*  And CRCL's manual review of potentially responsive records would have captured complaints involving verbal abuse, *see* Tyrrell Decl. ¶ 16 (categories included "inappropriate questioning" and "intimidation/threat/improper coercion")—and did.  *See* 2d Tyrrell Decl. ¶ 8, Ex. A-1.

Plaintiffs' assertion that CBP "inappropriately restricted its search terms," Pls.' Br. 11, is similarly misplaced.  They fault CBP for not using certain terms but ignore the many other terms CBP *did* employ.  For example, Plaintiffs criticize the Office of Human Resources Management (HRM) for using the term "ProBar" but not the names of two other advocacy groups.  *Id.*  But in addition to "ProBar," HRM used 18 other broad terms that would have captured complaints by advocacy groups regarding UAC's treatment in CBP custody, *see* Howard Decl. ¶ 36, without using the names of the advocacy groups.  Plaintiffs also forget that because perfection is not required, search terms may be "reasonably tailored" to avoid undue burden.  *Bigwood*, 132 F. Supp. 3d at 140.  HRM was thus not required to use Plaintiffs' preferred term, "cold," rather than "frigid cells," Pls.' Br. 11, where the former would sweep in substantial nonresponsive material.  *See* 2d Howard Decl. ¶ 14.[1]  Similarly, in claiming that OPR should have used the terms, "corruption," "misconduct," "discipline," or "abuse," Pls.' Br. 12, Plaintiffs confuse OPR's area of responsibility with the subject of their own request.  The 19 terms OPR used, *see* Howard Decl. ¶ 40, would have captured instances of misconduct *as related to UACs in DHS custody*, but Plaintiffs' terms would not have reasonably culled potentially responsive

---

[1] That CBP SITROOM used the term, "cold" is irrelevant, *see Judicial Watch v. HUD*, 20 F. Supp. 3d 247, 254-55 (D.D.C. 2014) ("[N]othing in FOIA[] … requires an agency to [use consistent search terms and techniques across various departments]."), and distinguishable.  *See* Howard Decl. ¶ 43 (SITROOM used "cold" *along with* other terms to limit the records retrieved).

2

1    records retrieved because OPR's work relates largely to issues of corruption or misconduct.

2    *Id.* ¶ 37.[2]  Plaintiffs' other challenges to CBP's terms fail for the same reasons.[3]

3        For similar reasons, Plaintiffs' critique of ICE's search terms is equally meritless.

4    Plaintiffs take issue with two of the phrases used by the Executive Associate Director's

5    Office, Pls.' Br. 12, but ignore the ten other terms used, including one as general as "child

6    abuse."  Pineiro Decl. ¶ 30.  Plaintiffs fault ICE Health Services ("IHSC") for not using

7    terms specific to detention conditions, *see* Pls.' Br. 12, but IHSC would not likely have

8    records related to detention conditions, *see* 2d Pineiro Decl. ¶ 16, and, in any event, the

9    terms it used—"child," "children," "juvenile"—would have uncovered any such records as

10   they relate to UACs in DHS custody.  *Id.* (citing Pineiro Decl. ¶ 31).  Similarly, Custody

11   Management need not have used terms "specific to unaccompanied children," Pls.' Br. 12,

12   because its general search terms, along with its responsiveness review, would have

13   identified such records, *see* Pineiro Decl. ¶ 29 (listing terms), and because the repository it

14   searched—within the Juvenile Family Residential Management Unit—relates to UACs.

15   *See* 2d Pineiro Decl. ¶ 12.  Moreover, Custody Management's policy guidelines for

16   detention operations are public records, *see* 2d Pineiro Decl. ¶ 11, which Plaintiffs scoped

17

18   [2] Likewise, ICE Custody Management did not err by not using terms specific to "policy
19   guidelines or department standards."  Pls.' Br. 12.  Custody Management's terms would
     have elicited guidelines and standards within the scope of the request, *see* Pineiro Decl. ¶
20   29 (listing terms), and a search for "policy guidelines or department standards" would not
     have reasonably narrowed the records retrieved given the office's responsibilities.  *See id.*

