# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Civil Liberties Union of Arizona, *et al.*, | No. CV-15-00247-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of Homeland Security Office for Civil Rights and Civil Liberties, *et al.*, | |
| Defendants. | |

At issue are Defendants United States Customs and Border Protection ("CBP"), Department of Homeland Security ("DHS"), Department of Homeland Security Office of Civil Rights and Civil Liberties ("CRCL"), Department of Homeland Security Office of Inspector General ("OIG"), and Immigration and Customs Enforcement's ("ICE") Motion for Summary Judgment (Doc. 56, Defs.' MSJ), to which Plaintiffs American Civil Liberties Union of Arizona and American Civil Liberties Union of San Diego and Imperial Counties filed a Response (Doc. 61, Pls.' Resp.) and Cross-Motion for Summary Judgment (Doc. 62, Pls.' MSJ), Defendants filed a Response and Reply (Doc. 71, Defs.' Reply), and Plaintiffs filed a Reply in support of their Cross-Motion (Doc. 74, Pls.' Reply). Pursuant to LRCiv 7.2(f), the Court concludes this matter is suitable for resolution without oral argument.

# I.    BACKGROUND

On June 11, 2014, the American Civil Liberties Union ("ACLU"), along with partner organizations, submitted a complaint on behalf of 116 unaccompanied immigrant children to Defendants CRCL and OIG. The complaint alleged that the unaccompanied minors were abused or otherwise mistreated while in Border Patrol custody. The specific allegations included physical, sexual, and verbal abuse, the denial of medical care and essentials, and inadequate accommodations.

On December 3, 2014, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to DHS's Privacy Office, seeking the disclosure of DHS records pertaining to the allegations in their complaint, including any "alleged or actual mistreatment of children in DHS custody from January 1, 2009 to the present, as well as any such Records held by United States Border Patrol, CBP, or any other DHS component agencies." (Doc. 1, "Compl." Ex. A at 5-6.) Plaintiffs also requested expedited processing of the Request pursuant to 5 U.S.C. §§ 552(a)(6)(E)(i) and 552(a)(6)(E)(v). DHS received the Request on December 11, 2014 and forwarded the relevant portions to its sub-agencies. On December 19, 2014, ICE denied Plaintiffs' request for expedited processing and invoked a ten-day extension to respond to the Request under 5 U.S.C. § 552(a)(6)(B). On January 22, 2015, OIG similarly denied Plaintiffs' request and invoked the extension.

On February 11, 2015, Plaintiffs filed this action seeking injunctive relief and requesting a Court order requiring Defendants to immediately process and release all records responsive to its FOIA requests, enjoining Defendants from charging Plaintiffs search, review, or duplication fees, and awarding Plaintiffs' costs and reasonable attorneys' fees.

On February 4, 2016, Defendants filed their first Motion for Extension of Time to Complete Production and Provide *Vaughn* Indexes. (Doc. 22.) Plaintiffs opposed that Motion (Doc. 24), and the Court denied Defendants' request to extend the production and briefing deadlines but granted the Motion as to the extension of *Vaughn* index deadlines

(Doc. 27). The Court also ordered Defendants to provide monthly status reports to Plaintiffs regarding their productions. (Doc. 27.) During this time period, Defendants began producing responsive records.

On July 8, 2016, Defendants filed a Motion to Stay Proceedings with respect to Defendant OIG and a second Motion for Modification of the Briefing Scheduling. (Doc. 34.) Plaintiffs again opposed Defendants' Motions and moved for sanctions. (Doc. 37.) On October 3, 2016, the Court held a hearing on Defendants' Motions, eventually granting them in part and denying them in part. (Doc. 47.) In response to that hearing, the parties filed a Joint Proposed Schedule, allowing Defendants until October 11, 2016 to produce any remaining responsive documents, and until October 31, 2016 to provide preliminary or updated *Vaughn* Indices. (Doc. 49.) Defendants maintain that all four agencies completed production of the responsive non-exempt records within their control by October 2016. (Defs.' MSJ at 2; Doc. 52.) Such productions totaled nearly 30,000 pages and 35 audio files. In January 2017, ICE supplemented its production by providing lesser redacted versions of previously produced documents. In February 2017, OIG produced an additional 2,000 pages, supplementing its previous productions. The current Motions followed.

## II. LEGAL STANDARDS

### A. FOIA

Congress enacted FOIA to "facilitate public access to Government documents." *DOS v. Ray*, 502 U.S. 164, 173 (1991). Accordingly, FOIA "mandates a policy of broad disclosure of governmental documents." *Maricopa Audubon Soc'y. v. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (quotation and citation omitted). FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (citation omitted).

When a request is made, a governmental agency may withhold all or portions of a document "only if material at issue falls within one of the nine statutory exemptions found in § 552(b)." *Maricopa Audubon Soc'y*, 108 F.3d at 1085. The exemptions are "explicitly exclusive." *DOJ v. Tax Analysts*, 492 U.S. 136 (1989). Moreover, they must be "narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Maricopa Audobon Soc'y*, 108 F.3d at 1085 (quotation and citation omitted).

As courts have noted, "the district court's review in a FOIA case is difficult because 'the party seeking disclosure does not know the contents of the information sought and is, therefore, helpless to contradict the government's description of the information or effectively assist the trial judge." *Hronek v. DEA*, 16 F. Supp. 2d 1260 (D. Oregon 1998) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1049 (3d. Cir. 1995).) Ordinary rules of discovery, in which each party has access to the evidence upon which the court will rely in resolving the dispute, do not apply. Instead, one party maintains sole access to the complete universe of facts and documents. *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). Thus, "the underlying facts and possible inferences are construed in favor of the FOIA requester." *L.A Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006) (citations omitted).

The district court is required to conduct a *de novo* review of the government agency's decision to withhold requested information. 5 U.S.C. § 522(a)(4)(B). The burden to justify the refusal to turn over responsive documents rests with the government. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F. 3d 143, 147 (2d Cir. 2010).

