CHAD A. READLER
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
EMILY S. NEWTON (Va. Bar No. 80745)
STUART J. ROBINSON (Cal. Bar No. 267183)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel: (202) 305-8356
Fax: (202) 616-8470
Email: emily.s.newton@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ACLU FOUNDATION OF ARIZONA; ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES,<br><br>*Plaintiffs*,<br><br>v.<br><br>OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES; U.S. DEPARTMENT OF HOMELAND SECURITY; OFFICE OF INSPECTOR GENERAL, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants*. | No. CV-15-00247-PHX-JJT<br><br>**DEFENDANTS' OPPOSED MOTION FOR PARTIAL RECONSIDERATION OR, IN THE ALTERNATIVE, FOR PARTIAL STAY PENDING POTENTIAL APPEAL** |

Pursuant to Local Civil Rule 7.2(g), Federal Rule of Civil Procedure 54(b), and the

1

Court's inherent authority, Defendants respectfully request that the Court reconsider the portion of its August 14, 2017 Order ("Order"), ECF No. 76, suggesting that disclosure of the names of certain employees of the Department of Homeland Security ("DHS") may be appropriate under a protective order. The Freedom of Information Act ("FOIA") "does not permit selective disclosure of information only to certain parties." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997). There is thus no mechanism, such as a protective order, in the FOIA context to limit the dissemination of public officials' identities once that information is disclosed under the FOIA. *See id.* Because the Court's ruling misapprehends controlling law, there has been "manifest error" that warrants reconsideration. LR Civ. 7.2(g)(1); Black's Law Dictionary 660 (10th ed. 2014) (defining "manifest error" to include "complete disregard of the controlling law"). Without the availability of protection that the Court contemplated, the strong privacy interests implicated by dissemination of the DHS employees' names—including the harms recognized by this Court in its Order—outweigh any marginal public interest in disclosure of the names asserted by Plaintiffs. The information is therefore exempt under FOIA Exemptions (b)(6) and (b)(7)(C).

**I. The FOIA Does Not Permit Selective Disclosure of the DHS Employees' Names Pursuant to a Protective Order.**

In its Order, the Court rightly intimated that the DHS employee names at issue warrant protection given the harms that could result from their disclosure. Order at 26. The Court sought to provide this protection by allowing DHS to submit a motion for a protective order "that would prevent public disclosure of those names while allowing Plaintiffs unfettered access to the information." *Id*. There is, however, "no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). The Ninth Circuit has

thus explicitly rejected efforts to limit to particular individuals the dissemination of information under the FOIA. *See Maricopa*, 108 F.3d at 1088 ("FOIA does not permit selective disclosure of information only to certain parties, and [] once the information is disclosed to Audubon, it must also be made available to all members of the public who request it."); *Schiffer v. FBI*, 78 F.3d 1405, 1411 (9th Cir. 1996) (overruling district court's order limiting access to persons other than plaintiff because "such action is not authorized by FOIA"). Instead, "if information is not exempt under [the] FOIA, it is necessarily available to the public at large." *Schiffer*, 78 F.3d at 1411. And conversely, "[o]nce it is established that disclosure of information will jeopardize interests protected by FOIA, then the information is exempt categorically." *Id.*

## II. The DHS Employees' Names Are Exempt from Disclosure Under FOIA Exemptions (b)(6) and (b)(7)(C).

Without the option of a protective order, Defendants rightly concluded that disclosing the names of DHS personnel, including OIG investigators, ICE agents who acted as witnesses, and CBP agents against whom abuse allegations have been made will indeed jeopardize interests protected under FOIA Exemptions (b)(6) and (b)(7)(C). These individuals have strong privacy interests in avoiding the "comment, speculation, and stigmatizing connotation" associated with being accused of such conduct. Goal Decl. (ECF No. 56-8) ¶ 61; *see also id.* ¶ 60. And precisely because such allegations are "easy to allege and hard to disprove," *Favish*, 541 U.S. at 175, those interests are not overcome simply because "the redacted information concerns allegations of government wrongdoing." Pls.' Mem. 27 (ECF No. 61).

### A. The DHS employees have strong privacy interests in not being associated unwarrantedly with abuse allegations and not being subject to harassment or embarrassment.

