**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Civil Liberties Union of Arizona, *et al.*, | No. CV-15-00247-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of Homeland Security Office for Civil Rights and Civil Liberties, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion for Reconsideration (Doc. 77, Mot.) of this Court's August 14, 2017 Order (Doc. 76, Order). The Court permitted Plaintiffs to respond (Doc. 83, Resp.), and Defendants filed a Notice of Supplemental Authority (Doc. 82). In the Motion, Defendants ask the Court to reconsider one aspect of its ruling on Defendants' Motion for Summary Judgment (Doc. 56, Defs.' MSJ) and Plaintiffs' Cross-Motion for Summary Judgment (Doc. 62, Pls.' MSJ).

## I.   MOTION FOR RECONSIDERATION

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, Defendants

contend that the Court clearly erred by suggesting disclosure of the names of certain employees of the Department of Homeland Security ("DHS") under a protective order in response to Plaintiffs' Freedom of Information Act ("FOIA") request. (Mot. at 2.)

Among their requests for information under FOIA in this case, Plaintiffs seek the names of DHS employees accused of mistreating unaccompanied children ("UAC") in DHS custody. The Court agrees that it erred (*see* Order at 26) when it stated that a protective order would be appropriate under FOIA to keep disclosure of the employees' personal information private. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination."). Now, with the benefit of the evidence and more extensive briefing submitted by the parties in conjunction with Defendants' Motion, the Court will more fully examine whether the employee names are exempt from disclosure under Exemptions 6 and/or 7(C) of FOIA. *See* 5 U.S.C. §§ 552(b)(6), (b)(7)(C).

## II. DISCLOSURE UNDER FOIA OF THE NAMES OF EMPLOYEES ACCUSED OF MISCONDUCT

FOIA requires that federal agencies make public records promptly available to citizens when they request them, in order "to ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act provides for nine specific exemptions under which the government may refuse disclosure. *See* 5 U.S.C. § 552(b). Here, Defendants rely on Exemptions 6 and 7(C) to withhold the requested names. Those Exemptions provide that the following may be held from disclosure:

> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

*Id.*

When evaluating whether a government agency can properly invoke Exemptions 6 and/or 7(C), the Court uses a three-step test for balancing the privacy rights of the individuals against the public interest in disclosure. *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1093 (9th Cir. 2017). First, the Court evaluates the personal privacy interest to determine whether the "disclosure implicates a personal privacy interest that is nontrivial or . . . more than [] de minimis." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). Second, if a nontrivial privacy interest is at stake, the requester has the burden to show "that the public interest sought to be advanced is a significant one . . . and that the information is likely to advance that interest." *Favish*, 541 U.S. at 172. If the requester fails to show a significant public interest, then a nontrivial invasion of privacy is unwarranted and the information is properly withheld under the exemption. *Id.* Finally, if both a nontrivial privacy interest and a significant public interest are present, the Court must balance the two. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).

Defendants bear the burden of establishing that the balance tips in favor of privacy, thereby justifying the withholding of requested information under the asserted exemptions. 5 U.S.C. § 551(a)(4)(B). The balancing required for Exemptions 6 and 7(C) mirror one another. The "only distinction between the balancing tests applied in the two exemptions is the 'magnitude of the public interest' required" to overcome the privacy interests at stake. *Tuffly*, 870 F.3d at 1092 n.5 (internal quotations omitted) (quoting *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 n.2 (9th Cir. 2008)). Exemption 7(C) is "more protective of privacy" than Exemption 6, because Exemption 7(C) only requires that an invasion of privacy "could reasonably be expected," while Exemption 6 requires that the invasion of privacy be "clearly

unwarranted." 5 U.S.C. §§ 552(b)(6), (b)(7)(C); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 n.6 (1994). Cases that apply either Exemptions 6 or 7(C) are relevant to the balancing analysis "insofar as they identify cognizable public and private interests." *Forest Serv. Emps.*, 524 F.3d at 1025 n.2. Because resolution of Defendants' Motion does not turn on whether Exemption 6 or 7(C) is applied—indeed, the parties do not argue which Exemption should apply in the present Motion and Response—the Court will analyze them together except where indicated.