21   [3] *See* Howard Decl. ¶ 28 (listing five other terms used by Spokane Sector), ¶ 36 (listing 19
22   terms HRM used that would have captured records involving discipline, misconduct, or
     abuse as related to UACs in DHS custody), ¶ 27 (listing general terms Havre Sector used
23   that would have captured records related to juvenile's confinement conditions); 2d Howard
24   Decl. ¶ 14 (explaining sufficiency of HRM's terms), ¶ 16 (explaining sufficiency of
     Havre's terms).  Insofar as Plaintiffs contest the terms used by certain BP sectors, any
25   searches they did were supplemental.  *See id.* ¶ 12 ("Per DHS policy, any records
26   responsive to Plaintiffs' request would have been … forwarded to OPR and [DHS OIG]….
     USBP tasked each of its twenty sectors to perform local searches … if ... they were likely
27   to have additional responsive records.").  And, as discussed below, certain sectors did
28   supplemental searches using terms provided by CBP FOIA.  *See* 2d Howard Decl. ¶ 5.

out of their request.  And Plaintiffs' criticism that the search conducted by ICE's Office of Professional Responsibility (OPR) using a list of case numbers would not be "sufficient," Pls.' Br. 12, ignores that OPR directed a keyword search of the Joint Integrity Case Management System (JICMS) *in addition* to searching for records related to specific case numbers.  *See* Pineiro Decl. ¶¶ 33-34; 2d Pineiro Decl. ¶ 18.

Lastly, Plaintiffs' criticism of the search terms used by OIG's Office of Audits (AUD) and Inspections (ISP), *see* Pls.' Br. 12, is meritless, as their terms corresponded precisely with Plaintiffs' request.  *Compare* Goal Decl. ¶¶ 12, 17 (using the terms, "child abuse," "children abuse," "Victims of Child Abuse Act," and "Prison Rape Elimination Act"), *with* Compl., Ex. A at 5 (requesting records related to "any alleged or actual verbal, physical, and/or sexual *abuse of children*," "DHS compliance with *child abuse* reporting requirements … including … the *Victims of Child Abuse Act*," and "DHS implementation of and compliance with the *Prison Rape Elimination Act*") (emphasis added).  AUD "unsurprisingly identified zero [responsive] records," Pls.' Br. 12, because it "never conducted a … review project" relevant to Plaintiffs' request.  2d Goal Decl. ¶ 15.

Second, Defendants' affidavits, which include 30 pages describing the types and locations of searches by each office, provide adequate details of their search.  *See Hamdan v. DOJ*, 797 F.3d 759, 770 (9th Cir. 2015).[4]  Plaintiffs complain that CBP, OIG, and ICE "do not adequately describe their search terms," Pls.' Br. 6, and that their search descriptions are "inadequate."  *Id.* at 7.  But for the vast majority of offices, Defendants provided the precise search terms used, and the few instances where terms were not provided, Defendants explain the manual searches done where appropriate, *see* Howard Decl. ¶¶ 23 (explaining Tucson's manual search), 31 (explaining Del Rio's manual search of hard copy archives); 2d Howard Decl. ¶ 3 (explaining why keyword search in CSCD

---

[4] *Nat'l Day Labor Organizing Network ("NDLON") v. ICE*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012), imposes "requirements" that "exceed those imposed by the 'reasonableness' standard."  *Bigwood*, 132 F. Supp. 3d at 142; *see also Bothwell v. Brennan*, 2015 WL 6689387, at *5 (N.D. Cal. Nov. 3, 2015) (distinguishing *NDLON*).

was unnecessary),[5] that subject matter experts conducted searches, and what repositories they searched.  *See* Goal Decl. ¶ 16 (explaining ISP team lead identified relevant project folder); Pineiro Decl. ¶ 28 (explaining searches by subject matter experts in Eastern and Western Field Operations), ¶ 40 (explaining search by ODPP subject matter expert).  This satisfies FOIA.  *Judicial Watch*, 20 F. Supp. 3d at 254-55 ("[I]t is permissible for an agency to rely on subject matter experts to conduct individualized searches for documents.").