**B.     Summary Judgment**

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. DOD*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (quotations omitted). Because the facts are rarely in dispute in a FOIA case, the Court need not ask whether there is a genuine issue of material fact. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *but see Torres Consulting & Law Grp., LLC v. NASA*, 666 F. App'x

643, 644 (9th Cir. 2016) ("[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination.").

The standard for summary judgment in a FOIA case generally requires a two-stage inquiry. *L.A Times Commc'ns, LLC*, 442 F. Supp. 2d at 893. Under the first step of the inquiry, the Court must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). In the second stage, the Court examines whether the agency has proven that the information that it withheld falls within one of the nine FOIA exemptions. 5 U.S.C. § 552(a)(4)(B); *DOS v. Ray*, 502 U.S. 164, 173 (1991) ("The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."); *Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).

The government may submit affidavits to satisfy its burden, but "the government may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quotation and citation omitted). The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (internal citation omitted). To carry their burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. DEA*, 836 F.3d 987 (9th Cir. 2016) (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (same)). These submissions—commonly referred to as a *Vaughn* indexes—must be from "affiants [who] are knowledgeable about the information sought" and "detailed enough to allow courts to make an independent assessment of the government's claim [of

exemption]." *Id.* (citing *Lion Raisins*, 354 F.3d at 1079; 5 U.S.C. § 552(a)(4)(B)). Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citation omitted).

In short, Defendants must show that "its search for responsive records was adequate, . . . any exemptions claimed actually apply, . . . [and] any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

## III.    ANALYSIS

Plaintiffs argue that deficiencies in Defendants' searches and *Vaughn* Indices and accompanying declarations make it impossible for Plaintiffs or the Court to meaningfully evaluate the search adequacy or claimed exemptions. (Pls.' MSJ at 1.) Plaintiffs thus request that the Court grant them summary judgment and order Defendants to conduct new searches, produce materials responsive to those searches, produce records improperly withheld or redacted—or for the Court to conduct an immediate *in camera* review of certain documents—to supplement the record with more detailed segregability information, submit revised *Vaughn* Indices, and log additional records.[1] (Pls.' MSJ at 1.)

Defendants equally move for summary judgment on the grounds that they fully complied with their FOIA obligations, detailed the searches performed in response to Plaintiffs' request and the bases for withholding exempt material, and only withheld information under applicable FOIA exemptions, which their Indices also detail. (Defs.' MSJ at 1.)

As is required, the Court will first determine whether Defendants have demonstrated that they conducted searches reasonably calculated to uncover all relevant

_____

[1] As the parties extended the briefing schedule and Defendants made supplemental productions, a portion of the issues presented in the gestating Motions became explicitly or implicitly moot. While the Court has endeavored to note when such accord has been reached, due to the inherently complex nature of this action, and the voluminous filings, declarations, and Indices, the Court addresses only those issues that present a pending, live controversy.

documents and sufficiently described those searches. *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009). Then, the Court will determine whether Defendants have overcome the strong presumption in favor of disclosure with regard to each claimed exemption. *Id.* at 973.

## A.     Adequacy of the Search

Defendants move for summary judgment on the grounds that each agency conducted a reasonable search for responsive records and detailed each purportedly sufficient search. (Defs.' MSJ at 3-12; Defs.' Resp. at 1-10.) Plaintiffs respond and similarly move, arguing that Defendants have failed to demonstrate search adequacy, both in describing the search and by employing overly narrow search terms, omitting other necessary terms, and failing to search relevant repositories, causing significant gaps in production. (Pls.' MSJ at 5-15.)

To comply with FOIA, an agency must conduct a "search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quotation and citation omitted). At summary judgment, an agency must demonstrate "'beyond material doubt . . . that it has conducted" such a search. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. Civ S-06-2845 LKK/JFM, 2008 WL 2523819, at *11 (E.D. Cal. June 20, 2008) (quoting *Zemansky*, 767 F.2d at 571). The agency is not required to search every record system, but may limit itself to those systems in which it believes responsive records are likely to be located. *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010). FOIA requires only "a reasonable search for records, not a perfect one." *Hamdan v. DOJ*, 797 F.3d 759 at 772 (9th Cir. 2015). In conducting its search, the agency may rely on "reasonably detailed, non-conclusory affidavits and declarations submitted in good faith." *Id.* Those affidavits must describe "what records were searched, by whom, and through what process." *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citation omitted). These requirements are "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the

search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The court is tasked with determining if the agency conducted a sufficient search for the documents requested, not determining if the documents requested actually exist. *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).

### 1. Declarations and Descriptions

Plaintiffs take issue with three aspects of Defendants' declarations: (1) the description of search terms employed, (2) the description of the searches themselves, and (3) the description of the repositories searched. (Pls.' MSJ at 5-6.) Defendants respond that the "vast majority of offices" provided the precise search terms used and, where such terms were not provided, the declarations explain the manual searches done. (Defs.' Reply at 4.) Thus, Defendants claim that each agency's descriptions of their searches illustrate adequate examinations, both in regards to terms and locations. (Defs.' MSJ at 2-12.)

### a. Description of Search Terms Used

Plaintiffs first move for summary judgment on the grounds that Defendants CBP, OIG, and ICE do not adequately describe their search terms. (Pls.' MSJ at 6.) Plaintiffs contend that each agency failed to provide any information regarding the search terms used and argue that such deficiencies are particularly egregious in regards to CBP's Tucson Sector, DHS OIG Office of Inspections, ICE Enforcement and Removal Operations Directorate ("ERO") Eastern and Western Division Unit Chiefs, and ICE Office of Detention Policy and Planning ("ODPP"). (Pls.' MSJ at 7.) Defendants contend that their searches were adequately described, including those identified by Plaintiffs. (Defs.' Resp. at 4-5 (citing Doc. 56 Ex. A, "Howard Decl." ¶¶ 23, 31; Ex. D, "Goal Decl." ¶ 16; Ex. B, "Pineiro Decl." ¶¶ 28, 40).)