It is well-established that public officials, including law enforcement agents, have

3

protectable privacy interests in their identities, in particular when they are the subject of complaints or investigations. *See Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992) ("A government employee generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure."); *Schiffer*, 78 F.3d at 1410 (persons named in FBI files have "a strong interest in 'not being associated unwarrantedly with alleged criminal activity'"). Individuals do not forfeit these privacy interests when they become public officials. *See Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) ("[W]hile the privacy interests of public officials are 'somewhat reduced' when compared to those of private citizens, 'individuals do not waive all privacy interests ... simply by taking an oath of public office.'"); *Brown v. EPA*, 384 F. Supp. 2d 271, 278 (D.D.C. 2005) ("[C]ourts consistently hold that suspects . . . retain a substantial interest in the protection of their identities in government documents notwithstanding the fact that they work for the federal government.").

In addition, law enforcement officers, in particular, "have a legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 977 (9th Cir. 2009) (citing *Hunt*, 972 F.2d at 288; *Wood v. FBI*, 432 F.3d 78, 88-89 (2d Cir. 2005); *McDonnell*, 4 F.3d at 1255; *Maynard v. CIA*, 986 F.2d 547, 566 (1st Cir. 1993)); *see also Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978) ("Public identification of [FBI agents] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives."); *Manna v. DoJ*, 51 F.3d 1158, 1166 (3d Cir. 1995) ("[L]aw enforcement officers . . ., not just suspects, have a substantial privacy interest in non-disclosure of their names because disclosure may result in embarrassment and harassment."). Courts, including the Ninth Circuit, have therefore afforded special protection to the names of law enforcement personnel, who possess substantial privacy interests in their identities by virtue of the

4

nature of their work.  *See, e.g.*, *Lahr*, 569 F.3d at 979 (reversing district court's order that agencies release the names of FBI agents); *New England Apple Council v. Donovan*, 725 F.2d 139, 142-44 (1st Cir. 1984) (reversing district court that compelled disclosure of names of Office of Inspector General officials); *Long v. OPM*, 692 F.3d 185, 194 (2d Cir. 2012) (holding that agency properly withheld names and duty-station information for over 800,000 federal employees including, *inter alia*, employees engaged in immigration inspection, customs and border interdiction, and border protection).

      Defendants have explained both the obvious stigma that would be attached to being associated with allegations of the abuse of minors, *see, e.g.,* Goal Decl. ¶ 61; 2d Goal Decl. (ECF No. 71-11) ¶ 46; Pineiro Decl. (ECF No. 56-4) ¶ 68, and the need to protect the law enforcement officials here from harassment and undue public attention that could interfere with the performance of their duties.  *See, e.g.,* 2d Goal Decl. ¶ 46; 2d Pineiro Decl. ¶ 29; CBP *Vaughn* Index (ECF No. 56-3) at 1.  That is sufficient under the FOIA.  Notably, Defendants need not show more than "the possibility of harm" to establish a sufficient privacy interest, as suggested in the Court's Order.  Order at 26.  Instead, "[t]he Supreme Court has relied on an agency's reasonable assessment that disclosure '*would* subject [the affected individuals] to *possible* embarrassment and retaliatory action,'" *Cameranesi v. DOD*, 856 F.3d 626, 639 (9th Cir. 2017) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991)), and the Ninth Circuit "ha[s] regularly done the same." *Id.* (citing *Prudential Locations LLC v. HUD*, 739 F.3d 424, 432 (9th Cir. 2013) (disclosure "would likely" result in an invasion of privacy); *Forest Serv.*, 524 F.3d at 1026 (disclosure "may" result in an invasion of privacy)).  Because Defendants have shown that the DHS employees possess the same privacy interests and face the same concerns as those recognized by numerous other courts, they merit the same protection of their names under the FOIA.