### A. Privacy Interest

The privacy interests at stake must be "some nontrivial privacy interest in nondisclosure." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) (quoting *Dep't of Def.*, 510 U.S. at 501). It is enough to demonstrate that the interest is more than *de minimus*. *Tuffly*, 870 F.3d at 1092. The interest is not a "cramped notion," *Yonemoto*, 686 F.3d at 693, but rather, is broad and encompasses a range of "concerns relating to an 'individual's control of information concerning his or her person.'" *Lahr*, 569 F.3d at 974 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989)). A nontrivial privacy interest is implicated when the disclosure opens the person to possible embarrassment, harassment, or risk of mistreatment. *Cameranesi*, 856 F.3d at 638. Public officials "do not waive all privacy interests in information relating to them simply by taking an oath of public office," but public officials' privacy interests are "somewhat reduced." *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Circ. 2001). Further, officers "retain an interest in keeping private their involvement in investigations of especially controversial events," *Lahr*, 569 F.3d at 977, and lower level officials "generally have a stronger interest in personal privacy than do senior officials," *id.* (quoting *Dobronski v. FCC*, 17 F.3d 275, 280 n.4 (9th Cir. 1994)).

In its prior Order, the Court noted it is "cognizant that Defendants' employees could conceivably be put in danger due to disclosure of their personal information" but that Defendants failed to meet their burden to give "particularized descriptions of any

likely danger or retaliation such employees would face." (Order at 26.) Indeed, "the threat to personal privacy occasioned by disclosure must be nonspeculative" and "more palpable than mere possibilities;" a threat that is "conceivable on some generalized, conjectural level is not sufficient." *Yonemoto*, 686 F.3d at 693 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976)) (internal quotations omitted).

In their Motion for Summary Judgment briefing, the Court found Defendants identified only generalized threats related to the disclosure of certain employees' names. (*See* Defs.' MSJ at 20.) In the present Motion, Defendants argue that identification of certain employees would lead to "the obvious stigma that would be attached to being associated with allegations of the abuse of minors" and the possibility of "harassment and undue public attention that could interfere with the performance of their duties." (Mot. At 5.) Prior cases have identified the potential for harassment and stigma that could be attached to a sensitive investigation—here, into the abuse of minors—which creates a cognizable, nontrivial privacy interest for the officers involved. *See Forest Serv. Emps.*, 524 F.3d at 1026 (holding that association with a highly publicized and criticized response and investigation into a forest fire would create a risk of stigma, harassment, and embarrassment that constituted a cognizable privacy interest); *Stern v. F.B.I.*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) (determining that government agents who were censured but not criminally charged had a privacy interest in avoiding "embarrassment or stigma" that would arise from the release of their identities).

In their Response (Resp. at 5-7), Plaintiffs point out that the "balancing test must be applied to the specific facts of each case . . . [and] per se rules of nondisclosure . . . are generally disfavored." *Stern*, 737 F.2d at 91. To this end, Plaintiffs contend that their requests for identifying information in this case are not general, but are instead targeted at specific government employees alleged to have intentionally engaged in misconduct and an abuse of their authority, and courts favor disclosure where a government employee's actions are intentional and may constitute a violation of the public trust. *Cochran v. United States*, 770 F.2d 949, 956-57 (11th Cir. 1985); *see also Stern*, 737 F.2d at 93-94

(requiring disclosure of name of official who participated knowingly in misconduct but not the names of those whose participation was inadvertent). The Court concludes that Defendants have identified a nontrivial privacy interest in the nondisclosure of certain employees' names, and the Court will consider additional case-specific facts when it weighs the privacy interest against the public interest.