      In arguing to the contrary, Plaintiffs mischaracterize or omit key details of Defendants' search.  For example, OIG did not "merely state[] that a 'subject matter expert' [in OLA] searched her 'sent' folder for potentially responsive emails and documents."  Pls.' Br. 7.  Instead, OIG explained that "[a] subject matter expert in [OLA] *who was involved in work related to the OIG reports* searched for responsive emails and documents *in marked project folders* within her Outlook account, *including* 'sent' items."  Goal Decl. ¶ 32 (emphasis added); *see also* 2d Goal Decl. ¶ 18.  And it is not the case that "OIG does not offer any information" about the Office of Public Affairs (OPA) and Front Office searches.  Pls.' Br. 7.  OIG explained that subject matter experts familiar with relevant projects searched "the Outlook account folders of relevant employees, including the Inspector General [IG]," and that the Information Technology Division (ITD) did keyword searches of email accounts in OIG's Front Office, INV, ISP, and OPA.  Goal Decl. ¶¶ 33-34.  This is more than sufficient under FOIA.  *Schoenman v. F.B.I.*, 764 F. Supp. 2d 40, 50 (D.D.C. 2011) ("[FOIA] requires not an exhaustive or meticulous account of the agency's

---

[5] In addition, CBP FOIA, in its discretion as a show of good faith, sent follow-up requests to certain offices, including Tucson and Del Rio.  *See* 2d Howard Decl. ¶ 5.  Del Rio's supplemental search located no additional responsive records, *id.* ¶ 7, while Tucson did. *Id.* ¶ 6.  In all instances where Defendants located additional responsive records due to supplemental searches, they will produce any non-exempt information to Plaintiffs by April 28, 2017, with the exception of the records identified by Tucson Sector and any audio files, which CBP FOIA will endeavor to produce by May 8, 2017.  *See* 2d Howard Decl. ¶ 6.  Supplemental searches and productions constitute good faith and do not undermine the adequacy of an agency's search.  *See Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986); *Conti v. DHS*, 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014); *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000).

search, but merely a reasonably detailed one.").  In addition, in response to Plaintiffs'

objection that they do not know "which employees were included or excluded (and why),"

Pls.' Br. 7, OIG explains that because OLA's division director was one of only two people

in OLA and the primary OLA employee involved in the work related to Plaintiffs' request,

her search encompassed all locations in OLA likely to have responsive records.  2d Goal

Decl. ¶ 18.  Likewise, because OIG's Front Office consisted of only the IG and his assistant,

searches of their files encompassed all locations likely to have responsive records.  *Id.* ¶

22.  Insofar as Plaintiffs want to know precisely "*which* … employees conducted the

review[s]," or "performed the search[es]," Pls.' Br. 7-8, courts have called such demands

"frivolous."  *Harrison v. BOP*, 611 F. Supp. 2d 54 (D.D.C. 2009); *see also Bigwood*, 132

F. Supp. 3d at 142-43 ("[T]he undersigned cannot fathom how providing the names of

search personnel would significantly inform the Court's analysis of [search] adequacy).[6]

Plaintiffs also do not undermine the adequacy of Defendants' search by complaining

that CBP and ICE "often do not explain why certain repositories were not searched."  Pls.'

Br. 8.    Each agency explained which offices it tasked, described those offices'

responsibilities to show why they were searched, and averred that it searched all locations

likely to have responsive records.  *See* Defs.' Controverting Stmt. of Facts ("Defs.' CSOF")

¶ 20.  It would be an unreasonable burden for agencies to have to explain why they did not

search every office they did not search, as Plaintiffs suggest.  *See* Pls.' Br. 8.  Nevertheless,

CBP *does* explain why certain Border Patrol sectors did not search:  they searched only to

the extent they were likely to have responsive records *in addition to* those that would have

been forwarded to OPR or OIG.  Howard Decl. ¶ 12.  Thus, Yuma and Grand Forks did

not conduct searches because they report "all complaints or allegations of abuse … to OIG

or OPR" and have "no local tracking mechanism for complaints."  *Id.* ¶ 18.  Where that is

---

[6] Plaintiffs' criticism of CRCL's responsiveness review is likewise frivolous.  Plaintiffs
assert that CRCL "provides no explanation of whether employees used common standards
or guidelines" for making their responsiveness determinations, Pls.' Br. 8, but CRCL
provided, and Plaintiffs cite, the very guidelines CRCL used.  *See* Tyrrell Decl. ¶ 16.

the case, they were not required to search. *See Knight v. NASA*, 2006 WL 3780901, at *5 (E.D. Cal. Dec. 21, 2006) ("[T]here is no requirement that an agency search all possible sources in response to a FOIA request when it believes all responsive documents are likely to be located in one place."). And Miami, Ramey, and New Orleans did not search because they determined that "they had no instances of alleged misconduct responsive to Plaintiffs' request." *Id.* ¶ 19. This too was proper. *See Rosenfeld v. DOJ*, 2010 WL 3448517, at *6 (N.D. Cal. Sept. 1, 2010) (agency need not "engage in a vain search where it believes responsive documents are unlikely to be located").[7]