In instances where all search terms were provided, the Court agrees with Defendants. Where they were not, the Court agrees with Plaintiffs. While true that it is permissible for an agency to rely on subject matter experts to conduct individualized searches for documents, *Judicial Watch, Inc. v. United States Dep't of Hous. & Urban*

*Dev.*, 20 F. Supp. 3d 247, 254 (D.D.C. 2014), it is curious why the terms or topics used by those experts would not be disclosed. Indeed, to disclose them does not require sophisticated technology or specific tools. Instead, most of the searches described entail only an expert searching relevant repositories manually. For example, OIG provided information about the subject matter expert and where she searched but failed to provide any detail regarding what criteria or terms she used to locate such responsive documents. Because such experts are already conducting the search, often using "keyword searches" (*see* Goal Decl. ¶¶ 33-34), there is no reason why those search terms cannot be recorded and disclosed to ensure a fulsome examination and complete release. Providing such terms is consistent with FOIA's requirement that agencies provide merely a reasonably detailed description of their searches and does not demand "an exhaustive or meticulous account" of the process. *See Schoenman v. FBI*, 764 F. Supp. 2d 40, 50 (D.D.C. 2011). Thus, the Court finds that those searches that fail to detail the terms or criteria used to identify responsive documents are inadequate. Specifically, any declaration that simply relies on a subject matter expert and manual searches or merely identifies the locations searched, but does not discuss subject matter, search terms, or other criteria, must be supplemented.

### b. Description of Searches

Plaintiffs similarly move for summary judgment on the grounds that Defendants' descriptions of their searches are also inadequate. (Pls.' MSJ at 7.) Plaintiffs specifically take issue with the facts that (1) OIG provided a statement that a subject matter expert searched her sent folder for potentially relevant documents, (2) CRCL described a manual review by employees within the Compliance Branch, (3) CBP and ICE offer insufficient explanation as to their search process of hard copy archives in the Del Rio Sector, and (4) insufficient descriptions were given with regard to ICE ERO Field Operations and ICE ODPP email accounts. (Pls.' MSJ at 7-8.) Plaintiffs also assert that many of Defendants' descriptions of who conducted the search are equally deficient. (Pls.' Reply at 5.)

Defendants contend that OIG expanded on their search (Resp. at 5), CRCL detailed their responsive review (Defs.' Resp. at 6 (citing Doc. 56 Ex. C, "Tyrrell Decl." ¶ 16)), CBP and ICE adequately described their Tucson and Del Rio Sector search (Defs.' Resp. at 4 (citing Howard Decl. ¶¶ 23, 31)), and ICE's ODPP email search was sufficiently accounted for (Defs.' MSJ at 5 (citing Pineiro Decl. ¶ 28)). Defendants also note that CBP sent follow-up requests to the Tucson and Del Rio offices, which conducted additional searches, and that the Del Rio office located no further responsive records. (Defs.' Resp. at 5 n.5.)

Plaintiffs' Reply does not directly address many of the arguments lodged in Defendants' Response and Reply regarding the adequacy of their descriptions of searches. Thus, the Court will rely on the arguments lodged in Plaintiffs' initial Motion. Just as above, the Court finds that the description of many of Defendants' searches are too vague and insufficient to establish they conducted adequate searches. *See Nat'l Day Laborer Org. Network v. ICE*, 877 F. Supp. 2d 87, 106 (S.D.N.Y. 2012) ("custodians cannot be trusted to run effective searches, without providing a detailed description of those searches, because FOIA places a burden on defendants to establish that they have conducted adequate searches") (quotation omitted). In reviewing Defendants' cited declarations, the Court encountered several vague descriptions of such manual searches without any detail about what those manual searches entailed. (*See, e.g.*, Howard Decl. ¶ 23 ("[a]n employee in Tucson Sector conducted a manual search of [Tucson's] Investigation database, its shared drive, and the SOS's email").

While the Court does not require either that Defendants' search or their description of that search be perfect, Plaintiffs are entitled to the knowledge of what that search involved—a process that is not particularly cumbersome or difficult when a manual search is conducted. Indeed, a FOIA responder's task is clear: it must describe what records were searched, by whom, and by what process. Here, multiple agencies have failed to describe that process, other than by identifying on the who and where and omitting the what, or vice versa. Thus, just as above, the Court will require Defendants to

provide descriptions of the manual searches where they have not done so (*i.e.*, as described in the Howard Decl. ¶ 23; Pineiro Decl. ¶ 28).[2] Further, in instances where the agency failed to describe the backgrounds or qualifications of those who conducted the searches, those too must be supplemented. While the Court does not order, and Plaintiffs do not request, the identities of those who conducted the search, Plaintiffs are entitled to sufficient detail on the employees' qualifications to ensure that they have the requisite skillset or knowledge base to conduct a compliant search. (*See, e.g.*, 2d Howard Decl. ¶¶ 18-19 (stating only that the agency conducted the search); 2d Tyrrell Decl. ¶¶ 14-15 (describing only a policy advisor).)

### c. Description of Repositories Searched

Plaintiffs next move for summary judgment on the grounds that several declarations do not explain why certain repositories were not searched. (Pls.' MSJ at 8-9.) Plaintiffs point out that CBP's declaration does not explain why several salient locations—including Yuma, Grand Forks, Miami, Ramey, and New Orleans—were not searched. (Pls.' MSJ at 8.) Similarly, Plaintiffs question why ICE Health Services restricted its search to specific regions, why ICE ERO Field Operations limited its search to unit chiefs of the Eastern and Western region operations divisions, why the ICE Office of Policy records were not searched, and why numerous repositories were omitted from CRCL's searches. (Pls.' MSJ at 8-9.)