      **B. The DHS employees' strong privacy interests are not outweighed by any marginal public benefit disclosure of their names might serve.**

The strong privacy interests of the DHS employees are not outweighed by any marginal benefit to the public interest that could obtain by the disclosure of their names. "[T]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lahr*, 569 F.3d at 974. Defendants do not dispute that "documents relating to the investigations of mistreatment allegations made by children in Border Patrol custody . . . relate[] to Defendants' statutory duties and their performance therein," Order at 25-26, and thus implicate a relevant public interest. Importantly, however, Defendants have already disclosed those documents and the information in them to Plaintiffs. The relevant question now is what light does the disclosure of the names of the DHS employees implicated in those documents shed on the government's performance of its duties? Plaintiffs must demonstrate that the public interest served by disclosure of *that information* "is a significant one," "that disclosure is likely to advance that interest," and that the "marginal additional usefulness of the names in exposing government misconduct . . . outweigh[s] the privacy interests at stake." *Lahr*, 569 F.3d at 974, 978 ("[B]ecause only the names of witnesses and agents are missing from the released documents, under the applicable precedents the 'marginal additional usefulness' of the names in exposing government misconduct must outweigh the privacy interests at stake.") (internal citations omitted)). Plaintiffs fail to do so.

Plaintiffs invoke the public interest of ensuring the integrity and reliability of government investigation procedures. *See* Pls.' Mem. 27. And they contend that disclosure of the DHS employees' names will serve that interest by allowing them to "determine whether the same agents are repeatedly subject to abuse allegations or if any disciplinary proceedings have been instituted in response." *Id.* Plaintiffs admit, however, that the documents produced *already* allow them to determine whether the same individual has

been subject to abuse allegations. *See* Reddy Decl. ¶ 15(d) (ECF No. 74-2) (contending that a document produced shows that "[s]imilar allegations against the same Border Patrol officer . . . have been made by multiple children"). And their FOIA request includes a request for records showing whether disciplinary proceedings have been instituted. *See* Compl. Ex. 1 at 6 (ECF No. 1-1). The responsive documents themselves thus provide the very information Plaintiffs purport to seek, and the further disclosure of the individual names would provide nominal, if any, additional usefulness.

The disclosure of the DHS employees' names would also not have significant additional usefulness because DHS has investigated and issued public reports on the very issues underlying Plaintiffs' complaints. As the Ninth Circuit recently explained in *Cameranesi*, "[i]n examining whether the requested information is likely to advance a significant public interest, [courts] consider whether it will 'appreciably further the public's right to monitor the agency's action.'" 856 F.3d at 640 (quoting *Forest Serv. Emps.*, 524 F.3d at 1027). "If the information sought does not 'add significantly to the already available information concerning the manner in which [the agency] has performed its statutory duties,' [courts] give the public interest less weight." *Id.* (quoting *Prudential Locations*, 739 F.3d at 433). "Thus when a FOIA requester sought the identities of Forest Service employees in order to 'conduct its own investigation' of a fatal fire incident that had already been investigated by the government, the 'marginal additional usefulness of such information' was not 'sufficient to overcome the privacy interests at stake.'" *Id.* (quoting *Forest Serv. Emps.*, 524 F.3d   at 1027).

Similarly here, any value added by disclosure of the names is marginal, at best. The crux of Plaintiffs' underlying complaint is that DHS has "fail[ed] to meaningfully investigate or otherwise respond to consistent reports of systematic abuse." Compl. ¶ 20. But the names that Plaintiffs seek have been redacted from thousands of pages of documents that Defendants have produced, which consist of Reports of Investigations

("ROIs"), case summary reports, and related documents showing that DHS is indeed documenting and investigating such allegations. *See* Pls.' Mem. 28 ("[T]he documents here concern Defendants' own investigations of their employees' conduct."); 2d Goal Decl. ¶¶ 5-9, 30 (explaining OIG's investigations of misconduct and resulting ROIs and case summary reports). Indeed, DHS OIG has investigated the very issues raised by Plaintiffs' request and has issued three separate public reports on those issues. *See* 2d Goal Decl. ¶ 8. The reports were issued "following extensive fieldwork consisting of over 90 unannounced detention facility site visits conducted by OIG's [Office of Investigations] and Office of Inspections." *Id.*[1] Plaintiffs are, of course, free to use the voluminous information produced by DHS to draw their own conclusions about the adequacy of DHS's investigatory and disciplinary efforts. It nonetheless remains the case that the underlying issues of abuse of minors have been investigated by the government, making the marginal additional usefulness of the disclosures Plaintiffs seek insufficient to outweigh the significant privacy interests implicated by those disclosures. *See Cameranesi*, 856 F.3d at 640.