## B. Public Interest

The Court next evaluates the public interest in disclosure. In doing so, the Court examines, first, whether "the public interest sought to be advanced is a significant one," *Yonemoto*, 686 F.3d at 694, and second, whether the "requested information 'is likely to advance that interest,'" *Cameranesi*, 856 F.3d at 639 (quoting *Yonemoto*, 686 F.3d at 694). The relevant public interest under FOIA is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Cameranesi*, 856 F.3d at 639–40 (quoting *Yonemoto*, 686 F.3d at 694). The public interest is given less weight if the information sought does not "add significantly to the already available information concerning the manner in which [the agency] has performed its statutory duties." *Id.* at 640 (quoting *Prudential Locations LLC v. Dep't of Hous. & Urban Dev.*, 739 F.3d 424, 433 (9th Cir. 2013)). Additionally, the Court does not give weight to the requester's personal interest in obtaining the information. *Id.*

If the public interest includes an allegation that government officials acted improperly or negligently in the performance of their duties, the "requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. The Court gives a presumption of legitimacy to the Government's official conduct, *Dep't of State v. Ray*, 502 U.S. 164, 178–79 (1991), and the requester must overcome this presumption by producing "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.

In its prior Order, the Court concluded that Plaintiffs' requests implicated a significant public interest—an agency's performance of its statutory duty. (Order at 25.)

The Court also found Plaintiffs demonstrated that their requests were likely to advance that interest, stating: "Because Plaintiffs' primary objective is to obtain documents relating to the investigations of mistreatment allegations made by children in Border Patrol custody, disclosure of such investigations related to Defendants' statutory duties and their performance therein." (Order at 25-26.)

Defendants now contend that they have already disclosed the relevant documents and that disclosure of the names of certain DHS employees is not likely to advance the public's interest in knowing what its government is up to—specifically, the integrity and reliability of Defendants' internal investigations. (Mot. at 6.) Acknowledging Plaintiffs' goal of determining whether the same government agents were repeatedly the subject of abuse allegations and whether disciplinary proceedings were initiated in response, Defendants argue the usefulness of disclosure of certain employees' names is "marginal at best" because: 1) the documents produced have already permitted Plaintiffs to determine whether the same agent was repeatedly subject to abuse allegations; 2) Defendants have already investigated the underlying allegations of abuse by their employees and issued public reports, and disclosure of the employees' names will not "appreciably further the public's right to monitor the agency's action," *Cameranesi*, 856 F.3d at 640 (quoting *Forest Serv. Emps.*, 524 F.3d at 1027)); and 3) Plaintiffs allege government misconduct but proffer insufficient evidence for a reasonable person to conclude the misconduct might have occurred. (Mot. at 6-11.)

In response (Resp. at 8), Plaintiffs argue that the first of Defendants' points proves the opposite, and the Court agrees. The sole reason Plaintiffs were able to determine that one particular Border Patrol agent was repeatedly the subject of abuse allegations was that Plaintiffs could see personal identifying information for that agent in the records, because he went by the nickname "Mala Clara," and thus Plaintiffs were able to connect the records of various abuse allegations to that agent. In other words, it is only because Plaintiffs *had* personal identifying information for Mala Clara—similar to that they now seek for other agents accused of mistreatment—that they could accomplish their goal of

finding alleged repeat offenders, which in turn allows them to examine whether the agencies initiated disciplinary actions in the cases of alleged repeat offenders. Plaintiffs point out that Defendants' productions to date do not allow them to make this determination. Thus, this basis for Defendants' argument that the public interest is only marginal fails.

As to Defendants' second argument, Plaintiffs point to the record to show that, in fact, in most instances the agencies did not conduct disciplinary proceedings related to abuse allegations. (Resp. at 8-10.) Immigration and Customs Enforcement ("ICE") produced disciplinary records related to a single incident; Customs and Border Protection ("CBP") identified no responsive disciplinary records; and the DHS Office of the Inspector General ("OIG") produced a narrative summary of hundreds of complaints, all but one of which was closed with "no reply" from CBP. The Court finds this case readily distinguishable from those cited by Defendants. In *Lahr*, for example, the National Transportation Safety Board ("NTSB"), the Central Intelligence Agency ("CIA"), and the Federal Bureau of Investigation ("FBI") conducted a comprehensive investigation of an accident and released a full report, so the court found the disclosure of the names of eyewitnesses and investigators for the purpose of re-interviewing them of little public interest. 569 F.3d at 979. Here, Plaintiffs show an *absence* of disciplinary investigations on the part of the agencies, which is the subject of this case. The considerations at stake in *Lahr* are thus inapposite here. *See also Forest Serv. Emps.*, 524 F.3d at 1027 (noting agency actually conducted investigations and reported its findings to the public). With regard to the three public reports Defendants state they published, while DHS acknowledged problems and made a commitment to investigate the allegations of abuse, Plaintiffs contend that the investigation ended shortly thereafter. The interim reports were not of the substance and scope contemplated in *Lahr* and *Forest Service Employees*. Thus, Defendants' argument related to their investigations and reports also fails to demonstrate that the public interest is diminished in this particular case.