Likewise, ICE explained that its Office of Policy did not search because it "would not possess any responsive records because the requested information would be in the possession of the operational program offices." Pineiro Decl. ¶ 36; *see also* 2d Pineiro Decl. ¶ 20.[8] ICE also explained that three Field Medical Coordinators and the Medical Quality Management Staff within ICE Health Services Corps (IHSC) conducted searches. Pineiro Decl. ¶ 31. Upon conferring with IHSC, ICE learned that four other Field Medical Coordinators had also conducted searches. 2d Pineiro Decl. ¶ 15. And ICE ERO's Field Operations did not "limit" its search to the Eastern and Western divisions, Pls.' Br. 8-9: Domestic Field Operations is comprised of only those two units. 2d Pineiro Decl. ¶ 8.

Lastly, Plaintiffs are mistaken that "CRCL's restriction of its search to the investigatory Compliance Branch appears to be unreasonable and is not adequately explained." Pls.' Br. 9. CRCL explained that the Compliance Branch's Entellitrak database was the only location likely to have responsive records. *See* Tyrrell Decl. ¶¶ 13, 15; *see also* 2d Tyrrell Decl. ¶¶ 9-10. Plaintiffs provide no evidence to support their view

---

[7] Nonetheless, CBP, in its discretion and as a show of good faith, recently requested that Yuma, Grand Forks, Miami, Ramey, and New Orleans Sectors conduct searches. *See* 2d Howard Decl. ¶ 8. Four of the five sectors did not locate responsive records or those they located have already been produced. *See id.* ¶¶ 9, 11-13. Grand Forks located 20 potentially responsive PREA documents. *Id.* ¶ 10.

[8] As a show of good faith, ICE directed the Office of Policy to conduct a search, whereby the office located 42 pages of responsive, non-duplicative records. 2d Pineiro Decl. ¶ 21.

that that determination "appears to be unreasonable," but simply point to other offices on CRCL's org chart they believe could "potentially" possess responsive records. Pls.' Br. 9. Plaintiffs' "purely speculative claims about the existence and discoverability of other documents" is insufficient to rebut CRCL's good faith declaration. *Martinale v. CIA*, 2005 WL 327119, at *3 (D.D.C. Feb. 9, 2005). And an agency need not search a location because it could "potentially" have responsive records. *See Judicial Watch*, 20 F. Supp. 3d at 254 (requiring a search only "where a document is *likely* to be"). Thus, CRCL need not have searched the locations Plaintiffs identify. *See* 2d Tyrrell Decl. ¶¶ 11-13.

Third, Defendants searched all locations FOIA requires. Plaintiffs claim CBP should have searched five additional offices. "While it is always true that an agency can engage in a more expansive search for responsive documents, the government is not required to search everywhere a document *might* be." *Judicial Watch*, 20 F. Supp. 3d at 254. Instead, agencies are required to search only "those places where a document is *likely* to be." *Id.* Plaintiffs' speculation about what offices may have additional responsive records fails to rebut CBP's averment that it searched all locations likely to contain responsive records. *See* Howard Decl. ¶ 8; *Martinale*, 2005 WL 327119, at *3. Moreover, the offices Plaintiffs identify would not likely have non-duplicative, responsive records. *See* 2d Howard Decl. ¶¶ 18-22. Indeed, LER's search of HRBE would have encompassed any Disciplinary Review Board records. *See* Howard Decl. ¶ 36; 2d Howard Decl. ¶ 20. Nevertheless, in its discretion and as a show of good faith, CBP requested that the remaining four offices identified by Plaintiffs search using specified keywords. *See* 2d Howard Decl. ¶¶ 18-19, 21-22. Of the four, only the Office of Policy and Planning located responsive, non-duplicative records, consisting of about 40 documents. *See id.* ¶¶ 18-22.