Defendants respond and similarly move, arguing that each agency explained which offices it tasked, described those offices' responsibilities to show why they were searched, and stated that they searched all locations likely to have responsive documents. (Defs.' Reply at 11.) Defendants contend that it is unreasonable to demand that agencies explain why they did not search every office they did not search, rather than those they did. (Defs.' Reply at 11.)

---

[2] The Court does not find CRCL's description inadequate and does not require additional information because it provided the search terms used and the review that followed. (*See* Tyrrell Decl. ¶ 16.)

The Court agrees with Defendants that they have adequately identified the repositories searched and explained the reasons those sources were chosen, and have provided the requisite explanation for failure to search other locations. (*See* Howard Decl. ¶ 18 (explaining that CBP complaints from Yuma and Grand Forks report all complaints or allegations of abuse to OIG or OPR); Pineiro Decl. ¶ 31 (explaining ICE's search of Health Services); Doc. 71 Ex. C, "2d Pineiro Decl." ¶¶ 8, 15 (discussing search of ICE Health Services and ICE ERO's Field Operations searches, which were not limited to Eastern and Western Divisions); Tyrell Decl. ¶¶ 13, 15 (describing CRCL's responsive records search).) Plaintiffs have failed to rebut several of the arguments found in Defendants' Response and Reply in their own Reply and have not presented the Court with evidence from which it could even infer that justification for each omitted repository is necessary to a FOIA-compliant search. The Court acknowledges the unique circumstances of this argument, as Plaintiffs specifically and explicitly do not have access to these repositories or their content. But Defendants are only required to conduct a good faith search of locations likely to contain responsive records, have broad discretion to make that determination, and are not required to detail every unsearched database. *See, e.g.*, *Knight v. NASA*, No. 204-CV-2054-MCE-GGH, 2006 WL 3780901, at *5 (E.D. Cal. Dec. 21, 2006) ("there is no requirement that an agency search all possible sources in response to a FOIA request"). The Court will accordingly grant Defendants summary judgment as to the adequacy of the description of repositories searched.

## 2. Adequacy of Search Terms

Plaintiffs also move for summary judgment on the grounds that CRCL, CBP, ICE, and OIG's search terms were either overly narrow or omitted key terms. (Pls.' MSJ at 9-13.) Defendants argue that Plaintiffs are not entitled to dictate the terms used and that those employed were reasonably calculated to locate responsive records. (Defs.' MSJ at 1.) The Court will address each agency's terms in turn.

### a.     CRCL

Plaintiffs argue that CRCL's search terms inadequately omitted the term "UAC"—an abbreviation for "unaccompanied minor"—which its own records illustrate is commonly used in the agency. (Pls.' MSJ at 11.) Plaintiffs also contend that CRCL should have included "verbal abuse" in its manual review. (Pls.' MSJ at 11.) Defendants contend that if a complaint involved an unaccompanied minor, then CRCL's terms would have uncovered those complaints, regardless of omitting UAC or verbal abuse, as would CRCL's manual review of potentially responsive records. (Defs.' Reply at 2.)

While the Court is inclined to find for Defendants, as they attest that any complaint involving an unaccompanied minor would be captured by its searches, Plaintiffs produce specific evidence to the contrary. (Doc. 74 Ex. 2, "2d Reddy Decl." ¶ 4, Exs. 23A-D.) Coupled with the ubiquitous nature of the acronym—both in Defendants' documents and pleadings—the Court finds that such searches must contain the term in order to comply with FOIA. Regarding searches for verbal abuse alone, Plaintiffs do not present similar evidence, nor do they affirmatively assert that the lack of the specific term would evade a search that included the term UAC. Thus, the Court will order Defendants to supplement its production with the results of a search that includes the term UAC.[3]

### b.     CBP

Plaintiffs contend that CBP offices overly restricted their search terms by employing specific phrases, omitting advocacy organizations, and failing to include the relevant terms "discipline, misconduct, and abuse." (Pls.' MSJ at 11-12.) Plaintiffs take particular issue with the term "frigid cell"—rather than "cold." (Pls.' MSJ at 11; Pls.' Reply at 2.) Defendants contend that CBP's search was adequate as it tasked five of its offices and all 20 of its sectors to conduct searches for responsive records, including physical files, emails, shared drives, document management systems, and other databases, utilizing search terms that were generated based on the sectors' experience and

---

[3] In addition to CRCL, other agencies that employ the term "UAC" but declined to search it must also conduct additional searches with the acronym, including OIG's Office of Audits and Office of Inspections.

discretion. (Defs.' MSJ at 5-7.) Moreover, Defendants reiterate that the terms need not be perfect, only reasonably tailored, and that additional terms would have swept in substantial nonresponsive materials. (Defs.' Reply at 2.)

The Court agrees with Defendants that it is not its task to oversee the minutia of each search, allow Plaintiffs to dictate search terms, or demand a comprehensive and possibly unreasonable search. *See Physicians for Human Rights v. DOD*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch.") (quotation omitted). And the agencies are not required to utilize the same terms. However, Plaintiffs again provide evidence that the term "frigid cells" is rare and that "cold" or "temperature" are more frequently employed. (*See* 2d Reddy Decl. ¶ 5, Exs. 24A-B.) In light of this evidence, as well as the curious nature of Defendants' choice to use an uncommon-to-arcane term while omitting one that other agencies freely searched, the Court will order that Defendants conduct a search using Plaintiffs' suggested terms "cold" and "temperature" regarding the temperature of holding locations.

### c. ICE

Plaintiffs also argue that several of ICE's searches were deficient. (Pls.' MSJ at 12.) However, Plaintiffs are not specific in identifying what terms have been omitted or would be sufficient. (Pls.' MSJ at 12.) Without such specificity, the Court will not find fault in ICE's search terms for lack of specificity. While Plaintiffs argue that ICE, OPR and OHC must provide explanations for searching certain ICE case numbers, Defendants respond that OPR directed a keyword search of the Joint Integrity Management System in addition to searching for records related to specific case numbers and that OHC has since located and produced records responsive to searches. (Defs.' Resp. at 3; Pls.' Reply at 6.) Thus, the Court finds ICE's search terms and justification for those terms compliant.