In arguing to the contrary, Plaintiffs claim that the benefits of disclosure are "considerable" simply "because the redacted information concerns allegations of government wrongdoing." Pls.' Mem. 27. But the Supreme Court has recognized that in particular where government officials are accused of wrongdoing, mere allegations are not enough to overcome the considerable privacy interests at issue. *See Favish*, 541 U.S. at 159. Instead, because "[a]llegations of government misconduct are easy to allege and hard to disprove," the Supreme Court has insisted on a "meaningful evidentiary showing," requiring plaintiffs to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* The fact that the

---

[1] These investigations were initiated based on the ACLU's June 11, 2014 complaint on behalf of 116 unaccompanied children.

redacted information concerns allegations of government misconduct, without more, is therefore insufficient to satisfy *Favish*'s requirements. 541 U.S. at 159 (holding that the lower court erred "[b]y requiring no particular evidence of some actual misfeasance or other impropriety"); *see also Taitz v. Astrue*, 806 F. Supp. 2d 214, 219 (D.D.C. 2011) (upholding redaction of identifying information because plaintiff's "unsubstantiated allegations" of "official misconduct" were insufficient to establish a countervailing public interest in disclosure), *aff'd*, No. 11-5304, 2012 WL 1930959 (D.C. Cir. May 25, 2012); *see also Salas v. Office of Inspector Gen.*, 577 F. Supp. 2d 105, 111-12 (D.D.C. 2008) (upholding redaction of names of Border Patrol employees based on their "substantial privacy interest," despite a plaintiff's desire to "open to public scrutiny" their alleged "work-related misconduct"); *Dorsett v. Dep't of Treasury*, 307 F. Supp. 2d 28, 38-39 (D.D.C. 2004) (withholding names of law enforcement personnel and other employees in face of misconduct allegations).[2]

Plaintiffs attempt to make this showing by averring that "[a]ll allegations of misconduct at issue here are supported by affidavits from children alleging abuse and confirmed by documents authored by Defendants and third parties." Pls.' Reply 8 (citing Reddy Decl. ¶ 15). But the allegations of misconduct to which Plaintiffs refer here are allegations concerning the abuse of minors in DHS custody—not allegations that DHS's

---

[2] To the extent that Plaintiffs argue that a lack of CBP disciplinary records demonstrates a failure on DHS's part, *see* Pls.' Reply 8 (arguing that the records at issue were not compiled for law enforcement purposes), Plaintiffs ignore that CBP did not locate responsive disciplinary records for the time period of Plaintiffs' request, *see* 2d Howard Decl. at 6 n.8; that other offices did produce disciplinary records, *see, e.g.,* 2d Pineiro Decl. ¶ 23; and that the record indicates that the vast majority of complaints were investigated but deemed not substantiated, thereby explaining the low number of disciplinary records. *See* 2d Goal Decl. ¶ 8 ("As reported in OIG's August 2014 interim report, of the 16 allegations that OIG investigated, OIG was unable to substantiate any of the allegations."); 2d Pineiro Decl. ¶ 22 (explaining that the Office of Human Capital would not possess responsive records unless an investigation had determined that the claims were substantiated).

procedures for investigating those allegations are somehow flawed. And to the extent the former allegations have any bearing on the integrity or reliability of DHS's investigative procedures, Plaintiffs still do not carry their burden. The fact that an allegation is recorded in an affidavit by the complainant does not, *ipse dixit*, transform it into anything other than an unsubstantiated allegation. And by Plaintiffs' own account, the documents to which they point merely "confirm" *the fact of* the complaints or allegations, *see* Reddy Decl. ¶ 15; they do not substantiate them or otherwise consist of evidence sufficient to lead a reasonable person to credit them.