Finally, as to Defendants' argument that Plaintiffs have not provided sufficient actual evidence to allow a reasonable person to believe government impropriety occurred, the Court first notes the parties' shared position that the principal government impropriety at issue is the agencies' insufficient investigation into the allegations of abuse. However, evidence of the allegations of abuse underlies a determination of the appropriate substance and scope of an investigation. For example, if allegations of repeated, severe abuse are raised to an agency but it conducts no investigation whatsoever, an inference may be drawn that the investigative procedures are insufficient. Indeed, Plaintiffs' initial evidence as to agency impropriety here is the apparent lack of disciplinary investigation or action in response to many of the allegations of abuse, as the Court noted above.

Plaintiffs have now proffered a Declaration containing documents related to the abuse allegations and showing the government's redactions under Exemptions 6 and 7(C). (Doc. 83-1, Reddy Decl. & Exs. A-D, F-G.) Plaintiffs have also provided a spreadsheet summarizing 214 complaints alleging physical, verbal, and sexual abuse by border patrol agents and poor confinement conditions between 2009 and 2013, along with the disposition of any associated investigations. (Reddy Decl. Ex. E.) All but one complaint was "Referred – No Reply" to CBP and marked "Closed Not Converted." In other words, it appears from this document that virtually no investigations into the complaints took place, or at least were completed.

Defendants argue that the documents provided by Plaintiffs "merely confirm *the fact of* the complaints or allegations; they do not substantiate them or otherwise consist of evidence sufficient to lead a reasonable person to credit them." (Mot. at 10.) While it is true that one cannot determine the truth of any of the allegations from the documents provided, one can reasonably believe that agency investigations were insufficient if the documents show that almost none of the over 200 allegations—many of a serious nature—resulted in a completed investigation. From this, Plaintiffs' evidence establishes more than a bare suspicion of government misconduct in the form of insufficient

investigations into the allegations of abuse—the impropriety the parties agree is at issue here. *See Favish*, 541 U.S. at 174 (stating requester must establish more than a bare suspicion of government impropriety in order to obtain disclosure).

Plaintiffs' evidence also indicates that disclosure of the names of the employees accused of misconduct would be more than marginally useful to Plaintiffs (*see* Reddy Decl. Exs. A-G), because without those names, it is impossible to synthesize the numerous allegations of abuse to find patterns of behavior by certain individuals and determine, among other things, whether the agencies turned a blind eye to those patterns of behavior. In short, Plaintiffs have provided sufficient evidence to demonstrate a substantial public interest in the sufficiency of Defendants' investigative and disciplinary procedures and that their request for the names of employees accused of the underlying misconduct is likely to advance that interest. *See Casa de Maryland, Inc. v. U.S. Dep't of Homeland Sec.*, 409 Fed. App'x 697, 700-701 (4th Cir. 2011).

### C. Balancing

This case is different from the one Defendants cited in their Notice of Supplemental Authority (Doc. 82). There, the plaintiffs sought the names of nearly the entirety of Border Patrol agents and CBP officials, and the court found little public interest because the disclosure of those names would "shed little light on CBP's supervisory and disciplinary practices." (Doc. 82-1, C.D. Cal. Order at 36.) Here, Plaintiffs' requests are targeted at specific employees accused of the abuse of minors in CBP custody for the specific purpose of finding patterns of behavior among the employees involved and determining whether the agencies engaged in a sufficient investigation, or any investigation, of those employees.