Fourth, where Defendants used reasonable means to search all locations likely to have responsive records, Plaintiffs' speculative, and often mistaken, claim that responsive records are missing, Pls.' Br. 14-15, does not undermine search adequacy. "[B]ecause the adequacy of a FOIA search is generally determined not by the fruits of the search, but by

the appropriateness of the methods used to carry out the search, the mere fact that a particular document was not found does not demonstrate the inadequacy of a search." *McCash v. CIA*, 2016 WL 6650389, at *6 (N.D. Cal. Nov. 10, 2016). Defendants' search was not inadequate merely because "responsive documents refer to other documents that were not produced." *Rein v. PTO*, 553 F.3d 353, 365 (4th Cir. 2009) (agency "not required ... to chase rabbit trails that may appear in documents uncovered during [its] search").[9]

Moreover, many of the records Plaintiffs contend are "missing" are either non-responsive or have already been produced. Plaintiffs incorrectly assert that "OIG failed to produce attachments to Case Summary Reports." Pls.' Br. 15. But the five "uploaded documents" listed in the Case Summary Report, Reddy Decl., Ex. ¶ 6, are not attachments. 2d Goal Decl. ¶ 30. And of the five, one has been produced, 2d Pineiro Decl. ¶ 24; two consist of the ACLU's own complaint submitted to OIG and an excerpt from that complaint, 2d Goal Decl. ¶ 31; and OIG, in its discretion, located the remaining two documents, which will be produced to Plaintiffs. 2d Pineiro Decl. ¶ 24. Plaintiffs are also incorrect that OIG "systematically failed to produce responsive email attachments." Pls.' Br. 15. To the contrary, OIG produced "all non-exempt responsive records, including, as a general matter, any attachments to emails." 2d Goal Decl. ¶ 28. This is shown by the fact that each of the records Plaintiffs claim are "missing," Reddy Decl. ¶¶ 14-15, were, in fact, produced. *See* 2d Tyrrell Decl. ¶ 18, Ex. A-2 (CRCL produced purportedly missing spreadsheets); 2d Goal Decl. ¶¶ 32-33 (OIG produced purportedly missing attachments).

Lastly, Plaintiffs do not undermine the adequacy of Defendants' search by claiming that Defendants did not produce records regarding "discipline of officers involved in incidents of child abuse." Pls.' Br. 15. CRCL and OIG would not possess such records.

---

[9] Nevertheless, as Defendants' supplemental declarations show, the agencies attempted to identify in the production or elsewhere the records raised by Plaintiffs and will produce responsive, non-exempt records located. For example, Plaintiffs point to ROIs that refer to potentially responsive CDs not produced. Pls.' Br. 14. While CBP was not required to locate them, as a show of good faith, it has done so and will produce non-exempt portions of the two audio files corresponding to the ROIs. *See* 2d Howard Decl. ¶ 23.

*See* 2d Tyrrell Decl. ¶ 19; 2d Goal Decl. ¶ 35.  CBP and ICE's searches would encompass such records.  *See* 2d Howard Decl. ¶ 14; 2d Pineiro Decl. ¶ 12.  And where ICE located responsive material via a supplemental search, it will produce them.  2d Pineiro Decl. ¶ 23.

## II.      Defendants Properly Withheld Records Exempt From Disclosure.

Defendants' indices provide the requisite detail where Plaintiffs can "fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure." *Fiduccia v. DOJ*, 185 F.3d 1035, 1043 (9th Cir. 1999).  Plaintiffs object to Defendants' use of categorical *Vaughn* indices, arguing that they are improper because they "lump[] together" numerous documents "in a single category," Pls.' Br. 16, and ostensibly use "boilerplate" justifications for withholdings.  *Id.* at 18.  The Ninth Circuit has rejected that very argument.  *See Citizens Com'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (1995).  And where, as here, "the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).  Further, in many instances, Plaintiffs can "discern the basis for the withholding, or whether the claimed exemption is appropriate," Pls.' Br. 16, simply by looking at the records along with the agencies' indices and affidavits.  Where that is the case, the redacted documents, along with the agencies' explanations, are "entirely satisfactory." *Fiduccia*, 185 F.3d at 1043.[10]  For these reasons, many of Plaintiffs' objections to the sufficiency of Defendants' indices are meritless.[11]   In addition, in certain instances, Defendants have provided

---

[10] For instance, CRCL need not list every record to which it applied b(6) and b(7)(C), and OIG need not provide more detail with regard to such redactions where what was redacted is evident from the face of the documents.  *See* 2d Tyrrell Decl., ¶ 23, Ex. A-3.