#### d. OIG

Plaintiffs also argue that OIG used highly specific search terms, for which there were no results, and omitted common acronyms such as UAC and PREA ("Prison Rape Elimination Act"). Defendants contend that Plaintiffs' attack of the OIG search terms are meritless, as the search terms used correspond to and track Plaintiffs' request. (Defs.' Reply at 4 (citing Goal Decl. ¶¶ 12, 17; Compl. Ex. A at 5).)

Plaintiffs do not address many of Defendants' contentions in their Reply and the terms do appear to track the complaint. Nonetheless, the Court again finds that the acronym UAC was improperly omitted. Moreover, unlike several other declarations, there is no contention that OIG's searches were exhaustive. (Pls.' MSJ at 15.) Thus, the Court will require Defendants to conduct additional searches that include the acronyms UAC and PREA. Furthermore, the Court also agrees with Plaintiffs that Defendants must confirm that records are not excluded by the use of entire phrases—such as "child abuse" and "children abuse"—rather than individualized terms—such as "child" and "abuse" in the same document.

### 3. Adequacy of Repositories Searched

Plaintiffs also contend that CBP unjustifiably failed to search relevant repositories. (Pls.' MSJ at 13.) Specifically, Plaintiffs argue that CBP did not collect materials from: the (1) Office of Border Patrol Headquarters, (2) Office of Policy and Planning, (3) Discipline Review Board within HRM, (4) Office of Training and Border Patrol training facility, CBP Office of the Commissioner. (Pls.' MSJ at 13.) Defendants respond and move for summary judgment on the grounds that they have searched all locations FOIA requires. (Defs.' Reply at 8.)

Defendants are correct that "it is always true that an agency can engage in a more expansive search for documents" and that the "government is not required to search everywhere a document might be." (Defs.' Reply at 8 (citing *Judicial Watch*, 20 F. Supp. 3d at 254).) While some of the additional offices that Plaintiffs identify do seem relevant to their request, Defendants have since asserted that at least one of the offices' records

were encompassed in another search (*see* Howard Decl. ¶ 36; Doc. 71 Ex. B, "2d Howard Decl." ¶ 20) and that CBP instructed the remaining four offices to search using key words, resulting in the locating of 40 documents that were non-duplicative and responsive (Howard Decl. ¶¶ 18-22). In addition, Defendants assert that records from CBP's Discipline Review Board would have been captured by CBP's HRM Division of Labor and Employee Relations' search of Human Resources Business Engine. (Defs.' Resp. at 4.) So long as those documents have indeed been produced and such Discipline Review Board records would have been captured by other searches,[4] Defendants have met their FOIA burden and are entitled to summary judgment in regard to the adequacy of the searched repositories.

### 4.    Gaps in Production

Plaintiffs attack the format of the productions—unsearchable PDF files—as well as their organization or lack thereof. (Pls.' MSJ at 15.) However, Plaintiffs seemingly only raise these issues to illustrate Defendants' lack of diligence and the burden such a production places on Plaintiffs, rather than requesting a specific remedy. Plaintiffs also assert that OIG systematically failed to produce responsive email attachments and that other documents have apparently been omitted. (Pls.' MSJ at 15.) Defendants simply respond that their supplemental declaration addresses the purported gaps in production. (Defs.' Resp. at 11.) Nonetheless, Plaintiffs' Reply again uses these gaps and supplemental productions as evidence of insufficiency regarding the original searches— but does not request a specified remedy. To the degree responsive, non-exempt email attachments remain withheld without justification or logging, Defendants must produce or log those documents immediately. As to any other purported gaps, the Court can only presume that the specific searches and descriptions that this Order requires will mollify

---

[4] Because Plaintiffs argue that Defendants declarations are at odds with this contention (Pls.' Reply at 4 (citing Doc. 74 Ex. 1, "2d Tomsheck Decl." ¶¶ 5-7)) and have arguably produced evidence in support, it is incumbent upon Defendants to confirm that their contention is accurate and not in contravention of declarant testimony.

any breaches in production that may remain and will therefore not order any further, unrequested remedy.

## B. FOIA Exemptions

FOIA's stated purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Though this goal promotes fulsome disclosure, FOIA incorporates nine exemptions that reflect the need to balance the public's interest in full disclosure against the sometimes legitimate need for the government to maintain secrecy. *See* 5 U.S.C. § 552(b)(1)-(9). FOIA's exemptions are to be narrowly construed, as the "limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective" of the statute. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (citation omitted).

"The government bears the burden of demonstrating that an exemption applies," but courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012). To prevail on summary judgment in a FOIA action regarding exemptions, a defendant must demonstrate that the information withheld from disclosure is exempt and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 522(a)(4)(B)(b). An agency may satisfy this burden by providing "a relatively detailed justification through the submission [*Vaughn* Indices], sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (quotations and citations omitted); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). "[D]istrict courts need not and should not make *in camera* inspections where the government has sustained its burden of proof on the claimed exemption by public testimony or affidavits." *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).

### 1. Sufficiency of *Vaughn* Indices

Plaintiffs first argue that CBP, OIG, CRCL, and ICE's *Vaughn* Indices are insufficient to carry the agencies' burden, particularly in their use of a categorical approach to withholdings. (Pls.' MSJ at 15-19.) Defendants respond that their indices provide the requisite detail so that Plaintiffs can "fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure." (Defs.' Reply at 15 (citing *Fiduccia v. DOJ*, 185 F.3d 1035, 1043 (9th Cir. 1999).)