And even if the affidavits and documents on which Plaintiffs rely could be viewed as support for their allegations—and their asserted public interest—they fall well short of the evidence that other courts have deemed sufficient to disclose the names of federal employees accused of misconduct. In support of their argument that "courts have repeatedly held that the public interest in the disclosure of information about public officials outweighs privacy interests in analogous contexts," Pls.' Mem. 27, Plaintiffs cite two out-of-circuit cases, neither of which are remotely analogous. In *Casa De Maryland, Inc. v. DHS*, 409 F. App'x 697 (4th Cir. 2011), the court ordered disclosure of names and other identifying information on the basis of: thirteen affidavits of arrestees who all suggested the same government misconduct; declarations of law enforcement agents that "differed markedly" from affidavits in a government report on the same issue; and statements in the government report that suggested the improper agency conduct alleged. *Id.* at 701. The purported evidence on which Plaintiffs rely pales in comparison. And in *Providence Journal Co. v. U.S. Dep't of Army*, 781 F. Supp. 878 (D.R.I. 1991), the suspects whose names were at issue were "high ranking officials in the Rhode Island Army National Guard," and "some of the allegations [against them]. . . were judged to be 'substantiated.'" *Id.* at 883. By contrast, "lower level officials," like those involved here, "'generally have a stronger interest in personal privacy than do senior officials.'" *Lahr*, 569 F.3d 964, 977

10

(9th Cir. 2009) (quoting *Dobronski v. FCC,* 17 F.3d 275, 280 n. 4 (9th Cir. 1994)).[3] And unlike in *Providence*, Plaintiffs do not claim, much less show, that the allegations against the DHS employees whose names have been withheld have been substantiated. *See* Pls.' Reply 8.[4]

In sum, Plaintiffs' "mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests" of the DHS employees in protecting their names from disclosure under FOIA Exemptions (b)(6) and (b)(7)(C). *McCutchen v. HHS*, 30 F.3d 183, 188 (D.C. Cir. 1994).

### III. Should The Court Order Disclosure of the DHS Employees' Names, Defendants Respectfully Request a Stay of Disclosure Pending Resolution of this Litigation.

In the event the Court determines that even without a protective order, the names of the DHS employees' accused of abusing minors are not exempt from disclosure under FOIA Exemption (b)(6) and (b)(7)(C), Defendants respectfully request a stay of any order requiring disclosure of the names pending an ultimate determination of all of the remaining issues in this litigation. "Particularly in the [FOIA] context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (collecting cases). Because that is the case here—any disclosure pursuant to the Court's

---

[3] Defendants did not redact the names of senior officials whose identities are widely known among the public. *See* Howard Decl. ¶ 55; Tyrrell Decl. ¶ 25; Pineiro Decl. ¶ 69; Goal Decl. ¶ 52.

[4] Indeed, as noted above, the record reflects the opposite. *See supra* n.2. But, in any event, where, as here, the DHS employee names do not involve high level officials, courts have found that their privacy interests justify withholding their names from disclosure even when the claims were substantiated against them. *See, e.g., Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984) (determining that government agents who were censured but not criminally charged had a privacy interest in avoiding "embarrassment or stigma" that would arise from the release of their identities).

11

Order, once made, could not be undone—a stay is warranted. Moreover, given that various steps remain before this litigation concludes, including the parties' compliance with the Court's Order and briefing on any remaining issues, a stay tied to the conclusion of this litigation will avoid a potentially piecemeal appeal.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court reconsider its August 14, 2017 ruling on the above-mentioned issues and uphold Defendants' redaction of the names of DHS employees accused of misconduct pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). In the event the Court orders disclosure of those names, Defendants respectfully request a stay of the order pending the conclusion of this litigation.

| | |
|---|---|
| Dated:  August 28, 2017 | Respectfully submitted, |
| | CHAD A. READLER |
| | Acting Assistant Attorney General |
| | |
| | MARCIA BERMAN |
| | Assistant Branch Director |
| | |
| | */s/ Emily Sue Newton* |
| | EMILY S. NEWTON |
| | Va. Bar No. 80745 |
| | STUART J. ROBINSON |
| | Cal. Bar No. 267183 |
| | Trial Attorneys |
| | U.S. Department of Justice |
| | Civil Division, Federal Programs Branch |
| | 20 Massachusetts Ave., NW |
| | Washington, DC  20530 |
| | Tel: (202) 305-8356 |
| | Fax: (202) 616-8470 |
| | Email: emily.s.newton@usdoj.gov |
| | |
| | *Counsel for Defendants* |