The implicated employees have a sufficient privacy interest in the protection of their identities at least under Exemption 7(C), because an invasion of privacy "could reasonably be expected" by disclosure of their names.[1] 5 U.S.C. §§ 552(b)(7)(C). In the

---

[1] By comparison, Exemption 6 requires that the invasion of privacy be "clearly unwarranted." 5 U.S.C. § 552(b)(6). For the purpose of balancing, the Court will

present analysis, the Court cannot conclude that the employees' privacy interest is necessarily diminished by Plaintiffs' allegation that the employees' actions were intentional and, because they work for the government, a violation of the public trust. As discussed above, the impropriety at issue here is the inadequacy of the agencies' investigations into allegations of abuse, and Plaintiffs have provided enough evidence to demonstrate a reasonable belief that the impropriety occurred. Plaintiffs have not attempted to demonstrate that the underlying abuse by Defendants' employees actually occurred. If the Court cannot conclude there is a reasonable belief that the employees engaged in the alleged abusive behavior, the Court also cannot conclude there is a reasonable belief the employees did so intentionally—the standard required for a diminishment of their privacy interest.

Weighing the privacy interest against the public interest is a difficult task here, because each interest is substantial and opposes the other. But the Court finds the balance tips in favor of the public interest. Important to the Court is the fact that Plaintiffs' requests for employees' names are targeted at only specific employees accused of misconduct. Plaintiffs' requests for those names will shed light on Defendants' performance of their statutory duties—or "let citizens know what [Defendants] are up to"—by showing: 1) if individual employees were the subject of multiple misconduct allegations, and 2) whether Defendants engaged in any investigation and, if necessary, disciplinary action with regard to those employees who allegedly engaged in a pattern of abuse or an improper course of conduct. Plaintiffs have demonstrated more than a bare suspicion that Defendants' investigations into misconduct allegations were insufficient; indeed, from the evidence before the Court, it appears completed investigations were almost nonexistent. The public has a particularly strong interest in knowing if government agencies turned a blind eye to allegations of a pattern of abuse or misconduct by individual government officials. And, even though they have not been proven, the

---

determine if Defendants have met the lower burden imposed by Exemption 7(C) in showing that the privacy interest outweighs the public interest.

Court cannot completely ignore the import of the underlying allegations of abuse and mistreatment of unaccompanied children, if any are shown to be true. For these reasons, the Court finds the public interest in disclosure of the names outweighs the employees' privacy interest. *See Casa de Maryland*, 409 Fed. App'x at 700-701. Because the requested names are not exempt from disclosure under FOIA Exemptions 6 and 7(C), Defendants must publicly disclose the requested names.

## III. STAY REQUEST

Defendants "request a stay of any order requiring disclosure of the names pending an ultimate determination of all of the remaining issues in this litigation" because Defendants' public release of the names would moot any appeal of the issue and appealing the issue now may lead to piecemeal appeals. (Mot. at 11-12.) This case is already over three years old, and counting, and the Court has little interest in entering a stay further delaying the disclosure of information. However, Plaintiffs agree to a limited stay of 60 days to allow Defendants to appeal this issue (Resp. at 11-12), so the Court will enter a 60-day stay, at the end of which Defendants must produce the requested information with the names unredacted.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Reconsideration (Doc. 77). The Court agrees it erred when it stated that a protective order would be appropriate under FOIA to keep disclosure of the employees' names private. However, upon review of the parties' more extensive briefing, the Court still finds that the requested employees' names are not exempt from disclosure under FOIA Exemptions 6 or 7(C), and Defendants must therefore disclose the requested names.

**IT IS FURTHER ORDERED** granting Defendants a stay of 60 days from the date of this Order to comply with this Order. This stay applies only to the disclosures addressed in this Order.

. . . .

. . . .

**IT IS FURTHER ORDERED** that the parties shall file a joint status report 60 days from the date of this Order.

Dated this 22nd day of March, 2018.

Honorable John J. Tuchi
United States District Judge