[11] In particular, a cursory glance at OIG's index (ECF 56-9) belies the assertion that OIG "fails to describe the type of information redacted for any of the materials" in its index. Pls.' Br. 18.  And while Plaintiffs argue that "this is especially troubling with respect to the documents withheld in full" under b(5)," Pls.' Br. 18, OIG withheld in full only *three* documents in its entire production.  *See* 2d Goal Decl. ¶ 38.

supplemental information, rendering Plaintiffs' objections moot.  *See* 2d Tyrrell Decl. ¶ 24 (explaining redactions to "duty assignment sheet," *see* Reddy Decl. ¶ 18, Ex. 9); 2d Pineiro Decl. ¶ 25 (explaining that ICE inadvertently failed to log certain records, *see* Pls.' Br. 19, and providing supplemental *Vaughn*); 2d Howard Decl. ¶¶ 23-35 (providing supplemental justifications for challenged withholdings and explanations for cross-references Plaintiffs find confusing); 2d Goal Decl. ¶¶ 37-43 (providing supplemental information for challenged b(5) redactions), ¶ 42 (addressing purported "gap" in *Vaughn*, *see* Pls.' Br. 19).

In addition, Defendants' withholdings of exempt information are proper.  <u>First</u>, Plaintiffs challenge b(5) redactions from CRCL, OIG, and ICE documents that they claim are neither pre-decisional nor deliberative.  *See* Pls.' Br. 23-24; Reddy Decl. ¶¶ 27-28. Defendants' indices and declarations show that the documents are both.  The documents include "predecisional findings and recommendations from CRCL to CBP," CRCL Index (ECF 56-7) at 4, and non-final draft memos.  *Id.* at 6-8.  In both cases, the recommendations had "not been accepted by the agency decision maker" and "were not finalized," and, as a result, their disclosure "could mislead the public" and "chill candid discussion between agency employees."  *Id.* at 4-6.  Moreover, many of the documents have been produced in their final version with minimal redactions.  *See* 2d Tyrrell Decl. ¶ 23.

One of the OIG documents Plaintiffs raise (DHS-OIG 000533-34) has already been produced.  2d Goal Decl. ¶ 43.  The remainder consist of "preliminary observations, analysis, and recommendations" of personnel and opinions of staff "based on their personal observations during site visits."  *Id.* ¶¶ 40-41.  "Such preliminary observations … are pre-decisional" and "subject to revision."  *Id.*  As such, the documents could mislead the public if disclosed and discourage "staff from being candid in their personal observations" to the detriment of DHS's mission.  *Id.*  Such information is properly protected.  *See Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980).[12]

---

[12] ICE, in its discretion, has determined to release the b(5) material in the two ICE records Plaintiffs raise, *see* Reddy Decl. ¶ 28(f)-(g), thereby mooting the issue with respect to ICE.

<u>Second</u>, Defendants properly applied Exemptions b(6) and b(7)(C).   Plaintiffs ignore Defendants' avowal that they properly withheld personal privacy information under b(6), Defs.' Mot. for Summ. J. ("Defs.' Br.") 18, and seek to undermine Defendants' reliance on *Citizens Commission on Human Rights v. FDA,* 119 WL 1610471, (C.D. Cal. May 10, 1993).  Pls.' Br. 25, n.11.  But Plaintiffs provide no reason to question *Citizens*' conclusion that "Exemption 6 … encompass[es] virtually any information that applies to a particular individual." *Citizens Comm'n*, 1993 WL 1610471, at *12.  This reading reaches the information withheld under b(6).  *See Aguirre v. SEC*, 551 F. Supp. 2d 33, 53 (D.D.C. 2008) (calling the definition of similar files "all encompassing").

Plaintiffs are also incorrect that the records at issue were not compiled for law enforcement purposes.  Plaintiffs concede that "the documents at issue largely concern Defendants' internal investigations of mistreatment allegations made by children in [BP] custody," Pls.' Br. 26, and "allegations of neglect, abuse, and related investigations," *id.* at 29.  Such records facially involve the law enforcement purpose of investigating alleged abuse of minors.  It matters not that they may involve internal investigations because they "focus[] directly on specifically alleged illegal acts, illegal acts of particular identified officials, [and] acts which could, if proved, result in civil or criminal sanctions." *MacLean v. U.S. Army*, 2007 WL 935604, at *8 (S.D. Cal. Mar. 6, 2007).[13]