The parties' briefing offers somewhat conflicting precedent regarding the use of a categorical approach to *Vaughn* Indices. On the one hand, courts have held that a "[c]ategorial description of redacted material coupled with a categorical indication of anticipated consequences of disclosure is clearly inadequate." *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987). On the other, the same court has stated that it has "never required repetitive, detailed explanations for each piece of withheld information—that is codes and categories may be sufficiently particularized to carry the agency's burden of proof . . . . [e]specially where the agency has disclosed and withheld a large number of documents," and "particularity may actually impede court review and undermine the functions served by a *Vaughn* index." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

The *Vaughn* Indices here contain many of the same categories and approaches found in *Judicial Watch v. FDA*. While the agencies may not have matched each redaction with a specific exemption, in most cases the Indices identify the exemptions claimed for each individual document. As in *Judicial Watch v. FDA*, where the index and agency affidavit symbiotically validated each other—linking the substance of each exemption to the documents' common elements—the agencies' Indices and declarations can similarly function. Thus, except for the specific deficiencies noted below, the Court finds the categorical approach employed conveys enough information to Plaintiffs and the Court to identify the records referenced and understand the reasoning behind the

claimed exemptions—all that is required under FOIA. To the extent Plaintiffs seek summary judgment solely on Defendants' categorical approach, the Court will deny such relief, instead granting Defendants summary judgment.

On the other hand, Plaintiffs provide citation to specific cross-references they find inadequate, confusing, or inaccurate. (Pls.' MSJ at 17.) Though Defendants have provided further explanations for those cross-references (Defs.' Resp. at 11 (citing 2d Howard Decl. ¶¶ 23-35)), Plaintiffs still assert that inaccurate cross-references exist (Pls.' Reply at 6). To the degree these cross-references still provide inaccurate information, Plaintiffs are entitled to clarity. Thus, the Court will require Plaintiffs to provide Defendants with a complete and current list of the cross-references it claims are inaccurate. In turn, Defendants shall either provide accurate cross-references or information sufficient to confirm the accuracy of such references.

In addition to their general objections, Plaintiffs raise specific arguments as to CBP, OIG, CRCL, and ICE's Indices, and the Court will address each in turn.

### a.      CBP and OIG

Plaintiffs argue that CBP's *Vaughn* Index improperly lumps together dozens of loosely related documents into a single exemption category, generically describes documents withheld in their entirety, is overly vague, and improperly cross-references to justify certain redactions. (Pls.' MSJ at 17.) Similarly, Plaintiffs contend that OIG's *Vaughn* Index fails to describe the type of information redacted, utilizes boilerplate language to explain redaction justifications, and provides no explanation for a gap in Bates numbering. (Pls.' MSJ at 18-19.) Defendants contend that Plaintiffs' argument fails as a matter of law, relying on *Citizens Comm'n on Human Rights v. FDA*, 449, F.3d 141, 147 (D.C. Cir. 2006). Defendants also state that OIG only withheld three documents in full and described the type of information redacted, and that the content of the redactions is evident from the face of the documents. (Defs.' Resp. at 10.) Because the Court has found that Defendants' categorical approach is generally acceptable and the redactions and their justifications are reasonably determinable, it will not require additional

supplements to CBP and OIG's *Vaughn* Indices, except as otherwise noted and in regards to any additional productions and exemptions from those productions.

### b. CRCL

Plaintiffs take issue with CRCL's *Vaughn* Index, arguing that rows two and three do not identify any specific documents or provide any document description, despite being excluded under Exemptions 6 and 7(c). (Pls.' MSJ at 19.) Defendants argue that they need not list every record to which they applied Exemptions 6 and 7(c). (Defs.' Resp. at 10.) Plaintiffs seemingly do not address this contention in their Reply, but the Court does find CRCL's lack of identification as to rows two and three problematic. If these documents have not been since described, Plaintiffs are entitled to such information.

### c. ICE

Though Plaintiffs argue that ICE's *Vaughn* Index is deficient in that it did not log numerous redacted documents (Pls.' MSJ at 19) and omitted documents identified in Bates range 2015-ICFO-1222.3.1111 through 2015 ICFO-1572, Plaintiffs now agree that ICE has addressed those issues. (Pls.' Reply at 7 n.10.) Thus, the Court finds this particular issue moot.

## 2. Exemptions

### a. Exemption 7(E)

Exemption 7(E) protects records or information compiled for law enforcement purposes from disclosure "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Skinner v. DOJ*, 744 F. Supp. 2d 185, 214 (D.D.C. 2010) (collecting cases). "[A] highly specific burden of showing how the law will be circumvented" is not required; instead, "exemption 7(E) only requires that [the agency] demonstrate[ ] logically how the release of [the requested] information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*,

562 F.3d 1190, 1194 (D.C. Cir. 2009) (quotation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. DOD*, 628 F.3d 612, 618 (D.C. Cir. 2011).

While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. *See, e.g., Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (rejecting plaintiff's argument that because the public is generally aware of security clearance procedures including marking of travel documents, use of a computer database, and the use of a "no fly" list, agency is required to disclose all details concerning those procedures); *Judicial Watch, Inc. v. Dep't of Comm.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004); *but see Goldstein v. Office of Indep. Counsel*, No. 87–2028, 1999 WL 570862, at *14 (D.D.C. July 29, 1999) (ordering disclosure of two documents that were over ten years old and discussed law enforcement techniques that had since become more widely known).

Plaintiffs argue that Defendants' general proclamations that documents pertain to those in law enforcement custody is insufficient and that their *Vaughn* Index and declaration fail to establish a rational nexus between documents at issue and CBP's law enforcement duties. (Pls.' MSJ at 21.) Plaintiffs also argue that CBP failed to demonstrate that the redacted information constitutes a technique or procedure that could risk circumvention of the law, and that the documents themselves reflect agency policy and standards of conduct, not law enforcement and the circumvention of procedure. (Pls.' MSJ at 22.)