Having met these threshold requirements, Defendants properly withheld the names of DHS employees against whom abuse allegations have been made.   Government employees—in particular, law enforcement—have protectable privacy interests in their identities, including when they are the subject of complaints or investigations.  *See* Defs.' Br. 20.  And because "[a]llegations of government misconduct are easy to allege and hard

---

[13] There is no basis for the assertion that Defendants' law enforcement purpose is "pre-textual." Pls.' Br. 26.  Defendants have produced thousands of pages showing complaints are reported and investigated within DHS, and Plaintiffs' own request shows such allegations have been the subject of three OIG reports.  *See* 2d Goal Decl. ¶¶ 5-9.  An investigation need not "lead to a criminal prosecution or other enforcement proceeding" to be for law enforcement purposes.  *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982).

to disprove," "bare suspicion" of misconduct is inadequate; instead, a requester must produce evidence credible in the eyes of a reasonable person to obtain disclosure. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004). Plaintiffs do not even cite, much less attempt to meet, *Favish*'s requirements. And where they concededly seek "the names of [DHS] employees *allegedly* responsible for the abuse of minors," Pls.' Br. 24 (emphasis added), their asserted public interest is insufficient on its face to overcome the privacy interests at issue. *See Taitz v. Astrue*, 806 F. Supp. 2d 214, 219 (D.D.C. 2011) ("unsubstantiated allegations" of "official misconduct" insufficient to establish countervailing public interest in disclosure). Defendants also properly withheld minors' ages, which could be identifying. *See* 2d Goal Decl. ¶ 47. "As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." *Boehm v. F.B.I.*, 948 F. Supp. 2d 9, 30 (D.D.C. 2013). And courts regularly uphold the redaction of "information by which the child victims could be identified, such as their … ages." *Davis v. U.S. Postal Inspection Serv.*, 75 F. Supp. 3d 425, 431 (D.D.C. 2014); *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1195 (N.D. Cal. 2006).[14]

       <u>Third</u>, CBP properly withheld law enforcement techniques, procedures, and guidelines under b(7)(E). Plaintiffs challenge CBP's withholdings in four documents. *See* Reddy Decl., Exs. 18A-D. CBP has determined it can release the information previously withheld under b(7)(E) from the fourth document. *See* 2d Howard Decl. ¶ 39, Ex. B-2. The remaining three documents meet b(7)(E)'s requirements. They consist of (1) detention standards and procedures for the short-term custody of those arrested or detained by BP agents, *see* 2d Howard Decl. ¶ 36; (2) a memo regarding training for those involved in the apprehension, detention, and transportation of minors in DHS custody, *id.* ¶ 37; and (3) CBP procedures at ports of entry for secure detention, transport, and escort of persons, *id.* ¶ 38. These documents "bear[] directly on [CBP's] mission" to "prevent[] unlawful entry

---

[14] ICE and OIG have determined that they can release the dates of apprehension, arrest, or transfer from the documents Plaintiffs raise, *see* Pls.' Br. 29, without compromising the identities of the minors involved. *See* 2d Pineiro Decl. ¶ 30; 2d Goal Decl. ¶ 47.

and handl[e] the concomitant security risks," *Am. Immigration Council ("AIC") v. DHS*, 30 F. Supp. 3d 67, 75 (D.D.C. 2014).  Their nexus to law enforcement is "plain."  *Id.*

The information redacted from the first document consists of procedures for handling detainees in short-term custody, *see* Reddy Decl. Ex. 18-A (redacting from section "6.  PROCEDURES" for handling detainees, including detention duration, exceptions to short-term detention, search, restraint, and segregation procedures, and for processing juveniles), including "factors and circumstances to be [considered] when screening, segregating, and detaining detainees."  CBP Index (ECF 56-3) at 10.  Such "sensitive law enforcement" information could, if released, be used "to counter operational and investigative actions taken by CBP" and "circumvent custodial procedures and potentially compromise officer safety," *id.* at 10, and is protected by b(7)(E).  *See AIC*, 30 F. Supp. 3d at 77-78 (upholding redaction of such procedures because disclosure "could risk circumvention of detention practices and threaten officer safety").[15]  CBP has determined to disclose additional information from the second document, *see* 2d Howard Decl. ¶ 37, Ex B-1; however, disclosure of the remaining information withheld under b(7)(E)—system codes and internal web addresses, *id.* ¶ 37—could permit individuals "to gain unauthorized access to" CBP systems and information, potentially "arm[ing] them with the information or ability to circumvent the law."  CBP Index at 9.  Courts have upheld b(7)(E) redactions from similar materials based on these justifications.  *See, e.g., Elec. Privacy Info. Ctr. v. CBP*, 2017 WL 1131875, at *4 (D.D.C. Mar. 24, 2017).  From the third document, CBP redacted security procedures for the temporary detention, transport, and escort of detainees, which is protected by b(7)(E) for the same reasons as the first document and is non-responsive in any event.  *See* 2d Howard Decl. ¶ 38.