Plaintiffs specifically contend that CBP improperly redacted or withheld at least four policy memorandums under Exemption 7(E). (Pls.' MSJ at 20-22.) Defendants state that they have determined it can release information previously withheld under (7)(E)

from the fourth document. (Defs.' Resp. at 13.) However, Defendants maintain that the remaining documents consist of (1) detention standards and procedures for short-term custody, (2) a memo regarding training for apprehension, detention, and transportation of minors, and (3) CBP procedures at ports of entry. (Defs.' Resp. at 13.) Defendants state that the information redacted from these documents is sensitive law enforcement information regarding the handling of detainees, including restraint and segregation, security procedures for temporary detention, transport, and escort of detainees. (Defs.' Resp. at 14.) Furthermore, from the third document, Defendants are disclosing additional information while withholding system codes and internal web addresses. (Defs.' Resp. at 14.)

The Court finds these justifications adequate as to the first three documents. Defendants have met the relatively low bar required for risk of circumvention by describing the documents from which the Court can estimate how circumvention might occur. *See Public Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) ("Exemption 7(E)'s requirement that disclosure risk circumvention of the law sets a relatively low bar for the agency to justify withholding . . . . To clear a relatively low bar, an agency must demonstrate only that release of a document might increase the risk that [a law will be violated]." (quotation omitted). However, the Court does not similarly find as to the remaining redactions of the fourth document—codes and web addresses. As detailed below regarding case numbers, the Court finds the agencies have not sufficiently justified the exemption of such information.

### b.    Exemption 5

Defendants move for summary judgment on the grounds that CBP, ICE, and OIG invoked the exemption to protect communications between an attorney and client. (Defs.' MSJ at 15.) Specifically, Defendants contend that they withheld facts underlying confidential requests for legal advice and attorneys' opinions based on those facts, including memoranda from Assistant United States Attorneys to agencies, as well as

attorney work product that, although relevant to Plaintiffs' request, was prepared in anticipation of litigation. (Defs.' MSJ at 15-16.)

FOIA Exemption 5 allows withholding "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). It protects records that are "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Exemption 5 covers "the attorney-client privilege, the attorney work-product privilege, [and] the executive deliberative process privilege." *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001). "To qualify as exempt under this section, a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt–Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (quotation and citation omitted).

Because Plaintiffs do not appear to challenge any of the records withheld under Exemption 5 for attorney-client privilege, and because the Court's review of such records implies that such records are adequately described for exemption, the Court finds Defendants' exemption of attorney-client privileged material FOIA-compliant.

However, Defendants similarly move for summary judgment on the grounds that they properly withheld documents reflecting various agencies' deliberative process. (Defs.' MSJ at 16.) Specifically, CRCL, ICE, and OIG withheld several draft documents "concerning closing complaints, recommendations in response to a complaint, preliminary findings following a site visit, complaint summary forms, complaint assistance forms, letters, regulations, Q&As, talking points, briefing papers, meeting minutes, SIRs, timelines, and executive summaries." (Defs.' MSJ at 16-17.) All Defendant agencies also withheld proposals, recommendations, and similar materials that reflect other agency deliberations. (Defs.' MSJ at 17.) Defendants argue that disclosure of such materials would discourage the expression of candid opinions, undermine the

agencies' consideration of important issues, and confuse the public. (Defs.' MSJ at 17-18.)

Plaintiffs respond and similarly move arguing that OIG and CRCL[5] have not established that the documents are predecisional or deliberative. (Pls.' MSJ at 23-24.) Specifically, Plaintiffs contend that CRCL merely states that they withheld or redacted documents that are non-final drafts that have not been accepted by an agency decision maker without providing any basis for this conclusion. Moreover, Plaintiffs argue that and OIG summarily states that the withheld documents are pre-decisional. (Pls.' Reply at 9.)

To fall within the "deliberative process" privilege, the materials must be "'predecisional' in nature *and* must also form part of the agency's 'deliberative process.'" *Maricopa II*, 108 F.3d at 1093. The Ninth Circuit has adopted the D.C. Circuit's definition of these terms:

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Id.* (*quoting Assembly of the State of Cal.*, 968 F.2d 916, 920 (9th Cir. 1992).) Exemption 5 is to be applied "as narrowly as consistent with efficient Government operation," in light of "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Id.* (internal quotations and citations omitted). In light of such guidance, the Court finds Defendants' descriptions inadequate. While Defendants have provided ample evidence that the withheld documents are pre-

---

[5] Plaintiffs state that ICE has conceded its withholdings were improper in producing previously withheld documents and do not assert further improper exemption claims against ICE. (Pls.' Reply at 9 n.14.)

decisional, their declarations do not similarly show that they are deliberative. Thus, Defendants must provide additional information regarding how such withheld documents are deliberative and/or how their disclosure would chill internal discussion and decision-making.

### 3. Exemptions 6 and 7(C)

Exemption 6 permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) similarly permits the withholding of "law enforcement records or information" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

Defendants move for summary judgment on the grounds that they have properly invoked Exemptions 6 and 7(C) to "protect the names and other personal information" of third parties and individual federal employees, "including law enforcement agents and investigators." (Defs.' MSJ at 19.) Plaintiffs respond and similarly move on the grounds that Defendants cannot demonstrate that all redacted names are "personnel, medical, or similar files," have failed to show that each record was compiled for law enforcement purposes, have failed to establish that disclosing the names would be an unwarranted invasion of privacy, and cannot show that any minimal privacy interest implicated by disclosure of these names outweighs the public's interest in information necessary to identify them and hold them accountable. (Pls.' MSJ at 24-27.)