---

[15] The information withheld pertains to techniques not generally known to the public.  *See* Howard Decl. ¶¶ 63-65 (explaining harms that would follow should information become public); *AIC*, 30 F. Supp. 3d at 78 ("As the general public is not involved in processing aliens … there would be no reason for [it] to know of these techniques.").

1    <u>Fourth</u>, Defendants properly redacted case, complaint, and serious incident report
2    numbers.  These are not merely "sequential number[s] assigned solely for ministerial
3    purposes," Pls.' Br. 28; they are "techniques and procedures for identifying, categorizing,
4    and processing law enforcement records," and their release could allow unauthorized
5    individuals to "locate, access, and navigate internal law enforcement computer systems and
6    databases," potentially giving them the ability to "access … sensitive government
7    systems," "manipulate law enforcement databases," and "impede government operations."
8    Howard Decl. ¶ 64.  Courts have upheld such redactions for similar reasons.  *See, e.g.,*
9    *Strunk v. State Dep't*, 905 F. Supp. 2d 142, 147 (D.D.C. 2012) (upholding redaction of
10   codes that could facilitate unauthorized navigation through law enforcement database);
11   *Ortiz v. DOJ*, 67 F. Supp. 3d 109, 124 (D.D.C. 2014) (same); *Levinthal v. FEC*, 2016 WL
12   6902111, at *5 (D.D.C. Nov. 23, 2016) ("[C]ourts in this District repeatedly have held that
13   information connected to law enforcement databases qualifies for exemption under 7(E).").

14   **III.   Defendants Released Reasonably Segregable Portions of Responsive Records.**

15       Plaintiffs are wrong that Defendants have provided only a "conclusory statement"
16   that information "is not reasonably segregable."  Pls.' Br. 30.  Each agency explained its
17   line-by-line review; that all reasonably segregable material was released; and that
18   additional information could not be because it is so intertwined with protected material that
19   segregation is impossible or would reveal otherwise-exempt material.  *See* Defs.' CSOF ¶
20   63.  The agencies also explained their efforts to be as transparent as possible.  *See, e.g.,*
21   Goal Decl. ¶ 47.  Along with their detailed indices and segregated documents, the agencies'
22   affidavits satisfy segregability obligations.  *See id.* at 780 (agency affidavits to be taken at
23   face value where they "identify documents by number," "provide specific reasons why the
24   disclosure of information would be harmful," and "specifically state[] that [n]o reasonably
25   segregable, nonexempt portions were withheld from plaintiffs").

26
27
28

15

1

## **<u>CONCLUSION</u>**

2

For the foregoing reasons, Defendants are entitled to summary judgment.

3

Dated: April 26, 2017                    Respectfully submitted,

4

5                                                 CHAD A. READLER
                                                  Acting Assistant Attorney General
6

7                                                 MARCIA BERMAN
                                                  Assistant Branch Director
8

9                                                 */s/ Emily Sue Newton*
                                                  EMILY S. NEWTON
10                                                Va. Bar No. 80745
                                                  STUART J. ROBINSON
11                                                Cal. Bar No. 267183
                                                  Trial Attorneys
12                                                U.S. Department of Justice
                                                  Civil Division, Federal Programs Branch
13                                                20 Massachusetts Ave., NW
                                                  Washington, DC  20530
14                                                Tel: (202) 305-8356
                                                  Fax: (202) 616-8470
15                                                Email: emily.s.newton@usdoj.gov
16

17                                                *Counsel for Defendants*

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Emily Newton, hereby certify that on April 26, 2017, I caused a copy of the foregoing ***Defendants' Reply in Support of Their Motion for Summary Judgment*** to be filed with the Court's electronic filing system.  Parties may access this document through that system.

*/s/ Emily S. Newton*
EMILY S. NEWTON