Defendants bear the burden of establishing that the balance tips in favor of privacy, thereby justifying the withholding of the requested material under the asserted exemptions. 5 U.S.C. § 552(a)(4)(B). However, it is Plaintiffs' burden to support their claims that disclosure of withheld information advances the public interest. *King*, 830 F.2d at 234. With respect to this disclosure, the public interest is limited to that which "sheds light on an agency's performance of its statutory duty" in order to inform the citizens "about what their government is up to." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). Because Plaintiffs' primary objective is to obtain

documents relating to the investigations of mistreatment allegations made by children in Border Patrol custody, disclosure of such investigations relates to Defendants' statutory duties and their performance therein. Although the Court is sympathetic to Defendants' argument that allegations against its officers and agents may be unwarranted and disclosure of such identifying information may subject them to undeserved scorn, this is unfortunately a common exposure with government employees, particularly in law enforcement.

Still, the Court remains cognizant that Defendants' employees could conceivably be put in danger due to disclosure of their personal information. Accordingly, the Court will grant Defendants leave to file a motion for a protective order that would prevent public disclosure of those names while allowing Plaintiffs unfettered access to the information. However, any such motion must provide particularized descriptions of any likely danger or retaliation such employees would face. If Defendants simply provide conjecture, speculation, or the possibility of harm, the Court will not enter a protective order and will require complete public disclosure of the requested information.

### 4. Further Redactions

Plaintiffs move for summary judgment on the grounds that Defendants have improperly redacted case numbers assigned to allegations of mistreatment of minors. (Pls.' MSJ at 27-29.) Defendants contend that the numbers are not sequential and are "assigned solely for ministerial purposes," but are protectable "techniques and procedures for identifying, categorizing, and processing law enforcement records." (Defs. Resp. at 15.) The Court is at a loss to see how case numbers could possibly reveal a technique or procedure for law enforcement purposes or would otherwise put at risk officers, agencies, or their investigations. While CBP contends that revealing the case numbers could allow easy navigation of internal law enforcement computer systems (Howard Decl. ¶ 64), this too is implausible and does not justify redaction. The case numbers are not information connected to law enforcement databases, as there is no evidence before the Court that the

numbers are anything other than identifiers for organizational and classification purposes. Defendants thus must disclose the redacted case numbers to Plaintiffs.

Similarly, Plaintiffs argue that Defendants have improperly redacted non-identifying information regarding detained minors, including the date a minor was apprehended or transferred or the minor's age. (Pls.' MSJ at 29.) Defendants' Response and Reply assert that ICE and OIG have released or will release the dates of apprehension, arrest, or transfer, as well as the minor's age from the documents, rendering this portion of the controversy moot. (Defs.' Resp. at 13 n.14.)

### 5. Segregation

"Any reasonably segregable portion of a record shall be provided" to the FOIA requester." 5 U.S.C. § 552(b). Plaintiffs argue that even if Defendants' claimed exemptions regarding policy memoranda and mistreatment documents are appropriate, Plaintiffs are nonetheless entitled to summary judgment because Defendants fail to explain why they have failed to segregate the non-exempt materials from documents that have been withheld. (Pls.' MSJ at 29-30.) Defendants respond that each agency "explained its line-by-line review" and that all reasonably segregable material was released. (Defs.' Resp. at 15.) Defendants maintain that "additional information could not be [released] because it is so intertwined with protected material that segregation is impossible or would reveal otherwise-exempt material." (Defs.' Resp. at 15.)

The Court agrees with Defendants that their Indices are not so general, vague, or conclusory with regard to segregability as to nullify their usefulness. Moreover, Plaintiffs' assertion that numerous documents bear full page or large block-quote redactions, without more, is not enough to create a presumption that non-exempt materials were improperly included with justifiably redacted information. Thus, the Court will grant summary judgment to Defendants on the issue of segregability. However, nothing in this section negates any of the preceding portions of this Order dealing with redactions and exemptions.

**IV. CONCLUSIONS**

"Having undertaken the arduous task of sifting through the parties' various submissions, the [C]ourt concludes that [complete] summary judgment would be premature and is inappropriate for any party." *Hronek v. DEA*, 16 F. Supp. 2d 1260 (D. Or. 1998) (discussing the difficult task of deciding complex FOIA matters at summary judgment). While Defendants have met their burden in regards to several aspects of their FOIA searches, they have failed in many others. Without the benefit of fulsome searches, sufficient declarations, and complete *Vaughn* Indices, the Court is unable to make the findings necessary to support an ultimate conclusion.

Given the unique nature of FOIA cases and their posture at the summary judgment stage, the Court has a multitude of avenues it may take in its discretion. *See id.* (finding in an analogous and similarly postured action that the court could set the case for trial and take testimony as to claims of adequacy and exemption, undertake *in camera* review of documents that remain in dispute—though the Ninth Circuit is often reticent to sanction such an approach—or demand further production and allow for additional filings). Given precedent in this circuit, as well as the Court's discretion in managing its docket, the Court will await compliance with this Order before deciding the most prudent course.

Because of the urgency that allegedly accompanied Plaintiffs' original request, the languid and involved litigation and production that has followed, and the targeted nature of this Order, the Court expects exhaustive supplemental searches and productions to be completed expeditiously. Once supplemental documents and descriptions are produced, the Court will entertain—but does not invite—additional arguments from the parties regarding any remaining issues. If, and only to the degree necessary, issues endure, the Court will dispose of the outstanding disputes that the parties could not resolve via good faith meet and confer in an expeditiously scheduled hearing to bring this matter to a close.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants United States Customs and Border Protection, Department of Homeland

Security, Department of Homeland Security Office of Civil Rights and Civil Liberties, Department of Homeland Security Office of Inspector General, and Immigration and Customs Enforcement's Motion for Summary Judgment (Doc. 56) as set forth in this Order.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiffs American Civil Liberties Union of Arizona and American Civil Liberties Union of San Diego and Imperial Counties' Cross-Motion for Summary Judgment (Doc. 62).

**IT IS FURTHER ORDERED** granting each party leave to re-file abbreviated and non-duplicative motions for summary judgment as set forth in this Order, if necessary.

Dated this 14th day of August, 2017.

Honorable John J. Tuchi
United States District Judge